**UNITED STATES BANKRUPTCY COURT** FILED

IN RE:  ComUnity Lending, Incorporated, a California Corporation
In a Chapter__11

Case No.:_08-50030-MM
Adv. Case No.:_08-5006

2008 JAN 11  A 11: 53

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA. S.J.

**TRANSMITTAL OF WITHDRAWAL OF REFERENCE
TO THE DISTRICT COURT**

1.  __X____**Motion or order  to withdraw  reference**.

2.  _____**Certificate to the District Court** non-core proceeding pursuant to B.L.R. 9015-2(b) demand for jury trial.

3.  _____**Certificate to the District Court**  pursuant to B.L.R. 9015-2(d) personal injury tort and wrongful death claims

DATE FILED: ___1/8/08]

FILED BY (MOVANT): __Mai Christina Pham, John Pham, Mai Nguyen, Hung Perry Nguyen and Joyce Freeman

ATTORNEY:  ___George H. Kalikman
_____199 Fremont St., 20th Fl, San Francisco, CA 94105

PLEADINGS TRANSMITTED TO DISTRICT COURT

| | |
|---|---|
| ___X_____ | Motion or Order to Withdraw Reference |
| ___X_____ | Memorandum in Support of Motion to Withdraw Reference |
| _____ | Response to Motion to Withdraw Reference |
| _____ | Certificate to the District Court |
| ___X_____ | Certified Copy of Bankruptcy Docket Sheet |
| _____ | Other Pertinent Record:_____ |

COUNTY OF DEBTOR(S) RESIDENCE: _Santa Clara

DATE: __11/8/08                    TRANSMITTED: ___1/11/08

By: _Angela Wong, Deputy Clerk

Phone No.: _408-535-5118

DISTRICT COURT CASE NUMBER:  C08  00201 RMW

DATE: _JAN 1 1 2008 BY: ___Tiffany Salinas-Harwell_____

PLEASE RETURN SECOND COPY UPON RECEIPT

cc:    Attorney for Movant
       Attorney for Respondent



1  Ronald S. Kravitz (SBN 129704)
       rkravitz@linerlaw.com
2  George H. Kalikman (SBN 147382)
       gkalikman@linerlaw.com
3  Matthew Borden (SBN 214323)
       mborden@linerlaw.com
4  LINER YANKELEVITZ
   SUNSHINE & REGENSTREIF LLP
5  199 Fremont Street, 20th Floor
   San Francisco, CA 94105-2255
6  Telephone: (415) 489-7700
   Facsimile: (415) 489-7701
7
   Attorneys for Plaintiffs
8  Mai Christina Pham, John Pham, Mai Nguyen, Hung Perry
   Nguyen, and Joyce Freeman
9

10                **UNITED STATES BANKRUPTCY COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

12                       **SAN JOSE DIVISION**

13  In re                                    )  Case No. 08-50030 (MM)
                                             )
14  ComUnity Lending, Incorporated, a        )  Chapter 11
    California corporation,                  )
15                                           )
            Debtor.                          )
16  _____ )
                                             )
17  Mai Christina Pham, John Pham, Mai       )  Adv. Proc. No.  08-05006
    Nguyen, Hung Perry Nguyen, and Joyce     )
18  Freeman,                                 )
                                             )  **PLAINTIFFS' NOTICE OF MOTION**
19          Plaintiffs,                      )  **AND MOTION FOR WITHDRAWAL OF**
                                             )  **REFERENCE OF ADVERSARY**
20  vs.                                      )  **PROCEEDING**
                                             )
21  ComUnity Lending, Incorporated, a        )
    California corporation, and Does 1 through 10, )
22  inclusive,                               )
                                             )
23          Defendants.                      )
    _____ )

24

25         **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

26         **PLEASE TAKE NOTICE THAT** as soon as they may be heard, Plaintiffs Mai Christina

27  Pham, John Pham, Mai Nguyen, Hung Perry Nguyen, and Joyce Freeman (collectively,

28  "Plaintiffs") will, and hereby do, move the United States District Court for the Northern District of

---
                                             1

1 | California, San Jose Division ("District Court") to withdraw its reference of the above-captioned

2 | adversary proceeding to the U.S. Bankruptcy Court for the Northern District of California, San Jose

3 | Division, so that the District Court may hear and determine the claims that were originally pending

4 | before the District Court in the litigation styled *Pham, et al., v. ComUnity Lending, Inc., et al.,*

5 | under Case No. C07-05436 JW (HRL). This Motion is based upon 28 U.S.C. § 157(d), Bankruptcy

6 | Rule 5011, Bankruptcy Local Rule 5011-2, this Motion, the attached Memorandum of Points and

7 | Authorities, the attached Declaration of Ronald S. Kravitz and exhibits thereto, the Verified

8 | Complaint, and all other files and records in this action, and any further oral and documentary

9 | evidence as may be presented at or before the time of the hearing of this Motion.

10 | Dated: January 7, 2008

LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP


By:   /s/ George H. Kalikman
George H. Kalikman
Attorneys for Plaintiffs
Mai Christina Pham, John Pham, Mai
Nguyen, Hung Perry Nguyen, and Joyce
Freeman

1   Ronald S. Kravitz (SBN 129704)
        rkravitz@linerlaw.com
2   George H. Kalikman (SBN 147382)
        gkalikman@linerlaw.com
3   Matthew Borden (SBN 214323)
        mborden@linerlaw.com
4   LINER YANKELEVITZ
    SUNSHINE & REGENSTREIF LLP
5   199 Fremont Street, 20th Floor
    San Francisco, CA 94105-2255
6   Telephone: (415) 489-7700
    Facsimile: (415) 489-7701
7
    Attorneys for Plaintiffs
8   Mai Christina Pham, John Pham, Mai Nguyen,
    Hung Perry Nguyen, and Joyce Freeman
9
                    **UNITED STATES BANKRUPTCY COURT**
10
                    **NORTHERN DISTRICT OF CALIFORNIA**
11
                            **SAN JOSE DIVISION**
12

|    |    |
|----|----|
| In re | ) Case No. 08-50030 (MM) |
| COMUNITY LENDING, INCORPORATED, a California corporation, | ) ) Chapter 11 |
| Debtor. | ) ) ) |
| | |
| MAI CHRISTINA PHAM, JOHN PHAM, MAI NGUYEN, HUNG PERRY NGUYEN, and JOYCE FREEMAN, | ) Adv. Proc. No. 08-05006 ) ) **PLAINTIFFS' MEMORANDUM OF** |
| Plaintiffs, | ) **POINTS AND AUTHORITIES IN** ) **SUPPORT OF MOTION FOR** |
| vs. | ) **WITHDRAWAL OF REFERENCE** ) **PURSUANT TO 28 U.S.C. § 157(d)** |
| COMUNITY LENDING, INCORPORATED, a California corporation, and Does 1 through 10, inclusive, | ) ) ) ) |
| Defendants. | ) ) |

0036012/001/35312                           Case # 08-50030/AP #08-05006

## **INTRODUCTION**

Plaintiffs Mai Christina Pham, John Pham, Mai Nguyen, Hung Perry Nguyen, and Joyce Freeman (collectively, "Plaintiffs") respectfully request that the U.S. District Court for the Northern District of California (Ware, J.) ("District Court") withdraw its reference of the above-captioned adversary proceeding to the U.S. Bankruptcy Court for the Northern District of California ("Bankruptcy Court"), so that the District Court may continue to hear and determine the claims that were originally pending before the District Court in the litigation styled *Pham, et al., v. ComUnity Lending, Inc., et al.*, under Case No. C07-05436 JW (HRL) ("District Court Litigation"), and which are now set forth in the Verified Complaint that Plaintiffs filed in this adversary proceeding.[1]   The relief sought by the Plaintiffs is proper under 28 U.S.C. § 157(d), and is necessary to preserve the integrity of District Court orders that defendant ComUnity Lending, Incorporated ("Company") has sought to evade through the commencement of its bankruptcy case.

On October 24, 2007, Plaintiffs filed a complaint against the Company for breach of contract and for declaratory and injunctive relief ("Original Complaint") in the District Court Litigation.  The gravamen of the Original Complaint is that the Plaintiffs, as former employees of the Company and participants in the Company's Non-Qualified Deferred Compensation Plan ("Plan"), should have been paid, in the aggregate, in excess of $3,800,000 on August 10, 2007, when the Company terminated the Plan.  Instead of immediately paying the Plaintiffs their respective Plan benefits, as it was legally obligated to do, the Company forged depository instructions that the Plaintiffs had provided to the Company for delivery to the Plan's trustee, and improperly instructed the trustee to turn over the funds to the Company, rather than to the Plaintiffs' respective depository accounts.

On October 30, 2007, Plaintiffs filed an application for a writ of attachment or, in the alternative, for a temporary protective order, seeking an attachment of the funds that the Company

---

[1] The Verified Complaint in this adversary proceeding essentially restates the averments of the Complaint for Breach of Contract, Declaratory and Injunctive Relief that Plaintiffs filed in the District Court Litigation.  Plaintiff Joyce Freeman was not a party in the District Court Litigation. Her claim is for $407,893.68 and is based on circumstances that are identical to those of the other Plaintiffs.

1   had converted and was holding in constructive trust for the Plaintiffs' benefit. On November 20,

2   2007, after a hearing, the District Court entered a Minute Order granting a Temporary Protective

3   Order ("TPO") in favor of Plaintiffs. On November 21, 2007, the District Court issued a written

4   TPO requiring that the Company "hold all funds associated with the TopHat Deferred

5   Compensation Plan in a separate and sequestered account. . . . No money from the TopHat Plan

6   shall be removed, spent, or otherwise transferred for any purpose." On December 4, 2007, after a

7   further hearing, the District Court entered a Minute Order continuing the TPO pending the entry of

8   an order granting Plaintiffs' application for a writ of attachment.

9        On December 6, 2007, the District Court entered an Order Granting Plaintiffs' Application

10  for a Writ of Attachment, specifically finding that "Plaintiffs have met their burden to establish

11  grounds for relief." On that same day, the District Court issued a Writ of Attachment, noting that

12  the attachment was to secure the sum of $3,835,119, and directing any U.S. Marshall to attach "[a]

13  deposit account [to] be identified by [the Company or its] President, Richard Couch, upon levy of

14  this writ. [The Company] and Mr. Couch have been ordered to disclose the financial institution at

15  which the account is held and the account number of the account to you."

16       From the time that the District Court issued its TPO, the Company represented to Plaintiffs

17  that if they were successful in obtaining a Writ of Attachment and sought to levy on the account in

18  which the Company was holding the Plaintiffs' funds, the Company would file bankruptcy to avoid

19  the attachment lien. Plaintiffs took the Company's bankruptcy threat at face value and, to avoid the

20  costs of litigation, sought to enter into settlement discussions regarding their claims against the

21  Company. After the Company declined to engage in settlement discussions, Plaintiffs informed the

22  Company on December 24, 2007, that they would seek to execute the Writ of Attachment. On

23  December 28, 2007, Plaintiffs effected the levy of the Writ of Attachment. As threatened, the

24  Company filed its chapter 11 bankruptcy petition on January 4, 2008.

25       The district court has original jurisdiction over all cases "arising under" and "related to" the

26  U.S. Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (as amended, the "Bankruptcy Code" or "Code").

27  28 U.S.C. § 1334. Although such cases are automatically referred to the bankruptcy court pursuant

28  to General Order No. 24, the district court may withdraw its reference to the bankruptcy court of

3

0036012/001/35312                                    Case # 08-50030/AP #08-05006

1  any "case or proceeding." 28 U.S.C. § 157(d). Withdrawal of the reference is mandatory where, as

2  here, "resolution of the proceeding requires consideration of both title 11 and other laws of the

3  United States." *Id.* Because resolution of this case requires consideration of the Bankruptcy Code

4  and ERISA, withdrawal of the reference is mandatory.

5      Separately, the district court also has wide discretion to withdraw the reference for "cause

6  shown." 28 U.S.C. § 157(d). Here, withdrawing the reference would achieve judicial economy,

7  prevent the Company's blatant attempted forum shopping, speed the resolution of the Company's

8  bankruptcy case, and prevent duplicative litigation. The District Court has already enjoined the

9  Company from using Plaintiffs' Plan benefits until a judicial determination can be made as to

10 whom they belong, and directed the U.S. Marshal's Office to attach those funds, which it did.

11     The Company should not be able to evade the District Court's orders through the

12 commencement of its bankruptcy case. Moreover, Plaintiffs should not be forced to re-litigate in

13 Bankruptcy Court the issues that the District Court has already heard and determined - - and which

14 would be subject to *de novo* review by the District Court in the event of a contrary ruling by the

15 Bankruptcy Court. Because the District Court already has devoted so much time and attention to

16 the issues in dispute in the District Court Litigation - - which are the same issues in dispute in this

17 adversary proceeding - - those issues can be adjudicated most efficiently by having the District

18 Court hear and determine them. Accordingly, Plaintiffs request that the District Court withdraw its

19 reference of this adversary proceeding to the Bankruptcy Court.

20                              **FACTS**

21     Plaintiffs are former employees of the Company and members of the Plan.[2] The Plan was a

22 "top-hat" plan, which is non-qualified deferred compensation plan governed by ERISA. *See, e.g.,*

23 *Carr v. Nationwide Bank*, 816 F. Supp. 1476 (N.D. Cal. 1993). Over the course of their

24 employment, Plaintiffs contributed $4,243,012.68 in salary to the Plan based on the Company's

25 promise that it would honor the terms of the Plan. Plaintiffs' Plan benefits were held in trust by

26 _____

27 [2] A true and correct copy of the Plan is attached as Exhibit 1 to the Declaration of Ronald S.
   Kravitz ("Kravitz Decl.") filed and served simultaneously herewith.

28

1 Investors Bank & Trust Company ("IBT") an independent trustee, pursuant to a Trust Agreement

2 dated September 1, 2003 ("Trust Agreement"), of which Plaintiffs were third-party beneficiaries.[3]

3 On August 10, 2007, the Company's board of directors voted to terminate the Plan.[4]

4     Section 10.2 of the Plan provides that "Upon termination of the Plan, the Participant's full

5 Compensation on a non-deferred basis will be thereupon restored." Section 8.13 of the Plan states:

6 "Benefits under this Plan are **immediately payable** in a lump sum **upon a Plan Termination**."

7 (Emphasis supplied.) Instead of paying Plaintiffs immediately, the Company kept the Plan's

8 termination secret for almost one month.[5]

9     When the Company finally informed them of the Plan's termination, Plaintiffs completed

10 forms instructing the Plan's trustee to deposit their respective benefits into their respective accounts

11 at various depository institutions, and then submitted the forms to the Company.  Upon receiving

12 the completed and executed forms from the Plaintiffs, the Company crossed out Plaintiffs'

13 instructions and forged new instructions, directing the Plan's trustee to turn over the Plaintiffs'

14 money to the Company instead, which the trustee did.[6]  Thereafter, the Company kept a portion of

15 the Plaintiffs' Plan benefits in a segregated account instead of distributing it to Plaintiffs.  In a brief

16 filed in the District Court Litigation, the Company admitted that it placed at least $227,000 of Plan

17 benefits in one of its operating accounts, contrary to its repeated promises to Plaintiffs that it would

18 transfer those funds to the segregated account.  (District Court Litigation Docket No. 25 at 5:19-20;

19 Kravitz Decl. ¶ 9.)

20     On November 17, 2007, almost one month *after* Plaintiffs instituted the District Court

21 Litigation, the Company's "Restructuring Officer" ordered a former officer of the Company to

22

23 [3] A true and correct copy of the Trust Agreement is attached as Exhibit 2 to the Kravitz Decl.

24 [4] A true and correct copy of the minutes of the Company's board meeting at which the Board of
Directors unanimously authorized the termination of the Plan is attached as Exhibit 3 to the Kravitz

25 Decl.

26 [5] A true and correct copy of the Company's September 4, 2007 announcement informing
participants that the Company had terminated the Plan is attached as Exhibit 4 to the Kravitz Decl.

27 [6] True and correct copies of Plaintiffs' distribution requests are attached as Exhibit 5 to the Kravitz
Decl.

28

0036012/001/35312                                   Case # 08-50030/AP #08-05006

1  "adjust" the Company's financial statement based on "the Company's assets and liabilities as of

2  September 30, 2007 based on a present day fair market valuation in light of the current factual

3  circumstances." (District Court Litigation Docket No. 25, Attachment 1 ¶ 5.)  The Company

4  contends that its "adjusted" financial statement now shows that it was insolvent as of September

5  30, 2007, but it has made no claim that it was insolvent at any earlier time, including on August 10,

6  2007, when Plaintiffs' Plan benefits became due and payable immediately.  (*Id.*, Attachment 1 ¶ 5,

7  Ex. A.)

8          As is more fully set forth above, after the Plaintiffs sought to execute the Writ of

9  Attachment issued by the District Court, the Company commenced its bankruptcy case, thereby

10  compelling Plaintiffs to commence this adversary proceeding.

11  **ARGUMENT**

12          District courts are vested with jurisdiction over every case commenced under the

13  Bankruptcy Code. 28 U.S.C. § 1334.  Pursuant to General Order No. 24, such cases are

14  automatically referred to the bankruptcy court within the same judicial district.  A district court

15  may withdraw its reference of any "case or proceeding." 28 U.S.C. § 157(d).  "'Case' comprises

16  the entire Chapter 7, 9, 11, or 13 case that is commenced by the filing of a petition.  Disputes which

17  arise during the pendency of a case are referred to in § 1334(b) as 'proceedings,' and there may be

18  numerous proceedings within a case." *In re Anthony Tammaro, Inc.*, 56 B.R. 999, 1001 n.2 (D.N.J.

19  1986).  Thus, a district court may withdraw its reference as to entire cases, entire adversary

20  proceedings, or individual motions within a case or adversary proceeding.  *See, e.g., Barona Group*

21  *of Capitan Grande Band of Mission Indians v. Am. Mgmt & Amusement, Inc.*, 840 F.2d 1394, 1399

22  (9th Cir. 1987) (affirming the district court's decision to "withdraw its reference of this bankruptcy

23  case from the U.S. Bankruptcy Court for the Southern District of California, but only to the extent

24  of permitting this Court to hear and determine the issue of the validity of the management

25  agreement of May 11, 1983 between the parties").

26  I.      **WITHDRAWAL OF THE REFERENCE IS MANDATORY.**

27          "Congress has unequivocally provided that where other federal laws are involved which

28  spark interstate commerce concerns, those cases must be submitted to Article III courts." *In re Am.*

1 | *Solar King Corp.*, 92 BR 207, 209 (W.D. Tex. 1988). Accordingly, 28 U.S.C. § 157(d) provides:

2 | "The district court shall, on timely motion of a party, so withdraw a proceeding if the court

3 | determines that resolution of the proceeding requires consideration of both title 11 and other laws

4 | of the United States regulating organizations or activities affecting interstate commerce."

5 | Here, resolution of this case turns on ERISA, a federal law affecting interstate commerce,

6 | and on the Bankruptcy Code. Plaintiffs maintain that the Company has held their Plan benefits in

7 | constructive trust since August 10, 2007, when the Company terminated the Plan; the Plan required

8 | that the deferred compensation be restored to the Plan participants; and that the Plan benefits be

9 | paid immediately to Plaintiffs. Plaintiffs maintain further that because the Company is holding the

10 | Plaintiffs' Plan benefits in constructive trust, those benefits and their proceeds are not property of

11 | the bankruptcy estate. *E.g., In re Unicom Computer Corp.*, 13 F.3d 321, 324 (9th Cir. 1993).

12 | Adjudicating Plaintiffs' claims and causes of action against the Company will require any

13 | court to determine Plaintiffs' right to a constructive trust under ERISA, and to construe Bankruptcy

14 | Code § 541, which defines what constitutes "property of the estate" under the Bankruptcy Code.

15 | Thus, the outcome of this case turns on substantial questions of federal non-bankruptcy and

16 | bankruptcy law. This is the prototypical situation where mandatory withdrawal is required.

17 | "[C]ourts disagree regarding the standard for triggering a § 157(d) mandatory withdrawal

18 | (there is yet no controlling Ninth Circuit authority on the issue)." Kathleen P. March, Judge Alan

19 | M. Ahart, Judge Leslie Tchaikovsky, *Cal. Practice Guide Bankruptcy* § 1:375 (Rutter Guide 2007).

20 | Some courts have held that withdrawal is required whenever consideration of any federal non-

21 | bankruptcy law is involved; others have held that the non-bankruptcy law must be likely to affect

22 | the outcome, or must create "substantial" questions. *Id.* (collecting cases).

23 | Certainly, the most reasonable interpretation is one that does not impose conditions beyond

24 | the plain language of the statute, which simply requires any "consideration" of any non-bankruptcy

25 | and any bankruptcy law. *E.g., In re Keifer*, 276 B.R. 196, 200 (E.D. Mich. 2002) ("resolution of

26 | the proceeding at bar requires consideration of federal laws outside of Title 11 insofar as a court

27 | must determine whether Defendant violated a fiduciary duty under ERISA. Therefore, the plain

28 | meaning of the statute dictates that this Court must withdraw the proceeding. Where, as here, the

1   text of a statute is plain, the Court's inquiry is at an end."). Even under the most stringent test

2   requiring substantial questions of non-bankruptcy and bankruptcy law, this standard is easily met

3   because the outcome of this case is dictated by a confluence of ERISA and the Bankruptcy Code.

4   As such, withdrawal is mandatory.

5           **A. Resolution of this Proceeding Requires Consideration of ERISA.**

6           Proceedings requiring consideration of ERISA constitute proceedings "under other laws of

7   the United States regulating . . . activities affecting interstate commerce" under 28 U.S.C. § 157(d).

8   *See Martin v. Friedman*, 133 B.R. 609, 612 (N.D. Ohio 1991) ("Resolution of the adversary

9   proceeding will obviously require consideration of ERISA. ERISA is unquestionably a federal law

10  'regulating organizations or activities affecting interstate commerce.' *See* 29 U.S.C. § 1001(a).

11  Therefore, by the terms of 28 U.S.C. § 157(d), this Court must withdraw the adversary proceedings

12  from the bankruptcy court."); *In re Ottowa Cartage, Inc.*, 55 B.R. 371, 374 (N.D. Ill. 1985)

13  ("Trustees contend ERISA § 1103(c)(1) prohibits Ottawa's Code § 547(b) attempt to recover an

14  otherwise voidable preference. Resolution of this adversary proceeding plainly necessitates

15  'substantial and material consideration' of ERISA § 1103(c)(1). Section 157(d) mandates a

16  withdrawal of reference."); *Matter of Lissner Corp.*, 115 B.R. 604, 612 (N.D. Ill. 1990)

17  (withdrawing reference where "[r]esolution of the dispute over Central States' claim will require

18  more than rote application of the provisions of ERISA or MPPAA"); *see also In re Keifer*, 276

19  B.R. at 200.

20          This adversary proceeding involves the interpretation of an ERISA-governed top-hat plan, a

21  type of plan about which there have been relatively few federal decisions. Substantial legal

22  questions that a court may need to determine include, without limitation, the scope of ERISA's

23  preemption of related state-law claims, the duties of an employer administering a top-hat plan

24  under ERISA, and the remedies available to Plaintiffs. This litigation may also involve the creation

25  and application of federal common law to fill in interstices in ERISA, which federal district courts

26  are obviously uniquely empowered and qualified to do. Thus, the requirement that the proceeding

27  require "consideration of . . . other laws of the United States regulating organizations or activities

28  affecting interstate commerce" is satisfied easily. 28 U.S.C. § 157(d).

8

1

2 **B.  Adjudication of This Litigation Requires Consideration of the Bankruptcy Code.**

3    This litigation will also involve consideration of at least one provision of the Bankruptcy

4 Code.  Under the Code, "property of the estate" excludes "[p]roperty in which the debtor holds, as

5 of the commencement of the case, only legal title and not an equitable interest...."  11 U.S.C. §

6 541(d); *In re Unicom Computer Corp.*, 13 F.3d 321, 324 (9th Cir. 1993) ("something held in trust

7 by a debtor for another is neither property of the bankruptcy estate under section 541(d), nor

8 property of the debtor for purposes of section 547(b)").

9    Because a debtor has no equitable interest in it, property held in constructive trust is not

10 "property of the estate."  *Id.* ("In the instant case, we are dealing with a particular type of trust, *viz*,

11 a constructive trust"); *In re Coupon Clearing Serv.*, 113 F.3d 1091, 1099 (9th Cir. 1997) (citations

12 omitted) ("Property that is held in trust by a debtor for another, however, is not property of the

13 estate.  This rule of law applies with equal force to constructive trusts . . . ."); *In re Advent Mgm.*

14 *Corp.*, 104 F.3d 293, 295 (9th Cir. 1997) ("In the case of funds held by a debtor in constructive

15 trust for another person, the equitable interest in the trust funds belongs to the trust beneficiary not

16 the debtor."); *Elliott v. Bumb*, 356 F.2d 749, 753 (9th Cir. 1966).  Consistent with the Ninth

17 Circuit's numerous rulings on this issue, Plaintiffs maintain that when the Company improperly

18 seized and converted Plaintiffs' Plan benefits, the Company did not transmute the Plaintiffs' Plan

19 benefits into property of the Company's bankruptcy estate, as that term is defined under section

20 541 of the Code.  Accordingly, Plaintiffs have satisfied the requirement that the "proceeding

21 requires consideration of . . . title 11" in order for the reference to be withdrawn.

22    In sum, resolution of this litigation will require (1) a determination of Plaintiffs' right to a

23 constructive trust under ERISA, and (2) whether such constructive trust thus excludes the Plan

24 benefits from property of the estate under Code § 541.  Given that substantial questions of non-

25 bankruptcy and bankruptcy law dictate the outcome of this case, withdrawal of the reference is

26 required under any construction of 28 U.S.C. § 157(d).

27

28

## II.    THE DISTRICT COURT SHOULD WITHDRAW
THE REFERENCE FOR "CAUSE SHOWN."

Even if the District Court determines that withdrawal of the reference is not mandatory, Plaintiffs respectfully submit that the District Court should exercise its discretion to withdraw the reference. The first sentence of 28 U.S.C. § 157(d) gives the District Court wide discretion to withdraw the reference for "cause shown." *Sec. Farms v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers*,124 F.3d 999, 1007 (9th Cir. 1997). ("We review a district court's decision to withdraw the reference for an abuse of discretion."). Ample cause exists under the facts of this case.

"In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997). "Other District Courts in this Circuit have considered additional factors suggested by the Second Circuit, including: whether the claim is core or non-core, whether the claim is legal or equitable; whether the claim is triable by a jury; and conservation of estate and non-debtor resources." *Betta Prods., Inc. v. Distrib. Sys. and Servs., Inc.*, No. 07-2071 SC, 2007 WL 1750211 *2 (N.D. Cal. June 15, 2007). Here, these factors militate in favor of withdrawing the reference.

Withdrawing the reference will conserve judicial resources. Through its jurisdiction over the District Court Litigation, the District Court has already invested significant time and judicial resources in considering and ruling upon issues between the Plaintiffs and the Company that are identical to those in this adversary proceeding. Under these circumstances, it would be more efficient to litigate this adversary proceeding before the District Court. *See Vacation Village, Inc. v. Clark County Nevada*, 497 F.3d 902, 914 (9th Cir. 2007) (withdrawal of reference so that judge familiar with the case could hear it "efficiently used judicial resources and minimized further delay and costs to the parties").

Withdrawing the reference also will reduce expense and delay. The issues in this adversary proceeding will have to be litigated either in the District Court or the Bankruptcy Court. Litigating

1  this adversary proceeding in the District Court should save money and prevent delay because it will

2  enable the parties to avoid having to re-litigate the issues in dispute.

3      Further, as noted above, this lawsuit is a non-core proceeding because it does not depend on

4  the Code for its existence and can proceed in the District Court. *See Dunmore v. United States*, 358

5  F.3d 1107, 1114 (9th Cir. 2005) (cases are classified as "'non-core' proceedings if they do not

6  depend on the Bankruptcy Code for their existence and they could proceed in another court").

7  Because this is a non-core proceeding, any rulings by the Bankruptcy Court would be subject to *de*

8  *novo* review by the District Court. 28 U.S.C. § 157(c)(1); *Sec. Farms v. Int'l Bhd. of Teamsters*,

9  124 F.3d 999, 1009 (9th Cir. 1997). Thus, litigating this adversary proceeding before the District

10  Court will save time and resources. *Id.* ("Inasmuch as a bankruptcy court's determinations on non-

11  core matters are subject to de novo review by the district court, unnecessary costs could be avoided

12  by a single proceeding in the district court.").

13      Withdrawing the reference will also prevent the Company from forum shopping. The

14  Company timed the commencement of its bankruptcy case in order to avoid the Writ of Attachment

15  ordered by the District Court. Preventing such evasive conduct is yet another reason to withdraw

16  the reference. Indeed, if the Plaintiffs are forced to re-litigate the issue of their entitlement to

17  provisional relief pending a determination on the merits of their case, the resultant ruling could be

18  appealed to the District Court. This would needlessly impose added burden and expense on all of

19  the parties.

20      Withdrawing the reference will eliminate the possibility of inconsistent rulings, and

21  facilitate the administration of and expedite the Company's bankruptcy case, since the Bankruptcy

22  Court will not have to expend judicial resources on a case to which the District Court has already

23  devoted significant time and effort.

24      Finally, as the District Court has already determined, Plaintiffs' claims against the

25  Company have "probable validity." The crux of those claims is that Plaintiffs' Plan benefits belong

26  to the Plaintiffs - not the Company. The Company is holding Plaintiffs' Plan benefits in

27  constructive trust for the Plaintiffs' benefit; those funds are not and cannot constitute property of

28  the Company's bankruptcy estate. Permitting the Company to litigate the issues in dispute in this

1    adversary proceeding before the Bankruptcy Court would give the Company a proverbial second

2    bite of the apple, and unintentionally reward the Company for its misappropriation of the Plaintiffs'

3    Plan benefits and circumvention of the District Court's Order for a Writ of Attachment.

4         For each of the reasons set forth above, Plaintiffs respectfully submit that there is ample

5    "cause shown" under § 157(d).  This is a separate and independent reason that the District Court

6    should withdraw the reference.

7                            **CONCLUSION**

8         For the foregoing reasons, Plaintiffs respectfully request the District Court to withdraw the

9    reference for the above-captioned adversary proceeding and all motions and other matters relating

10   thereto between Plaintiffs and the Company.

11

12   Dated: January 7, 2008                     LINER YANKELEVITZ
                                                 SUNSHINE & REGENSTREIF LLP
13

14
                                                 By:___/s/ George H. Kalikman_____
15                                                     George H. Kalikman

16                                               Attorneys for Plaintiffs
                                                 MAI CHRISTINA PHAM, JOHN PHAM,
17                                               MAI NGUYEN, HUNG PERRY
                                                 NGUYEN, and JOYCE FREEMAN
18

19

20

21

22

23

24

25

26

27

28



1  Ronald S. Kravitz (SBN 129704)
       rkravitz@linerlaw.com
2  George H. Kalikman (SBN 147382)
       gkalikman@linerlaw.com
3  Matthew Borden (SBN 214323)
       mborden@linerlaw.com
4  LINER YANKELEVITZ
   SUNSHINE & REGENSTREIF LLP
5  199 Fremont Street, 20th Floor
   San Francisco, CA 94105-2255
6  Telephone: (415) 489-7700
   Facsimile: (415) 489-7701
7
   Attorneys for Plaintiffs
8  Mai Christina Pham, John Pham, Mai Nguyen,
   Hung Perry Nguyen, and Joyce Freeman
9
                 **UNITED STATES BANKRUPTCY COURT**
10
                 **NORTHERN DISTRICT OF CALIFORNIA**
11
                          **SAN JOSE DIVISION**
12
   In re                            )  Case No. 08-50030 (MM)
13                                   )
   ComUnity Lending, Incorporated, a )  Chapter 11
14 California corporation,           )
                                     )
15      Debtor.                      )
                                     )
16 ──────────────────────────────────)
   Mai Christina Pham, John Pham, Mai )  Adv. Proc. No.  08-05006
17 Nguyen, Hung Perry Nguyen, and Joyce )
   Freeman,                          )
18                                   )  **DECLARATION OF RONALD S.**
           Plaintiffs,              )  **KRAVITZ IN SUPPORT OF**
19                                   )  **PLAINTIFFS' MOTION FOR**
   vs.                               )  **WITHDRAWAL OF REFERENCE OF**
20                                   )  **ADVERSARY PROCEEDING**
   ComUnity Lending, Incorporated, a )
21 California corporation, and Does 1 through 10, )
   inclusive,                        )
22                                   )
           Defendants.              )
23 ──────────────────────────────────)

24

25      I, Ronald S. Kravitz, declare as follows:

26      1.      I am an attorney at law duly licensed to practice before all of the courts in the State

27 of California.  I am a partner in the law firm of Liner Yankelevitz Sunshine & Regenstreif LLP,

28 counsel of record for Plaintiffs Mai Christina Pham, John Pham, Mai Nguyen, Hung Perry Nguyen,

                                        1

0036012/001/35286v01                          Case No. 08-50030/AP #08-05006

1  and Joyce Freeman in this case.  I have personal knowledge of the facts set forth in this Declaration

2  and, if called as a witness, could and would testify competently to such facts under oath.

3       2.       Attached as Exhibit 1 is a true and correct copy of the ComUnity Non-Qualified

4  Deferred Compensation Plan ("Plan").

5       3.       Attached as Exhibit 2 is a true and correct copy of the Trust Agreement between

6  Investors Bank & Trust Company ("IBT") and ComUnity Lending Inc. ("Company").

7       4.       Attached as Exhibit 3 is a true and correct copy of the minutes of the Company's

8  Board of Directors meeting on August 10, 2007.

9       5.       Attached as Exhibit 4 is a true and correct copy of the Company's announcement of

10  the termination of the Plan, dated September 4, 2007.

11       6.       Attached collectively as Exhibit 5 are true and correct copies of the distribution

12  requests submitted by Plaintiffs, with the instructions crossed out and changed by the Company.

13       7.       Attached as Exhibit 6 is a true and correct copy of the Minute Order dated

14  November 20, 2007 issued by the United States District Court for the Northern District of

15  California, San Jose Division ("District Court") in the action styled *Pham, et al., v. ComUnity*

16  *Lending, Inc., et al.*, Case No. C07-05436 JW (HRL) ("District Court Litigation").

17       8.       Attached as Exhibit 7 is a true and correct copy of the Temporary Protective Order

18  entered by the District Court in the District Court Litigation on November 21, 2007.

19       9.       In an opposition brief that the Company filed in the District Court Litigation on

20  November 28, 2007 (Docket No. 25 in the District Court Litigation), the Company stated:

21  "Approximately $227,011, however, representing contributions from four different individuals,

22  including one of the Plaintiffs, was posted to the Company's operating account."

23       10.       Attached as Exhibit 8 is a true and correct of the Minute Order entered by the

24  District Court in the District Court Litigation on December 4, 2007.

25       11.       Attached as Exhibit 9 is a true and correct copy of the Order Granting Plaintiffs'

26  Application for a Writ of Attachment, which was entered by the District Court in the District Court

27  Litigation on December 6, 2007.

28

0036012/001/ 35286v01                                          Case No. 08-50030/AP #08-05006

1    12.    Attached as Exhibit 10 is a true and correct copy of the Writ of Attachment issued

2  by the District Court in the District Court litigation on December 6, 2007.

3    I declare under penalty of perjury under the laws of the United States that the foregoing is

4  true.

5  Dated: January 7, 2008

6

7                              /s/   Ronald S. Kravitz
                               Ronald S. Kravitz
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

0036012/001/35286v01                              Case No. 08-50030/AP #08-05006

**EXHIBIT 2**

# TRUST AGREEMENT

(a)    This Agreement between  ComUnity Lending Inc. ("Employer") and Investors Bank & Trust Company ("Trustee") is effective September 1, 2003;

(b)    WHEREAS, the Employer has adopted the ComUnity Lending, Inc. Non-Qualified Deferred Compensation Plan ("Plan");

(c)    WHEREAS, the Employer has incurred or expects to incur liability under the terms of such Plan with respect to the individuals participating in such Plan;

(d)    WHEREAS, the Employer wishes to establish a trust (hereinafter called "Trust") and to contribute to the Trust assets that shall be held therein, subject to the claims of the Employer's creditors in the event of the Employer's Insolvency, as herein defined, until paid to Plan participants and their beneficiaries in such manner and at such times as specified in the Plan;

(e)    WHEREAS, it is the intention of the parties that this Trust shall constitute an unfunded arrangement and shall not affect the status of the Plan as an unfunded plan maintained for the purpose of providing deferred compensation for a select group of management or highly compensated employees for purposes of Title I of the Employee Retirement Income Security Act of 1974;

(f)    WHEREAS, it is the intention of the Employer to make contributions to the Trust to provide itself with a source of funds to assist it in the meeting of its liabilities under the Plan;

NOW, THEREFORE, the parties do hereby establish the Trust and agree that the Trust shall be comprised, held and disposed of as follows:

## Section 1.        Establishment Of Trust

(a)    The Employer hereby deposits contributions with the Trustee in Trust, which shall become the principal of the Trust to be held, administered and disposed of by Trustee as provided in this Trust Agreement.

(b)    The Trust hereby established shall be irrevocable

(c)    The Trust is intended to be a grantor trust, of which the Employer is the grantor, within the meaning of subpart E, part I, subchapter J, chapter 1, subtitle A of the Internal Revenue Code of 1986, as amended, and shall be construed accordingly.

Rev. 1/03

(d)    The principal of the Trust and any earnings shall be held separate and apart from other funds of the Employer and shall be used exclusively for the uses and purposes of Plan participants and general creditors as herein set forth  Plan participants and their beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Plan and this Trust Agreement shall be mere unsecured contractual rights of Plan participants and their beneficiaries against Employer. Any assets held by the Trust will be subject to the claims of the Employer's general creditors under federal and state law in the event of Insolvency, as defined in Section 3(a).

(e)    The Employer, in its sole discretion, may at any time, or from time to time, make additional deposits of cash in trust with the Trustee to augment the principal to be held, administered and disposed of by Trustee as provided in this Trust Agreement. Neither the Trustee nor any Plan participant or beneficiary shall have any right or duty to compel such additional deposits.

### Section 2.    Payments to Plan Participants and Their Beneficiaries

(a)    The Employer shall provide to the Trustee all information necessary regarding the benefit payable in respect of each Plan participant (and his or her beneficiaries), and other instructions required by the Trustee such as the form in which such amount is to be paid, (as provided for or available under the Plan), the time of commencement for payment of such amounts and tax withholding instructions Except as otherwise provided herein, the Trustee shall make payments to or for the benefit of, the Plan participants and their beneficiaries in accordance with such information. The Trustee shall make provision for the reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits pursuant to the terms of the Plan.

(b)    The entitlement of a Plan participant or his or her beneficiaries to benefits under the Plan shall be determined by the Employer or such party as it shall designate under the Plan, and any claim for such benefits shall be considered and reviewed under the procedures set out in the Plan.

(c)    The Employer may make payment of benefits directly to the Plan participants or their beneficiaries as they become due under the terms of the Plan. The Employer shall notify the Trustee of its decision to make payment of benefits directly prior to the time amounts are payable to participants or their beneficiaries. In addition, if the principal of the Trust and any earnings are not sufficient to make payments of benefits in accordance with the terms of the Plan, the Employer shall make the balance of each such payment as it falls due. The Trustee shall notify the Employer where principal and earnings are not sufficient.

### Section 3.    Trustee Responsibility Regarding Payments to Trust Beneficiary When Employer is Insolvent

(a)    The Trustee shall cease payment of benefits to or for the benefit of Plan participants and their beneficiaries if the Employer is Insolvent  The Employer shall be considered "Insolvent" for purposes of this Trust Agreement if (i) the Employer is unable to pay its debts as they become due, or (ii) the Employer is subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

(b)    At all times during the continuance of this Trust, as provided in Section 1(d) hereof, the principal and income of the Trust shall be subject to claims of general creditors of the Employer under federal and state law as set forth below.

(1)     The Board of Directors/Trustees and Chief Executive Officer on behalf of the Employer shall have the duty to inform the Trustee in writing of the Employer's Insolvency. If a person claiming to be a creditor of the Employer alleges in writing to the Trustee that the Employer has become Insolvent, the Trustee shall determine whether the Employer is Insolvent and, pending such determination, Trustee shall discontinue payment of benefits to Plan participants or their beneficiaries.

(2)     Unless the Trustee has actual knowledge of the Employer's Insolvency, or has received notice from the Employer or a person claiming to be a creditor alleging that the Employer is Insolvent, the Trustee shall have no duty to inquire whether the Employer is Insolvent. The Trustee may in all events rely on such evidence concerning the Employer's solvency as may be furnished to the Trustee and that provides the Trustee with a reasonable basis for making a determination concerning the Employer's solvency.

(3)     If at any time the Trustee has determined that the Employer is Insolvent, the Trustee shall discontinue payments to Plan participants or their beneficiaries and shall hold the assets of the Trust for the benefit of the Employer's general creditors. Nothing in this Trust Agreement shall in any way diminish any rights of Plan participants or their beneficiaries to pursue their rights as general creditors of the Employer with respect to benefits due under the Plan or otherwise.

(4)     The Trustee shall resume the payment of benefits to Plan participants or their beneficiaries in accordance with Section 2 of this Trust Agreement only after the Trustee has determined that the Employer is not Insolvent (or is no longer Insolvent).

(c)     Provided that there are sufficient assets, if the Trustee discontinues the payment of benefits from the Trust pursuant to Section 3(b) and subsequently resumes such payments, the first payment following such discontinuance shall include the aggregate amount of all payments due to the Plan participants or their beneficiaries under the terms of the Plan for the period of such discontinuance, less the aggregate amount of any payments made to the Plan participants or their beneficiaries by the Employer in lieu of the payments provided for hereunder during any such period of discontinuance.

## Section 4.     Payments to Employer

Except as provided in Section 3, after the Trust has become irrevocable, the Employer shall have no right or power to direct the Trustee to return to the Employer or to divert to others any of the Trust assets before all payment of benefits have been made to the Plan participants and their beneficiaries pursuant to the terms of the Plan.

## Section 5.     Investment Authority

(a)     In no event may the Trustee invest in securities (including stock or rights to acquire stock) or obligations issued by the Employer, other than a de minimis amount held in common investment vehicles in which the Trustee invests. Except as provided below, all rights associated with assets of the Trust shall be exercised by the Trustee or the person designated by the Trustee, and shall in no event be exercisable by or rest with Plan participants, except that voting rights with respect to Trust assets will be exercised by the Employer, and except that dividend rights with respect to Trust assets will rest with the Employer.

(b)    The Trustee shall have the power:

    (i)    to invest the Trust as directed by the Employer, and

    (ii)    to collect and receive any and all money and other property due to the Trust and to give full discharge therefor.

(c)    The Trustee shall follow the directions of the Employer with respect to investing and reinvesting the Trust. The Employer shall be responsible to ensure that its directions are in accordance with the Plan and are not contrary to law. The Trustee shall have no responsibility to monitor investments of the Trust, and shall not be liable for any investment losses or consequences resulting from any action or inaction of the Employer with respect to the investments of the Trust. Subject to said directions, the Trustee will invest Trust assets only by utilizing investments or investment vehicles or options made available through or permitted by Diversified Investment Advisors, Inc. ("Diversified") or one of its affiliates; including fixed and variable group annuity contracts, investment companies registered under the Investment Company Act of 1940 and Schwab's Personal Choice Retirement Account™.

(d)    Employer To Establish Rules:    The Employer may at any time make such uniform and nondiscriminatory rules as it determines necessary or appropriate regarding the administration and investment of the Trust assets.

## Section 6.    Disposition of Income

(a)    During the term of this Trust, all income received by the Trust, net of expenses and taxes, shall be accumulated and reinvested.

## Section 7.    Accounting by Trustee

The Trust shall be valued daily. The Trustee shall keep accurate and detailed records of all investments, receipts, disbursements, and all other transactions required to be made, including such specific records as shall be agreed upon in writing between the Employer and Trustee. Within 90 days following the close of each calendar year and within 90 days after the removal or resignation of the Trustee, Trustee shall deliver to the Employer a written account of its administration of the Trust during such year or during the period from the close of the last preceding year to the date of such removal or resignation, setting forth all investments, receipts, disbursements and other transactions effected by it, including a description of all securities and investments purchased and sold with the cost or net proceeds of such purchases or sales (accrued interest paid or receivable being shown separately), and showing all cash, securities and other property held in the Trust at the end of such year or as of the date of such removal or resignation, as the case may be. The written approval of any accounting by the Employer shall be final as to all matters and transactions stated or shown therein and binding upon the Employer and all persons who then shall be or thereafter shall become interested in this Trust. Failure of the Employer to notify the Trustee within 180 days after receipt of any accounting of its disapproval of such accounting shall be the equivalent of written approval.

## Section 8.    Responsibility of Trustee

(a)    The Trustee shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in

the conduct of an enterprise of a like character and with like aims, provided, however, that Trustee shall incur no liability to any person for any action taken pursuant to a direction, request or approval given by Employer which is contemplated by, and in conformity with, the terms of the Plan or this Trust and is given in writing by Employer. In the event of a dispute between the Employer and another party, the Trustee may apply to a court of competent jurisdiction to resolve the dispute.

(b)  If the Trustee undertakes or defends any litigation arising in connection with this Trust, the Employer agrees to indemnify the Trustee against Trustee's costs, expenses and liabilities (including without limitation, attorney's fees and expenses) relating thereto and to be primarily liable for such payments. If the Employer does not pay such costs, expenses and liabilities in a reasonably timely manner, the Trustee may obtain payment from the Trust.

(c)  The Trustee may consult with legal counsel (who may also be counsel for the Employer generally) with respect to any of its duties or obligations under the Trust.

(d)  The Trustee may hire agents, accountants, actuaries, investment advisors, financial consultants or other professionals to assist it in performing any of its duties or obligations under the Trust. As of the effective date of the Trust Agreement, the Trustee has appointed Diversified as the agent to which it has delegated certain duties. Also, as of the effective date of the Trust Agreement, the Trustee appoints the Employer as its authorized representative to which it has delegated the authority to sign on the Trustee's behalf all documents relating to the investment of Plan assets in any vehicle sponsored by or made available through Diversified and its affiliates.

(e)  The Trustee shall have, without exclusion, all powers conferred on Trustees by applicable law, unless expressly provided otherwise herein.

(f)  Notwithstanding any powers granted to the Trustee pursuant to this Trust Agreement or to applicable law, Trustee shall not have any power that could give this Trust the objective of carrying on a business and dividing the gains therefrom, within the meaning of section 301.7701-2 of the Procedure and Administrative Regulations promulgated pursuant to the Internal Revenue Code.

(g)  The Trustee shall be accountable only for funds actually received by it hereunder and shall have no duty or liability to determine that the amount of the funds received by it comply with provision of the Plan.

**Section 9.**    <u>Compensation and Expenses of Trustee</u>

(a)  There are currently no fees due the Trustee from the Plan. However, the Trustee reserves the right to impose and/or amend fees upon the giving of 90 days' advance written notice to the Employer. If the Trustee resigns or is removed during the 90 day notice period, such new or amended fees will not be in effect.

(b)  Any fees imposed pursuant to (a) which are incurred in the administration of the Trust may be paid directly to the Trustee by the Employer. All fees not so directly paid by the Employer shall be paid from the assets of the Trust.

(c)  In order to provide for payment of any fees not paid directly by the Employer as provided in (b), the Trustee in its discretion may partially or fully liquidate any asset in the Trust and shall not be liable for any loss resulting from such liquidation. Any fees of the Trustee which are not paid from the Trust for whatever reason will be the responsibility of the Employer. Any payment out of the Trust

of any of the fees authorized in this Section shall be deemed to be for the exclusive benefit of the Participants and their successors in interest.

**Section 10.**    <u>Resignation and Removal of Trustee</u>

(a)    Trustee may resign at any time by written notice to Employer, which resignation shall be effective 90 days after the Employer's receipt of such notice unless the Employer and Trustee agree otherwise.

(b)    The Trustee may be removed by the Employer on 90 days advance written notice or upon shorter notice accepted by Trustee.

(c)    Upon a Change of Control, as defined herein, the Trustee may not be removed by Employer for one year.

(d)    Upon resignation or removal of the Trustee and appointment of a successor Trustee, all assets shall subsequently be transferred to the successor Trustee. The transfer shall be effective no less than 90 days after receipt of notice of resignation, removal or transfer unless the Employer shortens the time limit.

(e)    If Trustee resigns or is removed, a successor shall be appointed, in accordance with Section 11, hereof, by the effective date of resignation or removal under paragraph(s) (a) or (b) of this section. If no such appointment has been made, Trustee may apply to a court of competent jurisdiction for appointment of a successor or for instructions. All expenses of Trustee in connection with the proceeding shall be allowed as administrative expenses of the Trust.

**Section 11.**    <u>Appointment of Successor</u>

(a)    If the Trustee resigns or is removed in accordance with Section 10(a) or (b) the Employer may appoint any third party, such as a bank trust department or other party that may be granted corporate trustee powers under state law, as a successor to replace Trustee upon resignation or removal. The appointment shall be effective when accepted in writing by the new Trustee, who shall have all of the rights and powers of the former Trustee, including ownership rights in the Trust assets. The former Trustee shall execute any instrument necessary or reasonably requested by the Employer or the successor Trustee to evidence the transfer.

(b)    The successor Trustee need not examine the records and acts of any prior Trustee and may retain or dispose of existing Trust assets, subject to Sections 7 and 8. The successor Trustee shall not be responsible for and the Employer shall indemnify and defend the successor Trustee from any claim or liability resulting from any action or inaction of any prior Trustee or from any other past event, or any condition existing at the time it becomes successor Trustee.

<u>Section 12.</u>        <u>Amendment or Termination</u>

(a)    This Trust Agreement may be amended by a written instrument executed by both the Trustee and Employer. Notwithstanding the foregoing, no such amendment shall conflict with the terms of the Plan or shall make the Trust revocable after it has become irrevocable in accordance with Section 1(b).

(b)    The Trust shall not terminate until the date on which Plan participants and their beneficiaries are no longer entitled to benefits pursuant to the terms of the Plan(s). Upon termination of the Trust any assets remaining in the Trust shall be returned to the Employer.

<u>Section 13.</u>        <u>Miscellaneous</u>

(a)    Any provision of this Trust Agreement prohibited by law shall be ineffective to the extent of any such prohibition, without invalidating the remaining provisions hereof.

(b)    Benefits payable to Plan participants and their beneficiaries under this Trust Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

(c)    This Trust Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

(d)    Depending on the type of plan being covered under this Trust, either 1) or 2) below is applicable.

        1)    For purposes of this Trust and if the Employer is a stock corporation, Change of Control shall mean: "the purchase or other acquisition by any person, entity or group of persons, within the meaning of Section 13(d) or 14(d) of the Securities Exchange Act of 1934 ("Act"), or any comparable successor provisions, of beneficial ownership (within the meaning of Rule 13d-3 promulgated under the Act) of 30 percent or more of either the outstanding shares of common stock or the combined voting power of the Employer's then outstanding voting securities entitled to vote generally, or the approval by the stockholders of the Employer of a reorganization, merger, or consolidation, in each case, with respect to which persons who were stockholders of the Employer immediately prior to such reorganization, merger or consolidation do not, immediately thereafter, own more than 50 percent of the combined voting power entitled to vote generally in the election of directors of the reorganized, merged or consolidated Employer's then outstanding securities, or a liquidation or dissolution of the Employer or of the sale of all or substantially all of the Employer's assets"

        2)    For purposes of this Trust and if the Employer is not a stock corporation, Change of Control shall mean: "the acquisition by any person or entity (or group of related persons or entities acting in concert), unrelated to the Employer, of control of the Employer, or a liquidation or dissolution of Employer, or sale of all or substantially all of Employer's assets. For purposes of this Section 13(d), the term "control" means that more than 50 percent of the members, directors or trustees of the Employer are either representatives of or directly or indirectly controlled by a person or entity (or group of related persons or entities acting in concert) unrelated to the Employer. A member, director or trustee is a representative of a person or entity (or group of related persons or entities acting in concert) unrelated to the Employer if he is a member, director, trustee, agent or employee of any such persons or entities, or

elected or appointed by any such persons or entities. A member, director or trustee is controlled by a person or entity (or group of related persons or entities acting in concert) unrelated to the Employer if any such person or entity has the power to elect or appoint or remove such member, director or trustee and designate a new member, director or trustee."

(e)    The Employer shall provide written notice to the Trustee of any Change of Control no later than 30 days after such Change of Control takes place.


### Section 14.    Written Notice

Written Notice. Any written notice, demand, direction, or instruction given to the parties to this Agreement shall be duly given if mailed or delivered:

(a)    to the Trustee, at Investors Bank & Trust Company, 200 Clarendon Street, Boston, MA 02116, Attention: Director, Trust and Custody Services, or any other address as shall be specified by the Trustee in writing; and

(b)    to the Employer, at the address indicated on the signature page.

A copy of any written notice, demand, direction, or instruction between the parties to the Agreement shall be sent to Diversified Investment Advisors, Inc., 4 Manhattanville Road, Purchase, NY 10577, Attention: Mr. Peter G. Kunkel.


Employer

By: _____
                (Authorized Representative)


Address for receipt of notices

610 Jarvis Dr., Suite 200

Morgan Hill, CA  95037

_____

_____


Trustee

By: _____


dcgtech/template/nqtribt

**EXHIBIT 3**

**ComUnity Lending, Incorporated**
**Board of Directors Meeting**
**August 10, 2007**

Called to Order By Darryl Fry
Attendees:  Janene Towner, Darryl, Fry, Jayson Stebbins
Location: 610 Jarvis Dr., Morgan Hill, CA 95037, California Conference Room
Decision/Minutes recorded by Darryl Fry

Meeting called to order at 9:30 AM by Darryl Fry

The Board has been assembled to discuss various issues.

1.  Subject:  Lender E-Source and Optimal Blue form a joint venture wherein they share technology and share earnings. Possible sale of Lender E-Source to Beanstalk.

    a.  Motion: Janene Towner moves that the Board authorize Derek Long, President of Lender E-Source, to enter into negotiation with both Optimal Blue and Beanstalk for a possible joint venture and/or sale.

    b.  Discussion:

        i.  Jayson Stebbins:  Question:  They are separate operations?

        ii.  Darryl Fry:  Yes, they are but we can group them, because they are tied together.  Beanstalk has expressed interest in Lender E-Source on a purchase basis.  Negotiations with Optimal Blue may effect Beanstalk negotiations either negatively or positively.

    c.  Seconded by Jayson Stebbins

    d.  Passed by unanimous vote

2.  Subject:  Proposal to withdraw from the affiliate broker program and so inform our joint venture partner with Innergy Lending, WFG.  There have been previous discussions and a proposed letter has been drawn up.  Darryl has input on letter.

    a.  Motion:  Jayson Stebbins moves to authorize the issuance of the letter dated August 10, 2007 to WFG, subject to the input from the Leadership Team.

    b.  Seconded by Janene Towner

    c.  Passed by unanimous vote

3.  Subject:  City First Funding partnership.  The partnership is a modified correspondent relationship with ComUnity Lending, because it is unique in many respects, i.e. ComUnity Lending has some of City First Funding staff on its payroll.  The partnership needs to be turned into a traditional correspondent relationship by requiring City First Funding staff be moved off the ComUnity Lending payroll.  The partnership would still have some modification because City First Funding still outsource to ComUnity Lending for some things, including the use of our Seamless system and our Capital Markets group.

**ComUnity Lending, Incorporated**
**Board of Directors Meeting**
**August 10, 2007**

---

    a. Darryl Fry moves to confirm the decision to engage in a modified correspondent relationship with City First Funding and also to set a target date for City First Funding's personnel to be moved off of ComUnity Lending's payroll and employment by August 24, 2007.

    b. Seconded by Janene Towner

    c. Passed by unanimous vote

4. Subject: ComUnity Lending has been approached by ABC (America's Brokers Conduit), a wholesale portion of American Home Loan. Steve Walker and Jayson Stebbins will enter into negotiations to see if they can bring on some of the orphaned production staff.

    a. Motion: Darryl moves to authorize Steve Walker and Jayson Stebbins to pursue the production opportunities with America's Brokers Conduit.

    b. Discussion:

        i. Darryl Fry – If the opportunity is going to go away, then we should move as fast as possible.

        ii. Jayson Stebbins – Once we expressed that we were not interested in the operations, then half of the opportunities fell away. Formal negotiations may not be to our advantage. Recruiting the AE's one at a time may be more advantageous. Specific AE market: Bellevue. Specific Sales Team markets: Jacksonville, Navato and Huston.

    c. Seconded by Jayson Stebbins

    d. Passed by unanimous vote

5. Subject: Regarding ComUnity Lending Board of Director Resolution dated November 28, 2005. Resolution subject: In the event of Darryl Fry's death, a certain percentage of stock ownership would be issued to the Leadership of ComUnity Lending in an attempt to hold together the ComUnity Lending Leadership Team. Since that time, changes to ComUnity Lending's Leadership have been made and the stock distribution needs to be modified.

    a. Motion: Darryl moves to change and amend the unanimous written consent of the Board of Directors dated November 28, 2005 to include distribution of stock ownership in the event of his death to 10% to Jayson Stebbins, 10% to Janene Towner, 8% to Gwenn Tyler, 4% to Chito Schupp, eliminate Thai Nguyen at his previous level of 6% because he is no longer a part of the Leadership Team, Allen Christensen would remain at 2% and Derek Long would remain at 2%.

    b. Seconded by Janene Towner

    c. Discussion:

**ComUnity Lending, Incorporated**
**Board of Directors Meeting**
**August 10, 2007**

i. Darryl – Open to suggestions if you feel there should be a different distribution. Discussion of putting Allen at zero, Gwenn at 7% and Chito at 5%.

ii. Janene – Future modifications can be made? Darryl's answer was yes.

iii. Allen's and Chito's positions with ComUnity Lending and their shares of stock ownership in ComUnity Lending were discussed by the three Board members.

d. Modified Motion: Darryl revised the motion to read: Darryl moves to change and amend the unanimous written consent of the Board of Directors dated November 28, 2005 to include distribution of stock ownership in the event of his death to 11% to Jayson Stebbins, 11% to Janene Towner, 7% to Gwenn Tyler, 2% to Derek Long, 0% to Allen Christensen, 5% to Chito Schupp and eliminate Corky Watts who is no longer a part of the company and Thai Nguyen who is no longer on the Leadership Team.

e. Modification seconded by Janene Towner

f. Passed by unanimous vote

6. Subject: ComUnity Lending has been working with The Winter Group to securitize approximately 20 million dollars ($20,000,000) worth of aged, impaired, troubled loans.

a. Motion: Darryl Fry moves to authorize the officers of the ComUnity Lending, Inc. to enter into the securitizing of those loans taking a loss piece to be determined and potentially financing up to 30% of the loss piece by The Winter Group.

b. Seconded by Jayson Stebbins

c. Passed by unanimous vote

7. Subject: Chito Schnupp to enter into a contract on behalf of ComUnity Lending with Optimum Source Inc. The OSI Team to implement the E-scrubbing project for the purpose of EDI.

a. Motion: Darryl Fry moves to ratify the contract that Chito Schnupp entered into with Optimum Source Inc. for E-Scrubbing on behalf of ComUnity Lending.

b. Seconded by Janene Towner

c. Passed by unanimous vote

8. Subject: Forbearance agreement between ComUnity Lending and GMAC-RFC.

a. Motion: Darryl Fry moves that the Board ratify the forbearance agreement between ComUnity Lending and GMAC-RFC dated June 11, 2007.

**ComUnity Lending, Incorporated**
**Board of Directors Meeting**
**August 10, 2007**

---

    b. Seconded by Jayson Stebbins

    c. Passed by unanimous vote

9. Subject: ComUnity Lending stock options for Brad Hunter.

    a. Motion: Jayson Stebbins moves to grate Brad Hunter 20,000 shares of ComUnity Lending stock options with a 3 year vesting period at current strike price.

    b. Seconded by Darryl Fry

    c. Passed by unanimous vote

10. Subject: Top Hat – The legal changes to the Top Hat Plan were discussed in detail.

    a. Motion: Darryl Fry moves to terminate the Top Hat plan in 2007.

    b. Seconded by Janene Towner

    c. Passed by unanimous vote

Adjourn: 10:05 AM

Janene Towner, Secretary

Approved:

President

W. Darryl Fry,

EXHIBIT 4

# ANNOUNCEMENT

September 4, 2007

To:     TopHat Participants

From:  Janene Towner
        ComUnity Lending, Inc.

CC:     Tami Skriver, Transamerica

Please consider this announcement as your notification of the termination of ComUnity Lending's TopHat Deferred Compensation Plan effective September 4, 2007.

**Important information you need to know:**

1. Deferrals are no longer allowed.
2. Upon distribution, participants cannot roll over funds and the distribution will be treated as taxable income in the year the distribution is made.
3. Distributions will be made based on the payment options chosen by you (over time or a lump sum distribution) with the exception of deferrals made after January 1, 2005 which must be taken in a lump sum.
4. Deferrals made prior to January 1, 2005 will be distributed within 30 days.
5. Deferrals made after January 1, 2005 cannot be paid prior to September 4, 2008 and must be paid no later than September 4, 2009 (regardless of payment option chosen).
6. All deferrals must be paid out within 24 months of plan termination.

If you have further questions, please contact the Transamerica Customer Care Center at 877-234-9293.

**EXHIBIT 5**

# TRANSAMERICA
### RETIREMENT SERVICES

4333 Edgewood Road NE
Cedar Rapids, IA 52499
877-234-9293
www.ta-retirement.com

## Distribution Request
### Termination of Employment/Retirement

## Instructions

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No 2214-TA), or log on to ta-retirement com for forms and information on rolling over your account balance to a Transamerica IRA

## Section A. Employer Information

Company/Employer Name  Com Unity Lending Inc

Contract/Account No ▮▮▮▮▮          Affiliate No ▮▮▮▮          Division No [        ]

## Section B. Participant Information

Last Name PHAM                                    Date of Birth [                    ]

First Name/MI JOHN                                Social Security No [                    ]

Mailing Address ▮▮▮▮▮▮▮▮▮

City ▮▮▮▮▮▮▮                                       State ▮

Zip Code ▮▮▮▮▮

Phone No /Ext ▮▮▮▮▮

E-mail Address christina.pham@comunitylending com

## Section C. Distribution Information

Reason for distribution:  ☒ Termination of employment    ☐ Retirement

Amount of distribution:  ☒ 100%  or  ☐ $_____, remainder to be:  ☐ Left on deposit  ☐ Other _____

### Distribution Options

☐ Leave funds on deposit

☐ Purchase annuity

☒ Lump sum distribution

☐ Partial distribution

☐ In-kind distribution of any employer stock *(distribution will be in full shares only; partial shares will be paid in cash)*

[  ][  ][  ][  ] Deposit Transfer Corp No. *(from new financial institution so stock can be transferred without issuing certificates)*

☐ **Flexible Distribution Options** *(available if leaving funds on deposit)*

☐ Fixed Payment $_____ *(amount)*

☐ Fixed Payment over _____ years

☐ Life Expectancy  ☐ Single  ☐ Joint *(proof of spouse's age required)*

Payment commencement month: _____

Payment frequency:

☐ Monthly    ☐ Quarterly    ☐ Semi-Annual    ☐ Annual

*Note. Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan*

## Payment Options

☒ Check  or  ☐ Wire transfer *(Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5 000 will be processed in the form of a check )*

ABA No  [  ][  ][  ][  ][  ][  ][  ][  ][  ]

Institution Name _____

Institution Address _____

Account Name _____

Account No _____

"Further Credit To" Institution Name _____
*(For wire to credit union or overseas bank, call Transamerica for additional information )*

*Note  If one of the above payment options is not selected, this distribution will be processed in the form of a check*



Form No. 2228-TA (rev 2/05) (Page 1 of 2)          Transamerica Plans

**Section D. Outstanding Loan Options** (if applicable)

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s)  *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form)*

☐ Continue loan repayments via loan coupons  *(Available if funds are left on deposit or loan. Call Transamerica for further information)*

☐ Default the loan(s)  I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments

Note: *If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations*

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** - If this distribution is an eligible rollover distribution  20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA

**Optional Federal Income Tax Withholding** - If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise  If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** - Withholding is mandatory in some states  Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise

☐ Do not withhold state income tax (if independent election is permitted)

**Section F. Participant Signature**

*Please note. Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation  States other than New York also have insurance fraud statutes  which impose penalties for any violation thereof.*

**For Married Participants:** I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public

**For All Participants:** I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over  I have received and read the Special Tax Notice Regarding Plan Payments  I certify that the information provided on this form is correct and complete

X _____   9-6-07 _____   JOHN PHAM ▐▐▐▐▐▐▐
　　Participant Signature　　　　　　　Date　　　　　　　Print Name and Social Security Number

**Section G. Spousal Consent** (if applicable)

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount  I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent

WITNESSED

X _____  9-6-07  X _____
　　Spouse Signature　　　　　　　　　　　　　　　Plan Administrator Signature or Notary Public Signature and Stamp/Seal　　　Date

**Section H. Plan Administrator Information and Signature**

Vested %: _100%_     Employment status: ☑ Terminated  9/4/07 _____   ☐ Retired _____
　　　　　　　　　　　　　　　　　　　　　　　　Termination Date　　　　　　　　　　　　Retirement Date

I have all contributions been remitted?  ☑ Yes  ☐ No

Period end date of final contribution  _6/30/07_      (Processing will be delayed until final contribution is received.)

Note  This distribution request cannot be processed unless all applicable sections of this form have been completed

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained

X _____   9/10/07
　　Plan Administrator Signature　　　　Date



# TRANSAMERICA
## RETIREMENT SERVICES

4333 Edgewood Road NE
Cedar Rapids IA 52499
877-234-9203
www.ta-retirement.com

**Distribution Request**
Termination of Employment/Retirement

### Instructions

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No 2214 TA), or log on to www.ta-retirement com for forms and information on rolling over your account balance to a Transamerica IRA.

### Section A. Employer Information

| | |
|---|---|
| Company/Employer Name | Com Unity Lending Inc |
| Contract/Account No | ████████  Affiliate No ██████  Division No |

### Section B. Participant Information

| | |
|---|---|
| Last Name | PHAM |
| First Name/MI | JOHN |
| Date of Birth | |
| Social Security No | |
| Mailing Address | ███████████ |
| City | |
| State | ███ |
| Zip Code | ███████ |
| Phone No./Ext. | ██████████ |
| E-mail Address | christina.pham@comunitylending com |

### Section C. Distribution Information

Reason for distribution:  ☒ Termination of employment  ☐ Retirement

Amount of distribution:  ☒ 100%  or  ☐ $_____, remainder to be:  ☐ Left on deposit  ☐ Other _____

**Distribution Options**

☐ Leave funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock *(distribution will be in full shares only; partial shares will be paid in cash)*

☐☐☐☐ Deposit Transfer Corp. No. *(from new financial institution so stock can be transferred without issuing certificates)*

☐ Flexible Distribution Options *(available if leaving funds on deposit)*
  ☐ Fixed Payment $_____ *(amount)*
  ☐ Fixed Payment over _____ years
  ☐ Life Expectancy  ☐ Single  ☐ Joint *(proof of spouse's age required)*
  Payment commencement month: _____
  Payment frequency:
  ☐ Monthly  ☐ Quarterly  ☐ Semi-Annual  ☐ Annual

*Note. Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan*

### Payment Options

☒ Check  or  ☐ Wire transfer *(Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.)*

| | |
|---|---|
| ABA No | ☐☐☐☐☐☐☐☐☐ |
| Institution Name | |
| Institution Address | |
| Account Name | |
| Account No | |

"Further Credit To" Institution Name
*(For wire to credit union or overseas bank call Transamerica for additional information )*

*Note If one of the above payment options is not selected, this distribution will be processed in the form of a check*



Form No 2220 TA (Rev 2/05) (Page 1 of 2)        Transamerica Plans

**Section D. Outstanding Loan Options (if applicable)**

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s) *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)*

☐ Continue loan repayments via loan coupons *(Available if funds are left on deposit and if allowed by the plan Call Transamerica for further information)*

☐ Default the loan(s) . I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations*

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** - If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA

**Optional Federal Income Tax Withholding** - If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** - Withholding is mandatory in some states Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise

☐ Do not withhold state income tax (if independent election is permitted)

**Section F. Participant Signature**

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York containing any materially false information or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes which impose penalties for any violation thereof.*

**For Married Participants:** I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public

**For All Participants:** I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over I have received and read the Special Tax Notice Regarding Plan Payments I certify that the information provided on this form is correct and complete

X _____  9-6-07  JOHN PHAM
   Participant Signature    Date    Print Name and Social Security Number

**Section G. Spousal Consent (if applicable)**

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount I understand that I do not have to consent to the waiver of this qualified joint and survivor penalty coverage, however, if I do consent by signing below, I may not revoke my consent

WITNESSED

X _____  9-6-07  _____  _____
   Spouse Signature    Date    Plan Administrator Signature or Notary Public Signature and Stamp/Seal    Date

**Section H. Plan Administrator Information and Signature**

Vested %: 100 %    Employment status: ☑ Terminated  9/4/07    ☐ Retired _____
                                       Termination Date    Retirement Date

Have all contributions been remitted? ☑ Yes ☐ No

Period end date of final contribution  6/30/07  *(Processing will be delayed until final contribution is received.)*

*Note This distribution request cannot be processed unless all applicable sections of this form have been completed*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained

X _____  9/10/07
   Plan Administrator Signature    Date

10/11/2007 12:20 PM  PAGE   1/002

Central Standard Time

DEC. 29. 2006 5:07PM 7148413862          JMAC                    NO. 4120   P. 1L   33/84

# TRANSAMERICA
### RETIREMENT SERVICES
## Nonqualified Deferred Compensation Plan
## Future Termination Distribution Election

**Instructions**

Complete all applicable sections of this Form and return it to your Employer. Please keep a copy of this completed Form for your records.

## SECTION A: Employer Information

Company/Employer Name

**Com Unity Lending, Inc.**

☐ Initial Election  ☐ Change of Prior Election

Account No.        Affiliate No.        Division No.

## SECTION B. Participant Information

Social Security No.    Date of Birth (MM/DD/YYYY)    Date of Hire (MM/DD/YYYY)    Marital Status
                                                                                ☐ Marital   ☐ [Unmarried]

Last Name                                          First Name/Middle Initial
NGUYEN                                              MAI, J

Mailing Address/Street No.                                              Phone No.        Ext. (if any)

City                              State    Zip Code              E-Mail Address
                                                                 MAIGSMAGLENDING.COM

## SECTION C. Distribution Election

I request that future distributions of my deferred compensation (in general, for the year following the year I sign the agreement) be processed in the following manner at termination of employment (Note: Not all options may be available under your plan; for further information on options offered under your plan, please see your Employer):

☐ Single sum distribution    ☑ Annual installment payments over   **5**   (whole) years* (5 years maximum)

Note: In accordance with IRC Section 409A, the form of distribution must be specified (and elected) under the plan at the date of the deferral of such compensation. Availability of the above options and ability to change the form of payment may depend on plan provisions and Section 409A. (See Section D below for information on restricting under Section 409A for changing your election.) Your plan may contain an automatic cash-out provision and/or it may limit your options upon termination.

Distributions may be delayed for a period of 6 months after a distribution date if you are deemed to be a "key employee" as defined in Section 409A.

My distribution election applies to all of my deferred compensation in the current and future years deferred compensation unless I affirmatively make a new election.

If I am first eligible as of 2007 or later, my distribution will be paid in a single sum distribution.

## SECTION D. Change of Prior Election

I revoke my existing election and request that future distributions of deferred compensation be processed in the following manner at termination of employment (Note: Not all options may be available under your plan; for further information on options offered under your plan, please see your Employer):

☐ Single sum distribution    ☐ Annual installment payments over _____ (whole) years* (5 years maximum)

Note: In accordance with IRC Section 409A, the form of distribution must be specified (and elected) under the plan at the date of the deferral of such compensation. Availability of the above options and ability to change the form of payment may depend on plan provisions and Section 409A. Your plan may contain an automatic cash-out provision and it may limit your options upon termination. A subsequent election to delay or make a change in the form of payment is subject to the following rules for distributions that are scheduled to commence prior to 2008 as well as changes that are made after 2007:

- ▸ Such election cannot be effective for at least 12 months after the date as which the election is made,
- ▸ Except in the case of distributions due to death, disability, or an unforeseen emergency, the new date of payment will be 5 years from the date the payment would otherwise have been made, and
- ▸ An election related to a distribution to be made upon a specified time or pursuant to a fixed schedule may not be made less than 12 months prior to the date of the first scheduled payment in the most recent election.

Distributions may be delayed for a period of 6 months after a distribution date if you are deemed to be a "key employee" as defined in Section 409A.

My distribution election applies to all of my deferred compensation in the prior, current and future years deferred compensation unless I affirmatively make a new election.

If I am first eligible as of 2007 or later, my distribution will be paid in a single sum distribution.

Form No. FDCM-TA [TA-2/2015] Rev. 1/2005 Page 1 of 2          NQDC Plan Evergreen

10/11/2007 12:20 PM    PAGE    2/002

Central Standard Time

DEC 29. 2006 ) 5:07PM 7148413852                    JMAC                    NO. 4120   P. 12

## SECTION E. In-Service Withdrawal (complete Form Number 3294)

If provided in my plan, I must elect any in-service withdrawals for deferred compensation at the same time I am making an election for my deferred compensation. If I do not make an in-service withdrawal election, I will not be notified to receive an in-service withdrawal. To make such elections, complete Form 3294.

## SECTION F. IRC Section 409A Disclaimer

I hereby acknowledge that this plan is subject to, and may be amended or restated to conform with, the American Jobs Creation Act of 2004 (IRC Section 409A) with regard to my compensation (and earnings thereon) deferred (generally earned and vested) after December 31, 2004. I further acknowledge that Section 409A imposes certain requirements with respect to the deferral and payment of such deferred amounts and the failure of any deferral or distribution elections to conform with such requirements may result in immediate taxation (including interest and a 20% penalty) of amounts deferred after December 31, 2004 (and of amounts deferred prior to such date that are subject to a plan material modification, if any). If permitted under IRS guidance, I will make such modifications to such elections, in order to conform such elections with IRC Section 409A's requirements and with the provisions of an amended new or restated plan.

## SECTION G. Signatures

I agree to the terms of the plan. I am aware that amounts deferred under this type of plan are included in my employer's general assets. I understand that this election must be executed prior to the calendar year in which the income to be deferred is earned (or if provided in the plan, within 30 days of my initial eligibility). I understand that upon termination of my employment, my account will be distributed according to my election made prior to my termination and according to the terms of the plan. I understand that a withdrawal from this plan is subject to IRS reporting and withholding in accordance with IRS guidelines. I certify that the information provided on this form is correct and complete.

MAI NGUYEN
Participant Name

X _____          12.29.06
       Participant Signature                Date

I understand that a withdrawal from this plan is subject to IRS reporting and withholding in accordance with IRS guidelines. I certify that this election is permissible under the provisions of the plan, and that the information provided on this form is correct and complete.

Community Lending
Employer Name/Account Number

X _____          12/29/06
       Employer Signature                Date

Form No. 3292/3297(X)(X)(3/294 (7/05) (Page 2 of 2)                    NQDC Plan Evergreen

10/11/2007 12:24 PM   PAGE   1/002

Central Standard Time

## TRANSAMERICA
### RETIREMENT SERVICES
4333 Edgewood Road NE
Cedar Rapids, IA 52499
877-454-2222
www.ta-retirement.com

**Distribution Request**
**Termination of Employment/Retirement**

### Instructions

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No. 2214-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

### Section A. Employer Information

| Company/Employer Name | Com Unity Lending Inc. |

| Contract/Account No. | | Affiliate No. | | Division No. | |

### Section B. Participant Information

| Last Name | NGUYEN | Date of Birth | 11-29-7■ |
| First Name/MI | MAI | Social Security No. | |

Mailing Address

City                                                State

Zip Code

Phone No./Ext.                    Fx

E-mail Address    maiquyen@comunitylending.com    MAI@SPACLENDING.COM

### Section C. Distribution Information

Reason for distribution    ☒ Termination of employment    ☐ Retirement

Amount of distribution    ☒ 100%    or ☐ $_____, remainder to be: ☐ Left on deposit ☐ Other _____

**Distribution Options**

☐ I save funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock (distribution will be in full shares only; partial shares will be paid in cash)

☐☐☐☐ Deposit Transfer Corp. No. (from new financial institution, as stock can be transferred without issuing certificates)

*Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are unavailable under this plan.*

☐ Flexible Distribution Options (available if leaving funds on deposit)
   ☐ Fixed Payment $_____ (amount)
   ☐ Fixed Payment over _____ years
   ☐ Life Expectancy ☐ Single ☐ Joint (proof of spouse's age required)
   Payment commencement month: _____

Payment frequency:
   ☐ Monthly    ☐ Quarterly    ☐ Semi-Annual    ☐ Annual

**Payment Options**

☒ Check    or    ☐ Wire transfer (Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $3,000. Any distribution less than $3,000 will be processed in the form of a check.)

ABA No.    ☐☐☐☐☐☐☐☐☐

Institution Name _____

Institution Address _____

Account Name _____

Account No. _____

"Further Credit To" Institution Name _____
(For wire to credit union or overseas bank, call Transamerica for additional information.)

*Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.*

Form No. 2270-TA (rev. 3/05) (Page 1 of 3)        Transamerica Plans

10/11/2007 12:24 PM   PAGE   2/002

Central Standard Time

**Section D. Outstanding Loan Options (if applicable)**

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s). (Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)

☐ Continue loan repayments via loan coupons. (Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** – If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** – If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply.

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** – Withholding is mandatory in some states. Other states allow an independent election and in those states, state tax will be withheld unless you elect otherwise.

☐ Do not withhold state income tax (if independent election is permitted)

**Section F. Participant Signature**

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

For Married Participants I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public.

For All Participants: I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.

X _____     _____     HAI NGUYEN ▮▮▮▮▮▮▮
    Participant Signature           Date           Print Name and Social Security Number

**Section G. Spousal Consent (if applicable)**

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

X _____     _____     X _____     _____
    Spousal Signature           Date       Plan Administrator Signature or Notary Public Signature and Stamp/Seal     Date

**Section H. Plan Administrator Information and Signature**

Vested %: __100.00__    Employment status: ☒ Terminated __9/4/07__    ☐ Retired _____
                                            Termination Date                Retirement Date

Have all contributions been remitted? ☒ Yes ☐ No

Period and date of final contribution __6/30/07__    (Processing will be delayed until final contribution is received.)

Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _____     __9/10/07__
    Plan Administrator Signature           Date



Form No. 2196-TA (rev. 2005) (Page 2 of 2)      Transamerica Plans

10/10/2007 12:42 PM  PAGE   1/002

entral Standard Time

## TRANSAMERICA
### RETIREMENT SERVICES

**Distribution Request**
Termination of Employment/Retirement

**Instructions**

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan. Instead complete a Direct Rollover Request (Form No. 2314-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

**Section A. Employer Information**

Company/ Employer Name: Can Only Leading Inc.

Contract/Account No. _____   Affiliate No. _____   Division No. _____

**Section B. Participant Information**

Last Name: NGUYEN   Date of Birth: 11-08-72

First Name/MI: HUNG PERRY   Social Security No. _____

Mailing Address: _____

City: _____   State: _____

Zip Code: _____

Phone No./Ext. _____

E-mail Address: Tight 3100 clear @ yahoo.com

**Section C. Distribution Information**

Reason for distribution: ☒ Termination of employment   ☐ Retirement

Amount of distribution: ☒ 100%  or  ☐ $ _____   remainder to be: ☐ Left on deposit ☐ Other _____

**Distribution Options**

☐ Leave funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock (distribution will be in full shares only; partial shares will be paid in cash)

☐ Deposit Transfer Corp. No. (Gives new financial institution, so stock can be transferred without issuing certificates)

**Flexible Distribution Options** (available if leaving funds on deposit)

☐ Fixed Payment $ _____ (amount)
☐ Fixed Payment over _____ years
☐ Life Expectancy ☐ Single ☐ Joint (proof of spouse's age required)

Payment commencement month _____

Payment frequency:
☐ Monthly ☐ Quarterly ☐ Semi-Annual ☐ Annual

Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan.

**Payment Options**

☒ Check  or  ☐ Wire transfer (Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $1,000 will be processed in the form of a check.)

ABA No. _____
Institution Name _____
Institution Address _____
Account Name _____
Account No. _____
"Further Credit To" Institution Name _____
(For wire to credit union or overseas bank, call Transamerica for additional information.)

Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.

Form No. 2313-TA (Rev. 2005) (Page 1 of 2)   Transamerica Place

ntral Standard Time

**Section D. Outstanding Loan Options** (if applicable)

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s)  *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)*

☐ Continue loan repayments via loan coupons. *(Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)*

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.*

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** - If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** - If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply

☐ Do not withhold 10% optional federal income tax.

**State Income Tax Withholding** - Withholding is mandatory in some states. Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise.

☐ Do not withhold state income tax (if independent election is permitted)

**Section F. Participant Signature**

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material hereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

For Married Participants: I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public.

For All Participants: I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.

X _____    9-06-07    Hung Nguyen ██████████
   Participant Signature          Date        Print Name and Social Security Number

**Section G. Spousal Consent** (if applicable)

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

X _____                    _____
   Spouse Signature            Date        Plan Administrator Signature or Notary Public Signature and Stamp/Seal    Date

**Section H. Plan Administrator Information and Signature**

Vested %: 100%    Employment status: ☒ Terminated    9/4/07    ☐ Retired    _____
                                              Termination Date                  Retirement Date

Have all contributions been remitted?  ☒ Yes  ☐ No

Period end date of final contribution: 6/30/07    (Processing will be delayed until final contribution is received)

*Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _____    9/10/07
   Plan Administrator Signature       Date

Form No. 2235-7A (rev. 3/05) (Page 3 of 3)    Transamerica Flora

10/10/2007 1:12 PM  PAGE  2/003

ntral Standard Time

## TRANSAMERICA
### RETIREMENT SERVICES

4333 Edgewood Road NE
Cedar Rapids, IA 52499
877-224-0298
www.transamerica.com

**Distribution Request**
**Termination of Employment/Retirement**

**Instructions**

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No 2214-TA), or log on to www.transamerica.com for forms and information on rolling over your account balance to a Transamerica IRA.

**Section A. Employer Information**

Company/
Employer Name: Cota Vista Lending Inc.

Contract/Account No. _____    Affiliate No. _____    Division No _____

**Section B. Participant Information**

Last Name: NGUYEN    Date of Birth: 11-08-72

First Name/MI: HUNG PERRY    Social Security No. _____

Mailing Address: _____

City: _____    State: _____

Zip Code: _____

Phone No./Ext: _____

E-mail Address: HUNGPERRYNGUYEN@YAHOO.COM   Flight360clear@yahoo.com

**Section C. Distribution Information**

Reason for distribution: ☒ Termination of employment  ☐ Retirement

Amount of distribution: ☒ 100%  or ☐ $_____, remainder to be: ☐ Left on deposit ☐ Other _____

**Distribution Options**

☐ Leave funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock (distribution will be in full shares only; partial shares will be paid in cash)

☐☐☐☐☐ Deposit Transfer Corp. No. (given new financial institution, so stock can be transferred without issuing certificates)

☐ Flexible Distribution Options (available if leaving funds on deposit)
  ☐ Fixed Payment $_____ (amount)
  ☐ Fixed Payment over _____ years
  ☐ Life Expectancy ☐ Single ☐ Joint (proof of spouse's age required)

Payment commencement month: _____

Payment frequency:
  ☐ Monthly  ☐ Quarterly  ☐ Semi-Annual  ☐ Annual

Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan.

**Payment Options**

☒ Check  or  ☒ Wire transfer (Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.

ABA No. ☐☐☐☐☐☐☐☐☐

Institution Name _____

Institution Address _____

Account Name _____

Account No _____

"Further Credit To" Institution Name _____
(For wire to credit union or overseas bank, call Transamerica for additional information.)

Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.

Form No. 2216-TA (ver. 2.03) (Page 1 of 2)    Transamerica Plans

### Section D. Outstanding Loan Options (if applicable)

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s). (Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)

☐ Continue loan repayments via loan coupons. (Available if funds are left on deposit and if allowed by the plan. Call Transamerica too for further information.)

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.*

### Section E. Tax Withholding Election

**Mandatory Federal Income Tax Withholding** – If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** – If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** – Withholding is mandatory in some states. Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise

☐ Do not withhold state income tax (if independent election is permitted)

### Section F. Participant Signature

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

For **Married Participants**: I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public

For **All Participants**: I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.

X _____  Date: 9-06-07     Hung Nguyen _____  ▮▮▮▮▮▮▮
   Participant Signature                              Print Name and Social Security Number

### Section G. Spousal Consent (if applicable)

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

X _____  _____     X _____  _____
   Spouse Signature              Date           Plan Administrator Signature or Notary Public Signature and Stamp/Seal     Date

### Section H. Plan Administrator Information and Signature

Vested %: 100%          Employment status: ☑ Terminated  Terminated Date 9/4/07    ☐ Retired  Retirement Date _____

Have all contributions been remitted? ☑ Yes ☐ No

Period end date of final contribution: 6/30/07        (Processing will be delayed until final contribution is received)

*Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _____  9/10/07
   Plan Administrator Signature        Date



10/9/2007 8:19 AM  PAGE  2/003

Central Standard Time

# TRANSAMERICA
### RETIREMENT SERVICES

**Distribution Request**
Termination of Employment/Retirement

## Instructions

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No. 2214-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

## Section A. Employer Information

| Company/ Employer Name | Com Unity Lending Inc. | | |
| Contact/Account No. | ▮▮▮ | Affiliate No. ▮▮▮ | Division No. [        ] |

## Section B. Participant Information

| Last Name | PHAM | Date of Birth | |
| First Name/MI | MAI C | Social Security No. | |
| Mailing Address | ▮▮▮▮▮ | | |
| City | ▮▮▮▮▮ | State | ▮▮ |
| Zip Code | ▮▮▮ | | |
| Phone No./Ext. | ▮▮▮ ▮▮▮ | | |
| E-mail Address | christina_pham@comunitylending.com | | |

## Section C. Distribution Information

Reason for distribution:  ☒ Termination of employment    ☐ Retirement

Amount of distribution:  ☒ 100%  or  ☐ $_____, remainder to be:  ☐ Left on deposit  ☐ Other _____

### Distribution Options

☐ Leave funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock (*distribution will be in full shares only; partial shares will be paid in cash*)

[   ] Deposit Transfer Corp. No. (*from new financial institution, so stock can be transferred without issuing certificates*)

☐ Flexible Distribution Options (*available if leaving funds on deposit*)
  ☐ Fixed Payment $_____ (*amount*)
  ☐ Fixed Payment over _____ years
  ☐ Life Expectancy  ☐ Single  ☐ Joint (*proof of spouse's age required*)

Payment commencement month: _____

Payment frequency:
  ☐ Monthly  ☐ Quarterly  ☐ Semi-Annual  ☐ Annual

*Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan.*

### Payment Options

☒ Check  or  ☒ Wire transfer (*Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.*)

| ABA No. | |
| Institution Name | ▮▮▮▮ |
| Institution Address | ▮▮▮▮ |
| Account Name | MAI C. pham |
| Account No. | ▮▮▮▮ |

"Further Credit To" Institution Name
(*For wire to credit union or overseas bank, call Transamerica for additional information.*)

*Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.*

Central Standard Time

### Section D. Outstanding Loan Options (if applicable)

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s). *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)*

☐ Continue loan repayments via loan coupons. *(Available if funds are left on deposit and allowed by the plan. Call Transamerica for further information.)*

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.*

### Section E. Tax Withholding Election

**Mandatory Federal Income Tax Withholding** – If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** – If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply.

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** – Withholding is mandatory in some states. Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise.

☐ Do not withhold state income tax (if independent election is permitted)

### Section F. Participant Signature

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

**For Married Participants:** I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public.

**For All Participants:** I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.

X _____     _____
Participant Signature          Date          Print Name and Social Security Number

### Section G. Spousal Consent (if applicable)

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

X _____     X _____
Spousal Signature          Date          Plan Administrator Signature or Notary Public Signature and Stamp/Seal          Date

### Section H. Plan Administrator Information and Signature

Vested %: **100 %**     Employment status: ☑ Terminated  **9/4/07**     ☐ Retired  _____
                                        Termination Date          Retirement Date

Have all contributions been remitted? ☑ Yes  ☐ No

Period and date of final contribution **6/30/07**     *(Processing will be delayed until final contribution is received.)*

*Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _____     **9/10/07**
Plan Administrator Signature          Date



10/9/2007 8:15 AM  PAGE  2/003
Central Standard Time

# TRANSAMERICA
R E T I R E M E N T   S E R V I C E S

**Distribution Request**
**Termination of Employment/Retirement**

## Instructions

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No. 2214-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

## Section A. Employer Information

| Company/Employer Name | Com Unity Lending Inc. | | |
|---|---|---|---|
| Contract/Account No. | ▉▉▉ | Affiliate No. ▉▉▉ | Division No. |

## Section B. Participant Information

| Last Name | PHAM | Date of Birth | |
| First Name/MI | MAI C | Social Security No. | |
| Mailing Address | ▉▉▉▉ | | |
| City | ▉▉▉ | State | ▉▉ |
| Zip Code | | | |
| Phone No./Ext. | ▉▉▉ | | |
| E-mail Address | christina.pham@comunitylending.com | | |

## Section C. Distribution Information

Reason for distribution: ☒ Termination of employment ☐ Retirement

Amount of distribution: ☒ 100% or ☐ $_____ remainder to be: ☐ Left on deposit ☐ Other _____

### Distribution Options

☐ Leave funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock *(distribution will be in full shares only; partial shares will be paid in cash)*

☐ ☐ ☐ ☐ ☐ Deposit Transfer Corp. No. *(from new financial institution, so stock can be transferred without issuing certificates)*

☐ Flexible Distribution Options *(available if leaving funds on deposit)*
  ☐ Fixed Payment $_____ *(amount)*
  ☐ Fixed Payment over _____ years
  ☐ Life Expectancy ☐ Single ☐ Joint *(proof of spouse's age required)*

Payment commencement month: _____
Payment frequency:
  ☐ Monthly ☐ Quarterly ☐ Semi-Annual ☐ Annual

*Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan.*

### Payment Options

☒ Check or ☒ Wire transfer *(Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.)*

| ABA No. | ▉▉▉ |
| Institution Name | ▉▉▉ |
| Institution Address | ▉▉▉ |
| Account Name | MAI C. Pham |
| Account No. | ▉▉▉ |
| "Further Credit To" Institution Name | |

*(For wire to credit union or overseas bank, call Transamerica for additional information.)*

*Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.*

Form No. 2220-TA (rev. 2/03) (Page 1 of 2)      Transamerica Plans

10/9/2007 8:15 AM   PAGE   3/003

Central Standard Time

---

**Section D. Outstanding Loan Options (if applicable)**

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s). (Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)

☐ Continue loan repayments via loan coupons. (Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.*

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** – If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** – If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply.

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** – Withholding is mandatory in some states. Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise.

☐ Do not withhold state income tax (if independent election is permitted)

**Section F. Participant Signature**

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

*For Married Participants:* I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public.

*For All Participants:* I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.

X _____   _____   MAX  PHAM  ▓▓▓▓▓▓▓▓
   Participant Signature                    Date            Print Name and Social Security Number

**Section G. Spousal Consent (if applicable)**

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

X _____   _____   _____   _____
   Spouse Signature                     Date            Plan Administrator Signature or Notary Public Signature and Stamp/Seal   Date

**Section H. Plan Administrator Information and Signature**

Vested %  **100**          Employment status: ☒ Terminated  **9/4/07**        ☐ Retired  _____
                                              Termination Date                          Retirement Date

Have all contributions been remitted?  ☒ Yes  ☐ No

Period end date of final contribution  **6/30/07**        *(Processing will be delayed until final contribution is received.)*

*Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _____   9/10/07
   Plan Administrator Signature         Date

---

Form No. 3220-TA (Rev. 3703) (Page 2 of 2)        Transamerica Plans



**EXHIBIT 6**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**\*E-FILED\***

## CIVIL MINUTES

**Judge: James Ware**
**Date:  11/20/2007**
**Case No: C-07-05587 JW**

**Courtroom Deputy:  Elizabeth Garcia**
**Court Reporter: Summer Clanton**
**Interpreter:  N/A**

## TITLE

Pham et al v. ComUnity Lending Inc.

**Attorney(s) for Plaintiff(s):** Ronald Kravitz
**Attorney(s) for Defendant(s):** Richard Couch, Robert Franklin

## PROCEEDINGS

**OSC re Plainitffs' Ex Parte Application for Writ of Attachment or in the Alternative Motion for Temporary Protective Order and Motion to Order to Show cause re Issuance of Right to Attach Order.**

## ORDER AFTER HEARING

Hearing Held.  The Court heard oral arguments from the parties.  The Court GRANTED the Motion for Temporary Protective Order.  The Court specially set a Motion Hearing for 12/4/2007 at 1:30 PM.

*Elizabeth C. Garcia*
Elizabeth C. Garcia
Courtroom Deputy
Original: E-Filed
CC:

**EXHIBIT 7**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Mai Christina Pham, et al.,                          NO. C 07-05436 JW

        Plaintiffs,                      **TEMPORARY PROTECTIVE ORDER**

  v.

ComUnity Lending Inc., et al.,

        Defendants.
_____/

    Before the Court is Plaintiffs' Emergency Ex Parte Application for Writ of Attachment, or In Alternative, Motion for a Temporary Protective Order and Motion for Order to Show Cause Re Issuance of Right to Attach. (See Docket Item Nos. 9, 10.)

    On November 20, 2007, the Court conducted a hearing. Ron Kravitz, counsel for the Plaintiffs, and Bob Franklin, counsel for the Defendants appeared on behalf of their respective clients. Also present was Richard Couch, President of Defendant, ComUnity Lending Inc.

    For the reasons stated on the record, the Court orders as follows:

    (1)    ComUnity Lending Inc. and Richard Couch shall hold all funds associated with the TopHat Deferred Compensation Plan in a separate and sequestered account, to which only Mr. Couch has access, until further direction is provided by the Court. No money from the TopHat Plan shall be removed, spent, or otherwise transferred for any purpose.

1    (2)    The parties shall appear in Courtroom No. 8, 4th Floor, United States District Court,

2    280 South First Street, San Jose, CA. on **December 4, 2007 at 1:30 P.M.** to show

3    cause, if any, why the Court should not issue a Writ of Attachment on the TopHat

4    funds.  Defendants' shall file their opposition brief no later than **November 28, 2007.**

5    Plaintiffs' reply, if any, shall be filed no later than **November 29, 2007.**

6

7    Dated: November 21, 2007

8    JAMES WARE
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    2

**EXHIBIT 9**

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11    Mai Christina Pham, et al.,                    NO. C 07-05436 JW

12                    Plaintiffs,          **ORDER GRANTING PLAINTIFFS'**
                                           **APPLICATION FOR A WRIT OF**
13         v.                              **ATTACHMENT**

      ComUnity Lending Inc.,
14
                    Defendant.
15    _____/

16          Presently before the Court is Plaintiffs' Application for a Writ of Attachment. (See Docket

17    Item No. 10.) The Court conducted a hearing on December 4, 2007. For the reasons stated on the

18    record, the Court GRANTS Plaintiff's application for a writ of attachment.

19          Plaintiffs in federal court may invoke whatever remedies are provided under the law of the

20    state in which the federal court is located for "seizure of person or property for the purpose of

21    securing satisfaction of the judgment ultimately to be entered in the action." Fed. R. Civ. P. 64;

22    Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 970 F.2d 552, 558 (9th Cir. 1992). These remedies

23    may include a writ of attachment. Fed. R. Civ. P. 64. The effect of Rule 64 is to incorporate state

24    law to determine the availability of prejudgment remedies for the seizure of property to secure

25    satisfaction of a judgment ultimately entered. Granny Goose Foods, Inc. v. Brotherhood of

26    Teamsters & Auto Truck Drivers, Local No. 70 of Alameda Co., 415 U.S. 423, 436 n. 10 (1974).

27    Thus, the Court examines Plaintiffs' application under California law. In California, the procedures

28

*United States District Court*
*For the Northern District of California*

1   and grounds for obtaining orders for prejudgment writs of attachment are governed by California

2   Civil Procedure Code §§ 481.010-493.060.

3          Attachment "is a remedy by which a plaintiff with a contractual claim to money (not a claim

4   to a specific item of property) may have various items of a defendant's property seized before

5   judgment and held by a levying officer for execution after judgment." Waffer International

6   Corporation v. Khorsandi, 69 Cal. App. 4th 1261, 1271 (1999). An attachment may be issued "only

7   in an action on a claim or claims for money, each of which is based upon a contract, express or

8   implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not

9   less than five hundred dollars." Cal. Civ. Proc. Code § 483.010(a). Attachment lies on any claim

10  against a partnership or corporation or on claims against individuals that arise out of the conduct by

11  the individual of a trade, business, or profession. § 483.010(a) & (c).

12          Based on the papers submitted to date and arguments by counsel at the hearing, the Court

13  finds that Plaintiffs have met their burden to establish grounds for relief. Plaintiffs have shown that:

14  (1) the claim upon which the attachment is based is one upon which an attachment may be issued;

15  (2) the attachment is not sought for a purpose other than recovery of the claim upon which the

16  attachment is based; (3) the amount to be secured by the attachment is greater than zero; (4) the

17  property sought to be attached is not exempt from attachment; and (5) Plaintiffs will suffer great or

18  irreparable injury (within the meaning of Section 485.010) if issuance of the order is delayed until

19  the matter can be heard on notice. Cal. Civ. Proc. Code §§ 484.090(a); 485.220.

20          The Court orders that Plaintiffs have the right to attach Defendant ComUnity Lending, Inc.'s

21  property in the amount of $3,835,119. The Clerk shall issue a writ of attachment for $3,835,119, for

22  the deposit account identified by Defendant's President, Richard Couch, at the Court's November

23  20, 2007 hearing. (See Docket Item No. 24.) It is further ordered that Defendant or Mr. Couch shall

24  disclose to the levying officer 1) the financial institution at which the account described above is

25  held, and 2) the account number of said account.

26

27

28                                                    2

United States District Court

For the Northern District of California

1    The parties shall appear for the Case Management Conference presently scheduled for

2 **February 25, 2008 at 10 A.M.**  Pursuant to the Civil Local Rules of Court, the parties shall meet

3 and confer and file a Joint Case Management Conference by February 15, 2008.

4

5 Dated:  December 6, 2007

6                                          JAMES WARE
                                           United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# U.S. Bankruptcy Court
## Northern District of California (San Jose)
## Adversary Proceeding #: 08-05006
### Internal Use Only

*Assigned to:* Judge Marilyn Morgan
*Related BK Case:* 08-50030
*Related BK Title:* ComUnity Lending, Incorporated
*Related BK Chapter:* 11
*Demand:* $4243013000

*Nature[s] of Suit:* 14 Recovery of money/property - other

*Date Filed:* 01/07/08

UNITED STATES BANKRUPTCY COURT
Northern District of California
I certify that this is a true, correct and full copy
of the original document on file in my custody.
Dated ___JAN 1 1 2008___
by _____
Deputy Clerk

**Plaintiff**
------------------------



**Mai Christina Pham**
6552 Blue Heron Drive
Huntingdon Beach, CA 92648

represented by **George H. Kalikman**
Liner Yankelevitz Sunshine et al.
199 Fremont St. 20th Fl.
San Francisco, CA 94105-2255
(415)954-0200
Email: gkalikman@linerlaw.com
*LEAD ATTORNEY*

**John Pham**
6552 Blue Heron Drive
Huntingdon Beach, CA 92648

represented by **George H. Kalikman**
(See above for address)
*LEAD ATTORNEY*

**Mai Nguyen**
1092 El Camino Lane
Santa, CA 92705

represented by **George H. Kalikman**
(See above for address)
*LEAD ATTORNEY*

**Hung Perry Nguyen**
13814 Apache
Tustin, CA 92782

represented by **George H. Kalikman**
(See above for address)
*LEAD ATTORNEY*

**Joyce Freeman**
475 Mello Lane
Santa Cruz, CA 95062

represented by **George H. Kalikman**
(See above for address)
*LEAD ATTORNEY*

V.

**Defendant**
------------------------

**ComUnity Lending, Incorporated**
5671 Santa Teresa Blvd.
Suite 201
San Jose, CA 95123
Tax id: 94-2673933

represented by **John Walshe Murray**
Law Offices of Murray and Murray
19400 Stevens Creek Blvd. #200
Cupertino, CA 95014-2548
(650) 852-9000
Email: jwmurray@murraylaw.com
*LEAD ATTORNEY*

| Filing Date | # | Docket Text |
|---|---|---|
| 01/07/2008 | ●1 | Adversary case 08-05006. 14 (Recovery of money/property - other) Complaint by Mai Christina Pham, John Pham, Mai Nguyen, Hung Perry Nguyen, Joyce Freeman against ComUnity Lending, Incorporated. Fee Amount $250. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10# 11 Exhibit 11# 12 Exhibit 12# 13 AP Cover Sheet AP Cover Sheet) (Kalikman, George) Modified on 1/8/2008 (Cheung, Jackson). (Entered: 01/07/2008) |
| 01/07/2008 | | Receipt of filing fee for Complaint(08-05006) [cmp,cmp] ( 250.00). Receipt number 4986082, amount $ 250.00 (U.S. Treasury) (Entered: 01/07/2008) |
| 01/07/2008 | ●2 | Summons to be Issued on ComUnity Lending, Incorporated (RE: related document(s)1 Complaint,, filed by Plaintiff Hung Perry Nguyen, Plaintiff Mai Nguyen, Plaintiff Mai Christina Pham, Plaintiff John Pham, Plaintiff Joyce Freeman). (Kalikman, George) (Entered: 01/07/2008) |
| 01/07/2008 | ●3 | Motion for Withdrawal of Reference *of Adversary Proceeding* Fee Amount $150. Filed by Plaintiffs Joyce Freeman, Hung Perry Nguyen, Mai Nguyen, John Pham, Mai Christina Pham. (Attachments: # 1 Memorandum of Points and Authorities in Support of Motion for Withdrawal of Reference# 2 Declaration of Ronald S. Kravitz in Support of Motion for Withdrawal of Reference of Adversary Proceeding# 3 Exhibit 1# 4 Exhibit 2# 5 Exhibit 3# 6 Exhibit 4# 7 Exhibit 5# 8 Exhibit 6# 9 Exhibit 7# 10 Exhibit 8# 11 Exhibit 9# 12 Exhibit 10) (Kalikman, George) (Entered: 01/07/2008) |
| 01/07/2008 | | Receipt of filing fee for Motion for Withdrawal of Reference(08-05006) [motion,mwdref] ( 150.00). Receipt number 4987428, amount $ 150.00 (U.S. Treasury) (Entered: 01/07/2008) |
| 01/08/2008 | ●4 | Summons Issued on ComUnity Lending, Incorporated Answer Due 2/7/2008. (aw, ) (Entered: 01/08/2008) |
| 01/08/2008 | ●5 | Order for Telephonic Status Conference with Certificate of Service. . Status Conference to be held on 4/15/2008 at 10:30 AM at SanJose Courtroom 3070 - Morgan. (aw, ) (Entered: 01/08/2008) |