JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
DORIS A. KAELIN (162069)
JENNY L. FOUNTAIN (226241)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: dkaelin@murraylaw.com
Email: jlfountain@murraylaw.com

Attorneys for Debtor
ComUnity Lending, Incorporated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

|  |  |
|---|---|
| In re:<br><br>COMUNITY LENDING, INCORPORATED, A CALIFORNIA CORPORATION<br><br>Debtor.<br><br>5671 Santa Teresa Blvd, Suite 201<br>San Jose, CA 95123<br><br>Employer's Tax ID No.: 94-2673933 | Case No. 5:08-CV-00201-JW<br><br>Date: April 7, 2008<br>Time: 9:00 a.m.<br>Place: United States District Court<br>280 S. First Street, Courtroom 8, 4th Flr.<br>San Jose, CA 95113<br>Judge: Honorable James Ware |

**MEMORANDUM IN OPPOSITION OF MOTION FOR
WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING**

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................1

II.  FACTS ..............................................................................................................3

III. ARGUMENT .....................................................................................................6

     a.   Mandatory Withdrawal of the Reference is not Required. ...........................7
     b.   Plaintiffs Have Not Shown Cause for Discretionary Withdrawal. ...............11

IV.  CONCLUSION...................................................................................................13

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Accardi v. IT Litig. Trust (In re IT Group, Inc.),*
    448 F. 3d 771 (3d Cir. 2006) ...............................................................2

*Betta Prod., Inc. v. Distributing System & Services, Inc.,*
    No. 07-2071 SC, 2007 U.S. Dist. LEXIS 45872 (N.D. Cal. June 15, 2007) ...........11

*Chao v. Holman (In re Holman),*
    325 B.R. 569 (E.D. Ky. 2005) ..............................................................8

*Don's Making Money, LLP v. Estate of Deihl,*
    No. CV 07-319-PHX-MHM, 2007 U.S. Dist. LEXIS 32972 (D. Ariz. May 3, 2007) .............7

*In re General Teamsters, Warehousemen & Helpers Union Local 890,*
    No. C 94-20623 JW, 1994 U.S. Dist. LEXIS 21620 (N.D. Cal. 1994) ...............8, 12

*Herman v. Stetler,*
    241 B.R. 206 (E.D. Wisc. 1999) .......................................................10, 11

*IT Group, Inc. v Bookspan (In re IT Group, Inc.),*
    448 F.3d 661 (3d Cir. 2006) .........................................................8, 9, 10

*In re Keifer,*
    276 B.R. 196 (E.D. Mich. 2002) ...........................................................8

*Martin v. Friedman,*
    133 B.R. 609 (N.D. Ohio 1991) ...........................................................8

*Orion Pictures v. Showtime Networks, Inc. (In re Orion Pictures Corp.),*
    4 F.3d 1095 (2d Cir. 1993) ..............................................................11

*Pension Benefit Guaranty Corp. v. Smith Carona Corp.,*
    205 B.R. 712 (D. Del. 1996) ............................................................11

*In re Quaker City Gear Works, Inc.,*
    128 B.R. 711 (E.D. Penn. 1991) ........................................................11

*Security Farms v. International Brotherhood of Teamsters,*
    124 F.3d 999 (9th Cir. 1997) .........................................................7, 11

*Stratton v. Garcia,*
    No. CIV-F-06-1495 AW1, 2007 U.S. Dist. LEXIS 14434 (E.D. Cal. Feb. 12, 2007) ............7

*In re The Roman Catholic Bishop of San Diego,*
    No. 07cv1355-IEG(RBB), 2007 U.S. Dist. LEXIS 60954 (S.D. Cal. Aug. 20, 2007).............7

*In re Union Computer Corp.,*
    13 F.3d 321 (9th Cir. 1993) ...........................................................11

*In re Vicars Insurance Agency,*
    96 F.3d 949 (7th Cir. 1996) .............................................................7

*In re White Motor Corp.*,
   42 B.R. 693 (N.D. Ohio 1984)....................................................................................10, 11

## FEDERAL STATUTES

11 U.S.C. §§ 101............................................................................................................1

28 U.S.C. § 157(d) ...........................................................................................1, 6, 7, 8, 11

28 U.S.C. § 157(b)(2)(A) ..................................................................................................12

28 U.S.C. § 157(b)(2)(B) ..................................................................................................12

28 U.S.C. § 157(b)(2)(E) ..................................................................................................12

28 U.S.C. § 157(b)(2)(O) ..................................................................................................12

28 U.S.C. § 1334.........................................................................................................1, 6

29 U.S.C.S. § 1051(2)......................................................................................................8

29 U.S.C. §§ 1101 .......................................................................................................9, 10

## STATE STATUTES

California Code of Civil Procedure § 484.100. ..........................................................12, 13

## MISCELLANEOUS

*1 Collier on Bankruptcy, Bankruptcy Courts, Jurisdiction, Venue, Appeals, General
   Coverage* ¶ 3.04[2] ....................................................................................................7

Employee Retirement Income Security Act of 1974 ....................................................1, 9

David J. Cartano, *Taxation of Compensation & Benefits* § 20.05[D][3], at 735 (2004) ....................10

1    Defendant and Debtor in Possession ComUnity Lending, Incorporated (the "Defendant",

2  "Debtor" or the "Company") herein opposes the MOTION FOR WITHDRAWAL OF REFERENCE OF

3  ADVERSARY PROCEEDING (the "Motion") as follows:

4                                    **I.    INTRODUCTION**

5    Plaintiffs Mai Christina Pham, John Pham, Mai Nguyen, Hung Perry Nguyen, and Joyce

6  Freeman (collectively, "Plaintiffs") have filed this request to withdraw the automatic reference of the

7  adversary proceeding they filed against ComUnity Lending, Inc. ("CLI", the "Company" or the

8  "Debtor") entitled *Pham, et al., vs ComUnity Lending, Incorporated*, Adv. No. 08-05007-MM (the

9  "Adversary Proceeding") in the U.S. Bankruptcy Court for the Northern District of California

10  ("Bankruptcy Court"). Plaintiffs contend that because the Adversary Proceeding involves

11  application of federal non-bankruptcy law affecting interstate commerce and Title 11, withdrawal of

12  the reference is mandatory under 28 U.S.C. § 157(d).

13    The district court has original jurisdiction over all cases "arising under" and "related to" the

14  Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code" or "Code"). 28

15  U.S.C. § 1334. Although such cases are automatically referred to the Bankruptcy Court pursuant to

16  General Order No. 24, the district court may withdraw the reference to the Bankruptcy Court of any

17  "case or proceeding." 28 U.S.C. § 157(d). Withdrawal is required if "the court determines the

18  resolution of the proceeding requires consideration of both title 11 and other laws of the United

19  States regulating organizations or activities affecting interstate commerce." Id. Withdrawal of the

20  reference may also be permitted "for cause shown." Id.

21    Plaintiffs base their request on their assertion that resolution of their claims requires

22  consideration of the Employee Retirement Income Security Act of 1974 ("ERISA") and Title 11.

23  While district courts have used two different standards in determining whether mandatory

24  withdrawal is required, mandatory withdrawal is not required under either standard because the

25  resolution of the case does not require the consideration of any substantive ERISA statute or

26  provision. Plaintiffs' claim is based on an alleged failure to make required distributions under a non-

27  qualified, unfunded[1], deferred compensation plan (the "Top Hat Plan"), which is not covered under

28

---

[1] The Plan was "unfunded" because there was no *res* separate from the corporation's general assets to

1  ERISA's substantive provisions. Instead, the trust document under which the deferred compensation

2  was held expressly provides that any rights created under the Top Hat Plan <u>are mere unsecured</u>

3  <u>contractual rights</u> of the Top Hat Plan participants and their beneficiaries against the Company.

4      Here, the Debtor contends that payment of the plan benefits cannot be made because the

5  express terms of the Top Hat Plan preclude any distribution to plan participants where the Debtor is

6  insolvent.[2]  The Plaintiffs argue, among other things, that the Debtor was solvent as of the date of

7  the termination of the plan and that these funds can therefore be distributed to the participants ahead

8  of general creditors even though the Company is now a debtor in a bankruptcy case, contending that

9  the Debtor holds these funds in trust.  Resolution of this issue does not necessitate consideration of

10  any ERISA statute; it is a question of contractual interpretation as set forth above.

11      Discretionary withdrawal of the reference is also not appropriate.  Plaintiffs contend that the

12  funds are not the property of the Bankruptcy Estate and that the Defendant is seeking to "evade"

13  prior orders of this Court pursuant to which the Court issued a writ of attachment to protect the funds

14  from the reach of other creditors while the matter was pending.  However, the filing of the Chapter

15  11 case in fact is consistent with the purpose of protecting the funds from the reach of creditors by

16  the imposition of the automatic stay.  Indeed, the parties have stipulated that the funds in question

17  remain segregated in separate debtor-in-possession accounts pending further order of the Bankruptcy

18  Court.  Further, whether the funds are property of the estate is clearly a core bankruptcy issue of

19  which the Bankruptcy Court is capable of hearing and in light of its administration of the estate,

20  should be hearing.  Whether Plaintiffs are entitled to claims in the bankruptcy estate and if so, the

21  extent of any priority, are also matters within the core jurisdiction of the Bankruptcy Court.    The

22  Bankruptcy Court routinely hears matters similar to those presented by the Plaintiffs here, there are a

23  multitude of bankruptcy issues regarding the nature of the claims and the Bankruptcy Court provides

24

25  which the participants could look to satisfy their claims, (2) the participants' rights to the corporation's assets were no greater than the rights of general, unsecured creditors, and (3) the participants did not pay taxes on the deferred compensation.  *Accardi v. IT Litig. Trust (In re IT Group, Inc.),* 448 F.3d 661 (3d Cir. 2006)

26

27      [2] Indeed, the Trust had to contain these terms to retain the "unfunded" status of the Top Hat Plan.  "An employer may set aside deferred compensation amounts in a segregated fund or trust without jeopardizing a plan's 'unfunded' status if the fund or trust remains 'subject to the claims of the employer's creditors in the event of insolvency or bankruptcy.' [citation omitted]."  *Accardi v. IT Litig. Trust (In re IT Group, Inc.),* 448 F.3d 661, 665 (3d Cir. 2006)

28

ICJ:ICJ/sb/pt
K:\ComUnity Lending\Lit\Pham\Pld-Adv\W-DrawRef\OPP-v12.doc
2    MEMORANDUM IN OPPOSITION OF MOTION FOR WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING

1  a competent forum to resolve the issues.  The Motion should be denied.

2  ## II.    FACTS[3]

3      1.      On January 4, 2008 the Debtor filed its Voluntary Petition under Chapter 11 bearing

4  case number 08-50030 (the "Chapter 11 Case").  The Debtor is a debtor in possession pursuant to

5  sections 1107 and 1108 of the Bankruptcy Code.

6      2.      CLI is a mortgage lender incorporated in 1980 and is an S-Corporation owned by W.

7  Darryl Fry as the sole shareholder.  Historically, CLI was in the business of originating, brokering,

8  servicing and selling residential mortgages.  CLI received periodic origination fees for originating

9  loans and management fees for servicing loans.  In addition, CLI obtained and sold real-estate

10  owned ("REO") properties acquired through foreclosure upon borrower defaults.  At present, CLI

11  has ceased all loan origination operations and is in the process of selling its remaining loans and

12  REO properties, completing foreclosures and liquidating all of its other assets.

13      3.      As part of its original business, CLI would originate and fund loans via various short

14  term warehouse lines of credit (the "Warehouse Credit Facilities") from various financial institutions

15  including, among others, First Collateral Services, Washington Mutual, Greenwich and GMAC –

16  RFC.  After originating and funding loans, CLI sold substantially all originated and funded loans

17  (the "Loan Sales") to various investors, including, among others, Morgan Stanley, Merrill Lynch,

18  IndyMac and Countrywide Home Loans (collectively, the "Investors").  The Loan Sales enabled the

19  Company to service the various Warehouse Credit Facilities so that the Debtor could fund additional

20  loans.  Additionally, certain of the Investors would bundle the purchased loans and issue securities,

21  backed by these loans and mortgages, to private third-party investors.  In the event of loan defaults

22  or delinquencies and/or upon the occurrence of other conditions, subject to the terms of the

23  applicable Loan Sales' documents, the Investors could require CLI to repurchase said loans (the

24  "Repurchase Requests").

25      4.      CLI began to experience the effects of the country-wide mortgage crisis in the spring

26  of 2007.  CLI's outstanding Repurchase Request obligations continued to increase and peaked in the

27

28  [3] The factual statements herein are supported by the DECLARATION OF RICHARD COUCH IN OPPOSITION TO MOTION TO WITHDRAW REFERENCE and the DECLARATION OF JANENE TOWNER IN OPPOSITION TO MOTION TO WITHDRAW REFERENCE, filed concurrently herewith.

1    July to September 2007 timeframe. This caused a situation whereby CLI could no longer service its

2    debt. In addition, CLI was served and named in multiple legal actions, including actions by

3    borrowers, equipment lessors, vendors, and prior employees during the same period. As a result of

4    the mounting pressures and obligations, CLI was forced to seek a crisis management specialist to

5    address these issues, fully terminate operations and to liquidate the company. CLI entered into

6    discussions with Diablo Management Group ("DMG"), of which Richard Couch is the founder and

7    Chairman, to assist in the restructuring, management, and potential liquidation of CLI. On October

8    25, 2007, the CLI Board of Directors passed a series of resolutions to, among other things, retain

9    DMG and to appoint Richard Couch as CLI's Chief Executive Officer and board member.

10    Concurrently therewith, all other officers and directors of CLI resigned and DMG assumed

11    responsibility for all day to day operations of CLI.

12        5.       The Debtor filed the Chapter 11 Case to preserve its remaining assets so that their

13    value may be maximized by the Debtor for the benefit of all of its creditors. The Debtor intends to

14    orderly wind down its business, recover and preserve its assets and propose a liquidating plan of

15    reorganization.

16        6.       Plaintiffs are former employees of CLI and participants in the Top Hat Plan.

17        7.       The present Top Hat Plan was commenced in 2001 and was restated in 2003. It is

18    governed by the terms of the Top Hat Plan[4] and Transamerica Investment Services served as the

19    plan administrator (the "Plan Administrator"). The Debtor believes that the plan benefits were held

20    in trust pursuant to a Trust Agreement dated September 1, 2003 ("Trust")[5], of which Plaintiffs were

21    third-party beneficiaries.

22        8.       Section 1(d) of the Trust states: ". . . Any rights created under the Plan and this Trust

23    Agreement shall be mere unsecured contractual rights of Plan participants and their beneficiaries

24    against Employer. Any assets held by the Trust will be subject to the claims of the Employer's

25

---

26    [4] A copy of the Top Hat Plan is attached as Exhibit 1 to the VERIFIED COMPLAINT FOR BREACH OF
     CONTRACT, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF (the "Complaint") filed Jan. 7, 2008 by the
27    Plaintiffs in this action. All references to the Top Hat Plan are to the Plaintiffs' exhibit as presented.
     [5] The Trust Agreement is attached as Exhibit 2 to the Complaint for Breach of Contract, Declaratory
28    Relief, and Injunctive Relief, filed Jan. 7, 2008. All references to the Trust are to the Plaintiffs' exhibit as
     presented.

ICJ.ICJ/sb/pt
K:\ComUnity Lending\Lit\Pham\Pld-Adv\W-DrawRef\OPP-v12.doc        4    MEMORANDUM IN OPPOSITION OF MOTION FOR
WITHDRAWAL OF REFERENCE OF ADVERSARY
PROCEEDING

1    general creditors under federal and state law in the event of Insolvency, as defined in Section 3(a)."

2    Section 3(a) defined "Insolvency" as the Company being unable to pay its debts as they became due

3    or the Company becoming a debtor under the Bankruptcy Code.

4        9.     The Top Hat Plan set forth similar language in describing the funds contributed by the

5    Top Hat Plan participants.  Thus, the recitals specify that it is the express intent of the Employer that

6    the assets of the Plan and Trust shall at all times be subject to the claims of the general creditors of

7    the Employer.

8        10.    Section 5.2 of the Top Hat Plan provides **that "all amounts under this Plan...shall**

9    **remain (until made available to the Participant or Beneficiary) solely the property of the**

10   **Employer (without being restricted to the provision of benefits under the Plan) subject to the**

11   **claims of the Employer's general creditors.  No Participant or Beneficiary shall have any**

12   **secured or beneficial interest in any property, rights or investments held by the Employer in**

13   **connection with the Plan."**(Emphasis added).

14       11.    Section 10.6 of the Top Hat Plan provides that the "vested **Account balance of a**

15   **Participant shall be paid from the Trust only to the extent the Employer is not at the time of**

16   **payment insolvent.  Any vested accrued benefits under the Plan represent an unfunded,**

17   **unsecured promise by the Employer to pay these benefits to the Participants when due**.  A

18   Participant has no greater right to Trust assets than the general creditors of the Employer in the event

19   that the Employer shall become insolvent.  Trust assets can be used to pay only vested accrued

20   benefits under the Plan or the claims of the Employer's general creditors." (Emphasis added).

21       12.    On or about September 4, 2007, the Company purported to terminate the Top

22   Plan. As was apparently normal practice, the Plan Administrator issued checks to ComUnity in the

23   amount of each participant's vested account (the "Top Hat Funds") for ultimate distribution, less

24   applicable withholding taxes, to the plan participants, including the Plaintiffs.[6]  Plaintiffs contend,

25   _____

26       [6] Plaintiffs apparently think that it is advantageous to them to ascribe improper motives to the Company's management without any evidence, claiming that the Company "forged" depository instructions

27   from the Plaintiffs to divert the Top Hat Funds to the Company. As set forth in the DECLARATION OF RICHARD COUCH IN OPPOSITION TO MOTION FOR WITHDRAWAL OF ADVERSARY PROCEEDING, the Debtor believes that the Plan Administrator's normal practice in making distribution of plan benefits was to issue

28   checks payable to ComUnity who in turn would deduct applicable withholding amounts for taxes and issue a net check to the participant.  The evidence will show that the Company did not "forge" any document, it

1    among other things, that the Plan was terminated earlier by the decision of the Board to terminate the

2    Top Hat Plan in a meeting held on August 10, 2007 and that upon termination, the Top Hat Plan

3    provided that plan benefits be paid immediately to the participants.

4          13.    Following the purported termination of the Plan, and due to the events overtaking the

5    Company at this time as described above, the prior management of the Company determined that it

6    could not make the distribution of the Top Hat Funds pending a determination of the Company's

7    solvency, in light of the Company's then present financial condition.  The Company placed all but

8    $227,000 of the Top Hat Funds in a separate, segregated interest bearing account, pending further

9    investigation and counsel.  DMG has maintained the Top Hat Funds, including the $227,000 in funds

10   referred to above, in two separated segregated accounts since it assumed fiduciary responsibility for

11   the Company so that the status quo was maintained pending a resolution.

12         14.    Plaintiffs filed their action in District Court and on December 6, 2007, the District

13   Court entered an Order Granting Plaintiffs' Application for a Writ of Attachment.  Plaintiffs effected

14   the levy of the Writ of Attachment on December 28, 2007.  On January 4, 2008, CLI filed the

15   Chapter 11 Case.

16             **III.    ARGUMENT**

17       District courts are vested with jurisdiction over every case commenced under the Bankruptcy

18   Code.  28 U.S.C. § 1334.  Pursuant to General Order No. 24, such cases are automatically referred to

19   the bankruptcy court within the same judicial district.  Section 157(d) states:

20           The district court may withdraw, in whole or in part, any case or
     proceeding referred under this section, on its motion or on timely

21           motion of any party, for cause shown.  The district court shall, on
     timely motion of a party, so withdraw a proceeding if the court

22           determines that resolution of the proceeding requires consideration of
     both title 11 and other laws of the United States regulating

23           organizations or activities affecting interstate commerce.

24       The section provides two bases for withdrawal, discretionary withdrawal for cause and

25   mandatory withdrawal.  The Motion should be denied.  Mandatory withdrawal is not applicable as

26

27   simply indicated that the check should be issued to the Company in accordance with this normal procedure
     and a Company officer put her initials verifying this practice on some of the depository instructions submitted

28   to the Plan Administrator. See he DECLARATION OF JANENE TOWNER IN OPPOSITION TO MOTION TO
     WITHDRAW REFERENCE, filed concurrently herewith.

1   the proceeding does not require the consideration of ERISA or any other law of the United States

2   affecting interstate commerce.  Further, Plaintiffs have not shown cause to warrant discretionary

3   withdrawal.

4         **a.    Mandatory Withdrawal of the Reference is not Required.**

5         Section 157(d) has two requisites for mandatory withdrawal: consideration of title 11 and

6   consideration of other laws regulating organizations or activities affecting interstate commerce.  See

7   *1 Collier on Bankruptcy, Bankruptcy Courts, Jurisdiction, Venue, Appeals, General Coverage*

8   3.04[2] ("Collier").  While there is a split amongst district courts in other circuits in interpreting this

9   statute, the prevalent interpretation before invoking mandatory withdrawal is to require a

10  "substantial and material consideration of" non-Code statutes and to have more than a *de minimus*

11  effect on interstate commerce.  See Collier ¶ 3.04[2].

12        The Seventh Circuit has stated that:

13            Overwhelmingly courts and commentators agree that the
    mandatory withdrawal provision cannot be given its broadest literal

14            reading, for sending every proceeding that required passing
    "consideration" of non-bankruptcy law back to the district court would

15            "eviscerate much of the work of the bankruptcy courts[.]"  From a
    litigant's perspective, such a reading would also create an "escape

16            hatch" by which bankruptcy matters could easily be removed to the
    district court.

17

18  *In re Vicars Ins. Agency*, 96 F.3d 949, 954 (7th Cir. 1996).

19        There is significant support for the "substantial and material" requirement in the Ninth

20  Circuit.  See, *Security Farms v. Int'l. Bhd. of Teamsters*, 124 F.3d 999, 1008 n.4 (9th Cir. 1997) ("By

21  contrast [to mandatory withdrawal], permissive withdrawal does not hinge on the presence of

22  substantial and material questions of federal law.");  *In re The Roman Catholic Bishop of San Diego*,

23  Case No. 07cv1355-IEG(RBB), 2007 U.S. Dist. LEXIS 60954, *5 (S.D. Cal. Aug. 20, 2007) (citing

24  *In re Vicars* as legal standard);  *Don's Making Money, LLP v. Estate of Deihl*, Case No. CV 07-319-

25  PHX-MHM, 2007 U.S. Dist. LEXIS 32972, *5-*7 (D. Ariz. May 3, 2007) (citing *Security Farms*

26  and *In re Vicars*);  *Stratton v. Garcia*, Case No. CIV-F-06-1495 AW1, 2007 U.S. Dist. LEXIS 14434,

27  *4 (E.D. Cal. Feb. 12, 2007) (citing *In re Vicars* as legal standard);  (requiring substantial and

28  material consideration of federal statutes).

ICJ:ICJ/sb/pt
K:\ComUnity Lending\Lit\Pham\Pld-Adv\W-DrawRef\OPP-v12 doc
7    MEMORANDUM IN OPPOSITION OF MOTION FOR
WITHDRAWAL OF REFERENCE OF ADVERSARY
PROCEEDING

1    Indeed, this Court has previously considered the issue and held:

2            "The mandatory withdrawal provision of § 157(d) is to be
         construed narrowly, so that it does not become an 'escape hatch' for
3        matters properly before the bankruptcy court." Mandatory withdrawal
         is warranted under Section 157 when "substantial and material
4        consideration" of federal statutes is necessary for the resolution of the
         issue.
5

6    *In re General Teamsters, Warehousemen & Helpers Union Local 890*, Case No. C 94-20623 JW,

7    1994 U.S. Dist. LEXIS 21620 at *10-11 (N.D. Cal. 1994) ("*In re General Teamsters*").

8            The other line of interpretation, where the statute is broadly applied, is a position taken by a

9    minority of courts. See, *In re Keifer*, 276 B.R. 196, 200 (E.D. Mich. 2002); *Martin v. Friedman*, 133

10   B.R. 609, 612 (N.D. Ohio 1991); but see, *Chao v. Holman (In re Holman), 325 B.R. 569, 573 (E.D.

11   Ky. 2005) ("Although [*Kiefer*] has rejected this test, since the majority of jurisdictions within this

12   Circuit, and elsewhere, have adopted the substantial and material consideration test, this Court will

13   also adopt the substantial and material consideration test.").

14           In any event, under either test, mandatory withdrawal is not applicable.  It is plain that the

15   subject case does not require consideration of any of the substantive provisions of ERISA because

16   the Top Hat Plan by its very terms and definition does not come within ERISA's substantive

17   provisions.

18           While ERISA does involve interstate commerce, (see generally, *In re White Motor Corp.,* 42

19   B.R. 693 (N.D. Ohio 1984)), "top hat" plans are special breed of plans that were excluded from

20   substantive portions of ERISA, pursuant to 29 USCS § 1051(2).    They allow employees to defer

21   more of their income for tax advantages; however, the plan has to have certain provisions to so

22   qualify, including the provision that the deferred compensation contributions are general assets of

23   the employer.  Thus, if the plan fits the "top hat" exclusion, ERISA does not impose a trust on the

24   plan's funds, and Bankruptcy Code does not exclude property in "top hat" plan from the debtor

25   employer's bankruptcy estate. *IT Group, Inc. v Bookspan (In re IT Group, Inc.)* 448 F3d 661, 664

26   (3d Cir. 2006).

27           Plaintiffs cannot seriously contest the fact that the Top Hat Plan here is a "top hat" plan

28   excluded from the substantive portions of ERISA.  Plaintiffs have not identified any specific ERISA

ICJ:ICJ/sb/pt
K:\ComUnity Lending\Lit\Pham\Pld-Adv\W-DrawRef\OPP-v12.doc                8    MEMORANDUM IN OPPOSITION OF MOTION FOR
                                                                              WITHDRAWAL OF REFERENCE OF ADVERSARY
                                                                              PROCEEDING

1  provisions that require consideration, significant, material or otherwise, to resolve the issues

2  presented by their Complaint.

3      Instead, the Plaintiffs note that "[s]ubstantial legal questions that a court may need to

4  determine include, without limitation, the scope of ERISA's preemption of related state-law claims,

5  the duties of an employer administering a top-hat plan under ERISA, and the remedies available to

6  Plaintiffs." However, Plaintiffs overstate the impact and judicial interpretation of ERISA required in

7  this case and any interpretation of Plaintiffs' rights under ERISA only requires a straightforward

8  application of the law to the facts and can be determined by a bankruptcy court.

9      Plaintiffs state as a basis for relief that there existed a "Trust Agreement" and they are the

10  "beneficiaries" of such trusts. See Verified Complaint for Breach of Contract, Declaratory

11  Relief, and Injunctive Relief, *Pham et al. v. ComUnity Lending, Inc.,* Case No. 08-50030,

12  paragraphs 48-56 (Bankr. N.D. Cal. Jan. 4, 2008). 29 USC § 1101(a)(1) states that those provisions

13  of ERISA (29 U.S.C. §§ 1101 et seq.) that describe fiduciary duties under an ERISA plan shall apply

14  to any plan other than "a plan which is unfunded and is maintained by an employer for the purpose

15  of providing deferred compensation for a select group of management or highly compensated

16  employees." There is no disagreement that this is an unfunded deferred compensation plan for

17  management or highly compensated employees. Indeed, the Trust document specifically states in

18  recital (e) that

19          "Whereas, it is the intention of the parties that this Trust shall
20          constitute an unfunded arrangement and shall not affect the status of
           the Plan as an unfunded plan maintained for the purpose of providing
21          deferred compensation for a select group of management or highly
           compensated employees for purposes of Title I of the Employee
22          Retirement Income Security Act of 1974,"

23      Consequently, the trustee has no federal fiduciary duty under ERISA based on a

24  straightforward application of federal statute to the trust.

25      Thus, although a "trust" has been established, the rights under ERISA are limited for "top

26  hat" plans as the funds in such trusts are recognized to be unfunded and at risk to creditors. In *In re*

27  *IT Group, Inc.,* the Third Circuit notes that one commonly-used mechanism for top hat plans is the

28  "rabbi trust" which is:

1
2

> [a]n irrevocable trust for deferred compensation. Funds held by the trust are out of reach of the employer, but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency.

3
4
5

> The rabbi trust gives employees some measure of security, while at the same time deferring taxes. The assets set aside in the trust are segregated from the employer's other assets and can be used only to pay the deferred compensation. If there is a change in control of the company, the new owners cannot take back the assets of the trust.

6
7
8

> The employee is not taxed until receipt of benefits as long as the trust funds are subject to the claims of the employer's creditors. The employer is treated as the owner of the funds and taxed on all fund earnings until the date of distribution.

9   448 F.3d 661, 665 (3d Cir. 2006) (quoting David J. Cartano, *Taxation of Compensation & Benefits* §

10  20.05[D][3], at 735 (2004)).

11      The trust here is no different from the "rabbi trust" discussed in *In re IT Group, Inc.* The

12  Investors Bank & Trust Company held funds that were out of reach for CLI. The Trust agreement

13  even acknowledges that:

14
15
16

> If at any time the Trustee has determined that the Employer is insolvent, the Trustee shall discontinue payments to Plan participants or their beneficiaries and shall hold the assets of the Trust <u>for the benefit of the Employer's general creditors</u>."

17  Trust at section (3)(b) (emphasis added). Consequently, even the plain terms of the Trust Agreement

18  provide a defining limit to which protection would be provided by the Trust. Read in conjunction

19  with ERISA, federal law does not afford Plaintiffs any additional protection. The Bankruptcy Court

20  can easily determine whether a "constructive trust" exists. The basis for any remaining relief is

21  based on the conduct afterwards of management at CLI, which falls outside the boundaries of

22  ERISA as the funds were no longer in a rabbi trust (to the extent any additional protection was

23  afforded) and rabbi trust trustees under ERISA owe no fiduciary duties as stated in section

24  1101(a)(1). The Adversary Proceeding here involves whether the funds are property of the estate, a

25  matter routinely addressed by bankruptcy courts.

26      Finally, to the extent ERISA applies, district courts have routinely allowed the bankruptcy

27  courts to hear such matters. See, *Herman v. Stetler*, 241 B.R. 206, 210 (E.D. Wisc. 1999) ("Finally,

28  case law is rich with precedent that can effectively guide the bankruptcy court in determining the

1   ERISA issues in the instant action. . . . The court has every confidence in the Bankruptcy Court's

2   ability to effectively read and apply this case law."); *Pension Benefit Guaranty Corp. v. Smith*

3   *Carona Corp.,* 205 B.R. 712 (D. Del. 1996); *In re Quaker City Gear Works, Inc.,* 128 B.R. 711, 714

4   (E.D. Penn. 1991); *In re White Motor Corp.,* 42 B.R. 693 (N.D. Ohio 1984).  These courts have held

5   that mandatory withdrawal is required only when those issues require the interpretation, as opposed

6   to the mere application of the non-title 11 statute.  *Herman v. Stetler*, supra, 241 B.R. 206, 210.

7       Mandatory withdrawal is thus inappropriate.  There are no ERISA statutes that require

8   anything more than a straight forward application determining that the Top Hat Plan here is excluded

9   from the substantive provisions of ERISA.  The Motion should be denied.

10      **b.    Plaintiffs Have Not Shown Cause for Discretionary Withdrawal.**

11      Section 157(d) allows for the withdrawal of a case "for cause shown." In determining

12  whether cause exists, the Court shall consider the following: "the efficient use of judicial resources,

13  delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum

14  shopping, and other related factors." *Security Farms v. International Bhd. of Teamsters,* 124 F.3d

15  999, 1008 (9th Cir. 1997) (quoting *Orion Pictures v. Showtime Networks, Inc. (In re Orion Pictures*

16  *Corp.),* 4 F.3d 1095, 1101 (2d Cir. 1993)).  Further, "[o]ther District Courts in this Circuit have

17  considered additional factors suggested by the Second Circuit, including: whether the claim is core

18  or non-core, whether the claim is legal or equitable; whether the claim is triable by a jury; and

19  conservation of estate and non-debtor resources." *Betta Prod., Inc. v. Distrib. Sys. & Servs., Inc.,*

20  No. 07-2071 SC, 2007 U.S. Dist. LEXIS 45872, *4-*5 (N.D. Cal. June 15, 2007).

21      The Adversary Proceeding strikes to the very heart of the Chapter 11 Case; whether the Top

22  Hat Funds are property of the estate.[7]  This obviously concerns an issue with which the Bankruptcy

23  Court is very familiar and hears as a matter of course.  Plaintiffs raise what are essentially breach of

24  contract claims and theories of constructive trust, which relate to the same basic issue of whether the

25  Top Hat Funds are property of the estate.  See, e.g., *In re Union Computer Corp.*, 13 F.3d 321, 324

26  (9th Cir. 1993) (discussing trusts and property of the estate).  The Bankruptcy Court is able to

27

28      [7] To ensure that whatever decision is binding on all of the participants, the Debtor has filed a
    Counter-Claim for declaratory relief, naming all plan participants as Counter-Defendants.

ICJ:ICJ/sb/pt
K:\ComUnity Lending\Lit\Pham\Pld-Adv\W-DrawRef\OPP-v12.doc
11   MEMORANDUM IN OPPOSITION OF MOTION FOR
WITHDRAWAL OF REFERENCE OF ADVERSARY
PROCEEDING

1  consider these issues in the course of the Chapter 11 Case and thus promotes judicial efficiency and

2  economy. Whether the funds are property of the estate is clearly a core issue under 11 U.S.C. §§

3  157(b)(2)(A), (B), (E) and (O).  These issues should be resolved in the Bankruptcy Court to

4  preserve uniformity in bankruptcy administration.  If the Bankruptcy Court determines that the Top

5  Hat Funds are property of the estate, further proceedings may be necessary to determine the amount

6  of the Plaintiffs' claims, if any, and to the extent, if any, their claims may be subject to a priority

7  claim status under § 507(a), are core issues under U.S.C. § 157(b)(2)(B).  Withdrawal of the

8  reference should not "defeat one goal of the bankruptcy court system, which is to have the

9  bankruptcy judge hear matters within his area of expertise." *In re General Teamsters*, supra, 1994

10  U.S. Dist. LEXIS 21620, at *13 *14.

11          In keeping with their strategy of ascribing improper motives to the Debtor, Plaintiffs claim

12  that "withdrawal of the reference is necessary to preserve the integrity of the District Court orders

13  that Defendant…has sought to evade through the commencement of its bankruptcy case." (see

14  PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR

15  WITHDRAWAL OF REFERENCE, the "Plaintiffs' Memorandum") at page 2:10-12.  Plaintiffs also claim

16  that they "should not be forced to re-litigate in Bankruptcy Court the issues that the District Court

17  has already heard and determined."  Plaintiffs' Memorandum, page 4:12-13.

18          Neither this Court's order imposing a Temporary Protective Order, which in fact was

19  stipulated to by the Debtor, nor the Right to Attachment Order, provide any determination of the

20  issues alleged in the Adversary Proceeding.  This Court's prior orders do not and cannot include any

21  binding conclusions of law regarding the merits of Plaintiffs' claims.  Indeed, California Code of

22  Civil Procedure § 484.100 specifically provides that the Court's issuance of a temporary protective

23  order or a right to attach order has no effect on the merits of the claim or defenses.

24              "The court's determinations under this chapter shall have no
25          effect on the determination of any issues in the action other than issues
            relevant to proceedings under this chapter nor shall they affect the
26          rights of the plaintiff or defendant in any other action arising out of the
            same claim of the plaintiff or defendant.  The court's determinations
27          under this chapter shall not be given in evidence nor referred to at the
            trial of any such action."
28

1   California Code of Civil Procedure § 484.100 (emphasis added).

2   　　　Thus, Plaintiffs' efforts to rely on orders made by this Court on applications requesting

3   provisional remedies are highly improper.  Further, it was clear by the Court's remarks at the various

4   hearings that the Court was concerned with protecting the Top Hat Funds from the reach of other

5   creditors prior to a determination of the merits of the Plaintiffs' claims.  Far from "evading" these

6   orders, many of which were agreed to by the Debtor, the filing of the bankruptcy case imposed an

7   automatic stay stopping all collection efforts of creditors so that the Debtor can orderly liquidate its

8   assets and distribute them to creditors as provided under the Bankruptcy Code.  To the extent

9   Plaintiffs are arguing that they should not have to re-litigate the issue of segregating these funds

10  from the reach of other creditors, the parties have already agreed to a stipulation and the Bankruptcy

11  Court has already issued its order directing the Debtor to segregate the Top Hat Funds in separate

12  debtor-in-possession accounts, pending further order of the Bankruptcy Court.  See REQUEST FOR

13  JUDICIAL NOTICE IN OPPOSITION TO MOTION FOR WITHDRAWAL OF REFERENCE, Exhibits "A" and

14  "B" thereto.  Whether the Top Hat Funds are property of the estate is a matter for the Bankruptcy

15  Court to decide.

16  　　　There is no basis to withdraw the reference because of any actions taken in this Court prior to

17  the filing of the Chapter 11 Case.  The matter is properly a matter for the Bankruptcy Court and the

18  Plaintiffs have offered no compelling reason to this Court to decide otherwise.

19  　　　　　　　　　　　　**IV.    CONCLUSION**

20  　　　For the foregoing reasons, CLI respectfully requests the District Court to deny the Motion.

21

22  Dated:  March 14, 2008                  **MURRAY & MURRAY**
                                            A Professional Corporation

23

24  　　　　　　　　　　　　　　　　By:  _/s/ Robert A. Franklin_____
                                            Robert A. Franklin
25                                          Attorneys for Debtor, ComUnity Lending,
                                            Incorporated

26

27

28

ICJ:ICJ/sb/pt
K:\ComUnity Lending\Lit\Pham\Pld-Adv\W-DrawRef\OPP-v12.doc                13   MEMORANDUM IN OPPOSITION OF MOTION FOR
                                                                               WITHDRAWAL OF REFERENCE OF ADVERSARY
                                                                               PROCEEDING

1   JOHN WALSHE MURRAY (074823)
    ROBERT A. FRANKLIN (091653)
2   DORIS A. KAELIN (162069)
    JENNY L. FOUNTAIN (226241)
3   MURRAY & MURRAY
    A Professional Corporation
4   19400 Stevens Creek Blvd., Suite 200
    Cupertino, CA 95014-2548
5   Telephone:  (650) 852-9000; (408) 907-9200
    Facsimile:   (650) 852-9244
6   Email:  jwmurray@murraylaw.com
    Email:  rfranklin@murraylaw.com
7   Email:  dkaelin@murraylaw.com
    Email:  jlfountain@murraylaw.com
8
    Attorneys for Debtor
9   ComUnity Lending, Incorporated

10                      UNITED STATES DISTRICT COURT

11         NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

12  In re:                          )
13                                  )
    COMUNITY LENDING, INCORPORATED, A  )    Case No. 5:08-CV-00201-JW
14  CALIFORNIA CORPORATION          )
                                    )    Date:  April 7, 2008
15                  Debtor.         )    Time:  9:00 a.m.
                                    )    Place:  United States District Court
16      5671 Santa Teresa Blvd, Suite 201  )           280 S. First Street, Courtroom 8, 4th Flr.
        San Jose, CA  95123         )           San Jose, CA 95113
17                                  )    Judge: Honorable James Ware
    Employer's Tax ID No.: 94-2673933  )
18                                  )

19      **DECLARATION OF RICHARD G. COUCH IN SUPPORT OF MEMORANDUM IN OPPOSITION OF**
        **MOTION FOR WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING**
20
21          I, Richard G. Couch, declare:

22          1.      I am the Responsible Individual of the Debtor ComUnity Lending, Incorporated (the

23  "Company" or Com Unity") and am authorized to make this declaration on its behalf.  I have

24  personal knowledge of the facts set forth in this declaration, except as to those matters stated on

25  information and belief, and as to those matters, I believe them to be true.  If called as a witness, I

26  would and could testify to the following.

27          2.      On January 4, 2008 the Debtor filed its Voluntary Petition under Chapter 11 bearing

28  case number 08-50030 (the "Chapter 11 Case").  The Debtor is a debtor in possession pursuant to

1    sections 1107 and 1108 of the Bankruptcy Code.

2        3.      CLI is a mortgage lender incorporated in 1980 and is an S-Corporation owned by W.

3    Darryl Fry as the sole shareholder.  Historically, CLI was in the business of originating, brokering,

4    servicing and selling residential mortgages.  CLI received periodic origination fees for originating

5    loans and management fees for servicing loans.  In addition, CLI obtained and sold real-estate

6    owned ("REO") properties acquired through foreclosure upon borrower defaults.  At present, CLI

7    has ceased all loan origination operations and is in the process of selling its remaining loans and

8    REO properties, completing foreclosures and liquidating all of its other assets.

9        4.      As part of its original business, CLI would originate and fund loans via various short

10   term warehouse lines of credit (the "Warehouse Credit Facilities") from various financial institutions

11   including, among others, First Collateral Services, Washington Mutual, Greenwich and GMAC –

12   RFC.  After originating and funding loans, CLI sold substantially all originated and funded loans

13   (the "Loan Sales") to various investors, including, among others, Morgan Stanley, Merrill Lynch,

14   IndyMac and Countrywide Home Loans (collectively, the "Investors").  The Loan Sales enabled the

15   Company to service the various Warehouse Credit Facilities so that the Debtor could fund additional

16   loans.  Additionally, certain of the Investors would bundle the purchased loans and issue securities,

17   backed by these loans and mortgages, to private third-party investors.  In the event of loan defaults

18   or delinquencies and/or upon the occurrence of other conditions, subject to the terms of the

19   applicable Loan Sales' documents, the Investors could require CLI to repurchase said loans (the

20   "Repurchase Requests").

21       5.      CLI began to experience the effects of the country-wide mortgage crisis in the spring

22   of 2007.  CLI's outstanding Repurchase Request obligations continued to increase and peaked in the

23   July to September 2007 timeframe.  This caused a situation whereby CLI could no longer service its

24   debt.  In addition, CLI was served and named in multiple legal actions, including actions by

25   borrowers, equipment lessors, vendors, and prior employees during the same period.  As a result of

26   the mounting pressures and obligations, CLI was forced to seek a crisis management specialist to

27   address these issues, fully terminate operations and to liquidate the company.  CLI entered into

28   discussions with Diablo Management Group ("DMG"), of which Richard Couch is the founder and

2    DECLARATION OF RICHARD G. COUCH IN SUPPORT OF
     MEMORANDUM IN OPPOSITION OF MOTION FOR
     WITHDRAWAL OF REFERENCE OF ADVERSARY

1  Chairman, to assist in the restructuring, management, and potential liquidation of CLI.  On October

2  25, 2007, the CLI Board of Directors passed a series of resolutions to, among other things, retain

3  DMG and to appoint Richard Couch as CLI's Chief Executive Officer and board member.

4  Concurrently therewith, all other officers and directors of CLI resigned and DMG assumed

5  responsibility for all day to day operations of CLI.

6    6. The Debtor filed the Chapter 11 Case to preserve its remaining assets so that their

7  value may be maximized by the Debtor for the benefit of all of its creditors.  The Debtor intends to

8  orderly wind down its business, recover and preserve its assets and propose a liquidating plan of

9  reorganization.

10    7. Plaintiffs are former employees of CLI and participants in the Company's non-

11  qualified deferred compensation plan (the "<u>Top Hat Plan</u>"), a copy of which is attached as Exhibit

12  "1" to the Plaintiffs' Complaint.

13    8. I am informed and believe that the present Top Hat Plan was commenced in 2001 and

14  was restated in 2003.  It is governed by the terms of the Top Hat Plan and Transamerica Investment

15  Services served as the plan administrator (the "<u>Plan Administrator</u>").  The Debtor believes that the

16  plan benefits were held in trust pursuant to a Trust Agreement dated September 1, 2003 ("<u>Trust</u>"), of

17  which Plaintiffs were third-party beneficiaries, a copy of which is attached as Exhibit "2" to

18  Plaintiffs' Complaint.

19    9. Section 1(d) of the Trust states:  ". . . Any rights created under the Plan and this Trust

20  Agreement shall be mere unsecured contractual rights of Plan participants and their beneficiaries

21  against Employer.  Any assets held by the Trust will be subject to the claims of the Employer's

22  general creditors under federal and state law in the event of Insolvency, as defined in Section 3(a)."

23  Section 3(a) defined "Insolvency" as the Company being unable to pay its debts as they became due

24  or the Company becoming a debtor under the Bankruptcy Code.

25    10. The Top Hat Plan set forth similar language in describing the funds contributed by the

26  Top Hat Plan participants.  Thus, the recitals specify that it is the express intent of the Employer that

27  the assets of the Plan and Trust shall at all times be subject to the claims of the general creditors of

28  the Employer.

1    11.    Section 5.2 of the Top Hat Plan provides **that "all amounts under this Plan…shall**

2  **remain (until made available to the Participant or Beneficiary) solely the property of the**

3  **Employer (without being restricted to the provision of benefits under the Plan) subject to the**

4  **claims of the Employer's general creditors.  No Participant or Beneficiary shall have any**

5  **secured or beneficial interest in any property, rights or investments held by the Employer in**

6  **connection with the Plan."**(Emphasis added).

7    12.    Section 10.6 of the Top Hat Plan provides that the "vested **Account balance of a**

8  **Participant shall be paid from the Trust only to the extent the Employer is not at the time of**

9  **payment insolvent.  Any vested accrued benefits under the Plan represent an unfunded,**

10  **unsecured promise by the Employer to pay these benefits to the Participants when due**.  A

11  Participant has no greater right to Trust assets than the general creditors of the Employer in the event

12  that the Employer shall become insolvent.  Trust assets can be used to pay only vested accrued

13  benefits under the Plan or the claims of the Employer's general creditors." (Emphasis added).

14    13.    On or about September 4, 2007, the Company purported to terminate the Top Hat

15  Plan.  As was apparently normal practice with respect to prior distributions to participants, I am

16  informed and believe the Plan Administrator issued checks to ComUnity purportedly in the amount

17  of each participant's vested account balance (the "Top Hat Funds").  I am further informed that

18  under the normal procedure, the Company would then issue a net check, less applicable withholding

19  taxes, to the plan participants, including the Plaintiffs.

20    14.    Following the purported termination of the Plan, and due to the events overtaking the

21  Company at this time as described above, the prior management of the Company determined that it

22  could not make the distribution of the Top Hat Funds pending a determination of the Company's

23  solvency, in light of the Company's then present financial condition.  The Company placed all but

24  $227,000 of the Top Hat Funds in a separate, segregated interest bearing account, pending further

25  investigation and counsel.  DMG has maintained the Top Hat Funds, including the $227,000 in funds

26  referred to above, in two separated segregated accounts since it assumed fiduciary responsibility for

27  the Company so that the status quo was maintained pending a resolution.

28  / / /

1    I declare under penalty of perjury under the laws of the state of California that the foregoing

2 is true and correct and that this declaration is executed on March 14, 2008.

3

4                                    /s/ *Richard G. Couch*
                                     Richard G. Couch

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  JOHN WALSHE MURRAY (074823)
   ROBERT A. FRANKLIN (091653)
2  DORIS A. KAELIN (162069)
   JENNY L. FOUNTAIN (226241)
3  MURRAY & MURRAY
   A Professional Corporation
4  19400 Stevens Creek Blvd., Suite 200
   Cupertino, CA 95014-2548
5  Telephone:  (650) 852-9000; (408) 907-9200
   Facsimile:   (650) 852-9244
6  Email:  jwmurray@murraylaw.com
   Email:  rfranklin@murraylaw.com
7  Email:  dkaelin@murraylaw.com
   Email:  jlfountain@murraylaw.com
8
   Attorneys for Debtor
9  ComUnity Lending, Incorporated

10
                 UNITED STATES DISTRICT COURT
11
        NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION
12

13  In re:                              )
                                        )
14  COMUNITY LENDING, INCORPORATED, A    )   Case No. 5:08-CV-00201-JW
    CALIFORNIA CORPORATION               )
15                                       )   Date:   April 7, 2008
            Debtor.                      )   Time:   9:00 a.m.
16                                       )   Place:  United States District Court
    5671 Santa Teresa Blvd, Suite 201    )           280 S. First Street, Courtroom 8, 4th Flr.
17  San Jose, CA  95123                  )           San Jose, CA 95113
                                         )   Judge:  Honorable James Ware
18  Employer's Tax ID No.: 94-2673933    )
                                         )

19      **DECLARATION OF JANENE TOWNER IN SUPPORT OF MEMORANDUM IN OPPOSITION OF MOTION
            FOR WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING**

20

21          I, Janene Towner, declare:

22          1.      I am a former member of the Board of Directors and the former Chief Operating

23  Officer of ComUnity Lending, Incorporated (the "Debtor", or "Company").  I have personal

24  knowledge of the facts set forth in this declaration, except as to those matters stated on information

25  and belief, and as to those matters, I believe them to be true.  If called as a witness, I would and

26  could testify to the following.

27          2.      My duties as Chief Operating Officer included, among other things, supervision of

28  the Company's human resource activities.  From approximately 2002 through August 2007, the

1    Company outsourced its human resource activities to Gevity, Inc.

2          3.      In August 2007, the Company's Board of Directors authorized management to

3    terminate the Non-Qualified Deferred Compensation Plan the Company had established for its

4    highly compensated employees (the "<u>Top Hat Plan</u>").  Following this decision by the Board, I

5    conferred with Transamerica Retirement Services, the administrator of the Top Hat Plan (the "<u>Plan</u>

6    <u>Administrator</u>") with respect to the procedures involved in terminating the Top Hat Plan and

7    distributing benefits to the participants.  On August 29, 2007, I confirmed with Tami Skriver, as the

8    Plan Administrator's representative, the procedures for termination.  It included a written request,

9    the dissemination of forms for withdrawal of the participants' funds and certain other instructions.

10         4.      Pursuant to the Plan Administrator's instruction, the Company notified the

11   participants of the Top Hat Plan and disseminated Distribution Request forms formulated by the Plan

12   Administrator to the participants in the Top Hat Plan, including myself.  The participants were

13   instructed to fill out certain information and provide their signature.  I reviewed with Ms. Skriver the

14   procedures required to properly fill out the forms and return them to the Plan Administrator.

15         5.      I am advised that the Complaint in this case alleges, among other things, that the

16   Company "forged" depository instructions on the Distribution Request forms to cause the Plan

17   Administrator to issue the checks directly to the Company.  Attached as **Exhibits "A"** and **"B"** to

18   this declaration respectively are true and correct copies (redacted to remove social security

19   information) of Distribution Request forms submitted by Mai Christina Pham with respect to

20   distributions under the 2005 Top Hat Plan and 2001 Top Hat Plan.  I was informed by the Plan

21   Administrator that under no circumstances could the Plan Administrator issue checks directly to the

22   participants, including myself, because the plan assets were general assets of the Company.  Instead,

23   I was advised, and as per the procedure followed in all previous distributions to participants under

24   the Top Hat Plan, the Plan Administrator was to issue checks to the Company following which the

25   Company would make the necessary withholding deductions and issue a net check from the

26   Company's account to the participant.  At the Plan Administrator's request, I corrected the

27   Distribution Requests submitted by some of the participants, including Ms. Pham, to request a check

28   for payment as opposed to the wire transfer requested by Ms. Pham.  I initialed the correction with

1   my initials "JT" in section (c) of the form.

2       6.      The Company received checks from Transamerica on account of the distribution

3   requests made by the participants.  These checks were placed in the Company's safe.

4       7.      I am informed that the Company sought outside legal advice with respect to the

5   Company's ability to distribute the funds in light of the Company's then financial situation.  I am

6   further informed that based upon this advice, the Company retained the funds pending further

7   counsel.

8       I declare under penalty of perjury under the laws of the state of California that the foregoing

9   is true and correct and that this declaration is executed on March 14, 2008.

10

11                              /s/ *Janene Towner*_____
                               Janene Towner

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   JOHN WALSHE MURRAY (074823)
    ROBERT A. FRANKLIN (091653)
2   DORIS A. KAELIN (162069)
    JENNY L. FOUNTAIN (226241)
3   MURRAY & MURRAY
    A Professional Corporation
4   19400 Stevens Creek Blvd., Suite 200
    Cupertino, CA 95014-2548
5   Telephone: (650) 852-9000; (408) 907-9200
    Facsimile: (650) 852-9244
6   Email: jwmurray@murraylaw.com
    Email: rfranklin@murraylaw.com
7   Email: dkaelin@murraylaw.com
    Email: jlfountain@murraylaw.com
8
    Attorneys for Debtor
9   ComUnity Lending, Incorporated

10

11                    UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION
12

13  In re:                          )
                                    )
14  COMUNITY LENDING, INCORPORATED, A   )   Case No. 5:08-CV-00201-JW
    CALIFORNIA CORPORATION          )
                                    )   Date:  April 7, 2008
15              Debtor.             )   Time:  9:00 a.m.
                                    )   Place: United States District Court
16      5671 Santa Teresa Blvd, Suite 201  )          280 S. First Street, Courtroom 8, 4th Flr.
        San Jose, CA 95123          )          San Jose, CA 95113
17                                  )   Judge: Honorable James Ware
    Employer's Tax ID No.: 94-2673933  )
18                                  )

19                         EXHIBIT "A" TO

20  DECLARATION OF JANENE TOWNER IN SUPPORT OF MEMORANDUM IN OPPOSITION OF MOTION
       FOR WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING
21

22

23

24

25

26

27

28

# TRANSAMERICA
### RETIREMENT SERVICES

4333 Edgewood Road NE
Cedar Rapids, IA 52499
877-234-9293
www.ta-retirement.com

**Distribution Request**
**Termination of Employment/Retirement**

## Instructions

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No. 2214-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

## Section A. Employer Information

| | |
|---|---|
| Company/Employer Name | Com Unity Lending Inc. |
| Contract/Account No. | YQ51291 | Affiliate No. | 02005 | Division No. |

## Section B. Participant Information

| | | | |
|---|---|---|---|
| Last Name | PHAM | Date of Birth | |
| First Name/MI | MAI C | Social Security No. | |
| Mailing Address | | | |
| City | | Stat | |
| Zip Code | | | |
| Phone No./Ext. | | | |
| E-mail Address | christina.pham@comunitylending.com | | |

## Section C. Distribution Information

Reason for distribution: [X] Termination of employment    [ ] Retirement

Amount of distribution: [X] 100%    or    [ ] $_____, remainder to be: [ ] Left on deposit [ ] Other _____

### Distribution Options

[ ] Leave funds on deposit
[ ] Purchase annuity
[X] Lump sum distribution
[ ] Partial distribution
[ ] In-kind distribution of any employer stock *(distribution will be in full shares only; partial shares will be paid in cash)*

[ ] [ ] [ ] [ ] Deposit Transfer Corp. No. *(from new financial institution, so stock can be transferred without issuing certificates)*

[ ] Flexible Distribution Options *(available if leaving funds on deposit)*

[ ] Fixed Payment $_____ (amount)
[ ] Fixed Payment over _____ years
[ ] Life Expectancy [ ] Single [ ] Joint *(proof of spouse's age required)*

Payment commencement month: _____

Payment frequency:

[ ] Monthly    [ ] Quarterly    [ ] Semi-Annual    [ ] Annual

*Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan.*

## Payment Options

[X] Check    or    [X] Wire transfer *(Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.)*

| | |
|---|---|
| ABA No. | 1 2 2 0 0 0 2 4 7 |
| Institution Name | Wells Fargo |
| Institution Address | Westminster Branch |
| Account Name | MAI C. Pham |
| Account No. | 0632786349 |

"Further Credit To" Institution Name _____
*(For wire to credit union or overseas bank, call Transamerica for additional information.)*

*Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.*

Form No. 2220-TA (rev 2/05) (Page 1 of 2)          Transamerica Plans





**EXHIBIT A**

**Section D. Outstanding Loan Options (if applicable)**

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s). *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)*

☐ Continue loan repayments via loan coupons. *(Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)*

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.*

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** – If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** – If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply.

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** – Withholding is mandatory in some states. Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise.

☐ Do not withhold state income tax (if independent election is permitted)

**Section F. Participant Signature**

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

**For Married Participants:** I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public.

**For All Participants:** I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.

X _(signature)_ _____    _____    MAT C- Pham _____
Participant Signature                        Date             Print Name and Social Security Number

**Section G. Spousal Consent (if applicable)**

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

X _____    _____    X _____    _____
Spouse Signature                   Date                Plan Administrator Signature or Notary Public Signature and Stamp/Seal    Date

**Section H. Plan Administrator Information and Signature**

Vested %: _100 %_    Employment status: ☒ Terminated _9/4/07_    ☐ Retired _____
                                                           Termination Date                    Retirement Date

Have all contributions been remitted? ☒ Yes ☐ No

Period end date of final contribution _6/30/07_    *(Processing will be delayed until final contribution is received.)*

*Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _(signature)_ _____    _9/10/07_
Plan Administrator Signature              Date



1   JOHN WALSHE MURRAY (074823)
    ROBERT A. FRANKLIN (091653)
2   DORIS A. KAELIN (162069)
    JENNY L. FOUNTAIN (226241)
3   MURRAY & MURRAY
    A Professional Corporation
4   19400 Stevens Creek Blvd., Suite 200
    Cupertino, CA 95014-2548
5   Telephone: (650) 852-9000; (408) 907-9200
    Facsimile: (650) 852-9244
6   Email: jwmurray@murraylaw.com
    Email: rfranklin@murraylaw.com
7   Email: dkaelin@murraylaw.com
    Email: jlfountain@murraylaw.com
8
    Attorneys for Debtor
9   ComUnity Lending, Incorporated

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

12

| | |
|---|---|
| In re: | ) |
| | ) |
| COMUNITY LENDING, INCORPORATED, A | ) Case No. 5:08-CV-00201-JW |
| CALIFORNIA CORPORATION | ) |
| | ) Date: April 7, 2008 |
| Debtor. | ) Time: 9:00 a.m. |
| | ) Place: United States District Court |
| 5671 Santa Teresa Blvd, Suite 201 | ) 280 S. First Street, Courtroom 8, 4th Flr. |
| San Jose, CA 95123 | ) San Jose, CA 95113 |
| | ) Judge: Honorable James Ware |
| Employer's Tax ID No.: 94-2673933 | ) |
| | ) |

19

**EXHIBIT "B" TO**

20

**DECLARATION OF JANENE TOWNER IN SUPPORT OF MEMORANDUM IN OPPOSITION OF MOTION FOR WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING**

# TRANSAMERICA
### RETIREMENT SERVICES
1300 Edgewood Road NE
Cedar Rapids, IA 52499
877-234-9293
www.ta-retirement.com

**Distribution Request**
**Termination of Employment/Retirement**

## Instructions

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No. 2214-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

### Section A. Employer Information

| | |
|---|---|
| Company/Employer Name | Com Unity Lending Inc. |
| Contract/Account No. | YQ51291 | Affiliate No. | 00001 | Division No. | |

### Section B. Participant Information

| | |
|---|---|
| Last Name | PHAM | Date of Birth | |
| First Name/MI | MAI C | Social Security No. | |
| Mailing Address | | |
| City | | State | |
| Zip Code | | |
| Phone No./Ext. | | |
| E-mail Address | christina.pham@comunitylending.com | |

### Section C. Distribution Information

Reason for distribution:  ☒ Termination of employment    ☐ Retirement

Amount of distribution:  ☒ 100%  or  ☐ $_____ , remainder to be:  ☐ Left on deposit  ☐ Other

**Distribution Options**

☐ Leave funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock *(distribution will be in full shares only; partial shares will be paid in cash)*

    ☐☐☐☐☐ Deposit Transfer Corp. No. *(from new financial institution, so stock can be transferred without issuing certificates)*

☐ Flexible Distribution Options *(available if leaving funds on deposit)*
  ☐ Fixed Payment $_____ *(amount)*
  ☐ Fixed Payment over _____ years
  ☐ Life Expectancy  ☐ Single ☐ Joint *(proof of spouse's age required)*
  Payment commencement month: _____
  Payment frequency:
  ☐ Monthly  ☐ Quarterly  ☐ Semi-Annual  ☐ Annual

*Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan.*

**Payment Options**

☒ Check  or  ☒ Wire transfer *(Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.)*

| | |
|---|---|
| ABA No. | 1 2 2 0 0 0 2 4 7 |
| Institution Name | Wells Fargo |
| Institution Address | Westminster Branch |
| Account Name | MAI C. Pham |
| Account No. | 0632786349 |

"Further Credit To" Institution Name
*(For wire to credit union or overseas bank, call Transamerica for additional information.)*

*Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.*



# EXHIBIT B

## Section D. Outstanding Loan Options (if applicable)

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s). *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)*

☐ Continue loan repayments via loan coupons. *(Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)*

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.*

## Section E. Tax Withholding Election

**Mandatory Federal Income Tax Withholding** – If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** – If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply.

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** – Withholding is mandatory in some states. Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise.

☐ Do not withhold state income tax (if independent election is permitted)

## Section F. Participant Signature

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

**For Married Participants:** I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public.

**For All Participants:** I understand that I may need to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.

X _____   _____   MAC   Pham _____
   Participant Signature                    Date            Print Name and Social Security Number

## Section G. Spousal Consent (if applicable)

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

X _____   _____   X _____   _____
   Spouse Signature                      Date             Plan Administrator Signature or Notary Public Signature and Stamp/Seal    Date

## Section H. Plan Administrator Information and Signature

Vested %: __100__        Employment status:   ☒ Terminated   __9/4/07__        ☐ Retired   _____
                                                            Termination Date                      Retirement Date

Have all contributions been remitted?   ☒ Yes   ☐ No   __6/30/07__

Period end date of final contribution  _____  *(Processing will be delayed until final contribution is received.)*

*Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _____   __9/10/07__
   Plan Administrator Signature        Date



JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
DORIS A. KAELIN (162069)
JENNY L. FOUNTAIN (226241)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone:  (650) 852-9000; (408) 907-9200
Facsimile:   (650) 852-9244
Email:  jwmurray@murraylaw.com
Email:  rfranklin@murraylaw.com
Email:  dkaelin@murraylaw.com
Email:  jlfountain@murraylaw.com

Attorneys for Debtor
ComUnity Lending, Incorporated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| COMUNITY LENDING, INCORPORATED, A CALIFORNIA corporation | ) Case No. 5:08-CV-00201-JW |
| | ) |
| | ) Date:   April 7, 2008 |
| Debtor. | ) Time:  9:00 a.m. |
| | ) Place: United States District Court |
| 5671 Santa Teresa Blvd, Suite 201 | )         280 S. First Street, Courtroom 8, 4th Flr. |
| San Jose, CA  95123 | )         San Jose, CA 95113 |
| | ) Judge: Honorable James Ware |
| Employer's Tax ID No.: 94-2673933 | ) |
| | ) |

**CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF SANTA CLARA        )

  I am a citizen of the United States and employed in Santa Clara County.  I am over the age of eighteen years and not a party to the above-entitled action; my business address is 19400 Stevens Creek Boulevard, Suite 200, Cupertino, CA 95014-2548.

  On March 14, 2008, at my place of business, I served a true and correct copy of the following document(s):

  1.  **MEMORANDUM IN OPPOSITION OF MOTION FOR WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING;**

1     **2.**      DECLARATION OF RICHARD G. COUCH IN SUPPORT OF MEMORANDUM IN
2              OPPOSITION OF MOTION FOR WITHDRAWAL OF REFERENCE OF ADVERSARY
               PROCEEDING; AND

3     **3.**      DECLARATION OF JANENE TOWNER IN SUPPORT OF MEMORANDUM IN OPPOSITION
               OF MOTION FOR WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING.

4

5 in the manner indicated below:

6 ☒      By mail by enclosing said document(s) in an envelope and depositing the sealed envelope with
          the United States Postal Service with the postage fully prepaid, addressed as follows:

7           Ronald S. Kravitz, George H. Kalikman,
8           Matthew Borden
          Liner Yankelevitz Sunshine & Regenstreif
9           LLP
          199 Fremont Street, 20th Floor
10          San Francisco, CA 94105-2255

11 ☐      By facsimile transmission sending a true copy of the said document(s) to the person(s)
12           indicated below to the following receiving station(s):

    ☐      By overnight delivery depositing the said document(s) in a sealed overnight delivery envelope,
13           designated for overnight delivery, with all delivery charges prepaid, with an authorized
          representative addressed as follows:

14 ☐      By hand delivery personally delivering or arranged to have personally delivered the said
15           document(s) to the person(s) indicated below in a manner provided by law, by leaving the said
          document(s) at the office(s) or usual place(s) of business, during usual business hours, of the
16          said person(s) with a clerk or other person who was apparently in charge thereof and at least
          18 years of age, who was informed of the contents (as indicated):

17 ☐      By e-mail transmission sending a true copy of the said document(s) to the person(s) indicated
          below:

18

19      This Certificate was executed on March 14, 2008 at Cupertino, Santa Clara County,

20 California. I declare under penalty of perjury that the foregoing is true and correct.

21

22                 */s/ Priscilla Teague*
                Priscilla Teague

23

24

25

26

27

28