1  Ronald S. Kravitz (SBN 129704)
       rkravitz@linerlaw.com
2  Matthew Borden (SBN 214323)
       mborden@linerlaw.com
3  LINER YANKELEVITZ
   SUNSHINE & REGENSTREIF LLP
4  199 Fremont Street, 20th Floor
   San Francisco, CA 94105-2255
5  Telephone:  (415) 489-7700
   Facsimile:  (415) 489-7701
6
   Attorneys for Plaintiffs
7  Mai Christina Pham, John Pham, Mai Nguyen,
   Hung Perry Nguyen, and Joyce Freeman
8

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re | **No. C 08-00201 JW** |
| COMUNITY LENDING, INCORPORATED, a California corporation, | Honorable James Ware |
| | Bankruptcy Case No. 08-50030 (MM) |
| Debtor. | Chapter 11 |
| MAI CHRISTINA PHAM, JOHN PHAM, MAI NGUYEN, HUNG PERRY NGUYEN, and JOYCE FREEMAN, | Adv. Proc. No. 08-05006 |
| Plaintiffs, | **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR WITHDRAWAL OF REFERENCE PURSUANT TO 28 U.S.C. § 157(d)** |
| vs. | |
| COMUNITY LENDING, INCORPORATED, a California corporation, and Does 1 through 10, inclusive, | **Date:   April 7, 2008**<br>**Time:   9:00 a.m.**<br>**Courtroom:  8, 4th Floor** |
| Defendants. | |

REPLY ISO MOTION TO WITHDRAW REFERENCE

::ODMA\PCDOCS\DOCS2\36499\4                                                                                   No. C 08-00201 JW

**SUMMARY OF REPLY**

This case raises substantial questions of federal law, including questions of first impression under the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendant ComUnity Lending Inc. ("the Company) acknowledges that this case involves a deferred compensation plan agreement and trust instrument governed exclusively by ERISA, but it tries to gloss over many of the ERISA questions in this case – for example, questions of preemption and federal common law under ERISA. Plaintiffs believe that any consideration of ERISA is sufficient to trigger mandatory withdrawal, but it is undisputable that where, as here, the outcome of a case turns on the resolution of novel issues of federal law, 28 U.S.C. § 157(d) requires that such determinations be made by an Article III Court. Indeed, that is the whole purpose of 28 U.S.C. § 157(d).

Moreover, the unique facts of this case present a compelling case for discretionary withdrawal of the reference. The Company does not deny that this Court is already familiar with this case and merely dismisses out of hand the time and judicial resources already spent by this Court analyzing key issues in this case. Trying this matter in Bankruptcy Court would waste this Court's previous efforts and would further be a waste of the Bankruptcy Court's time, as this Court would ultimately have to review *de novo* all of the proceedings before the Bankruptcy Court.

There is nothing to be gained by the bankruptcy estate's creditors or the plaintiff employees by tying up these retirement funds in long, drawn out Bankruptcy Court proceedings – which would then have to be repeated herein. The Company's proposed methodology would double the attorney's fees to all parties and delay payment of retirement benefits to Plaintiffs, some of whom are already retirement age. Ultimately, resolution of Plaintiffs' ERISA claims will resolve any bankruptcy issue while conversely, it is impossible to determine whether Plaintiffs' Plan benefits are part of the bankruptcy estate without first resolving the merits of Plaintiffs' ERISA claims. Under these circumstances, all of the relevant factors militate in favor of withdrawing the reference.

**I.   WITHDRAWAL OF THE REFERENCE IS MANDATORY.**

The Company's arguments about mandatory withdrawal of the reference are based on a mischaracterization of Plaintiffs' claims. (Opp. at 7-11.) Plaintiffs are not suing for breach of

fiduciary duty, as the Company suggests; Plaintiffs are suing to enforce the terms of the Plan and the Trust Agreement, pursuant to ERISA § 502, 29 U.S.C. § 1132. (Verified Compl. ¶¶ 45-50.)

Under the express terms of the Plan, the Company was required to immediately pay to Plaintiffs their Plan benefits on August 10, 2007, when the Company terminated the Plan and when the Company was still solvent. Instead, the Company concealed the termination of the Plan from Plaintiffs and then altered Plaintiffs' disbursement instructions when Plaintiffs tried to obtain their Plan benefits, so as to prevent Plaintiffs from receiving their Plan benefits. The Company does not dispute either of these facts, and has, in fact, supplied a declaration admitting them. (Towner Decl. ¶¶ 3, 5.)[1] These claims fall under ERISA because the Plan was a top-hat plan. *E.g.*, *Carr v. First Nationwide Bank*, 816 F. Supp. 1476, 1485 (N.D. Cal. 1993); *id.* at 1486 ("Top Hat plans are 'employee benefit plans' within the meaning of ERISA.").

The Company argues that these claims raise no questions under ERISA (Opp. at 7), apparently based its unsupported legal assertion that top-hat plans are "excluded from the substantive portions of ERISA." (Opp. at 8:15-17, 27-28.) This assertion is incorrect. Top-hat plans are exempt from the funding and fiduciary duty provisions of ERISA. 29 U.S.C. §§ 1051(2), 1081(a), 1101(a)(1); *see also Carr*, 816 F. Supp. at 1486. "Nevertheless, Top Hat plans remain subject to the enforcement provisions of ERISA…." *Id.* Cases involving top-hat plans therefore do require consideration of ERISA. For example, in *Carr*, the district court addressed "a case of first impression under ERISA. The question presented is whether the participants in an executive deferred compensation, or 'Top Hat' plan may invoke a federal common law theory of unilateral contract…." 816 F. Supp. at 1484-85.

---

[1] Towner's statement that some unnamed person at Transamerica – who has not submitted a declaration – told her to alter the instructions is irrelevant and inadmissible hearsay. Pursuant to the terms of the Trust Agreement, unless the Company provided written notice of its insolvency to the Trustee (which it did not do), the Company "shall have no right or power to direct the Trustee to return to ComUnity or to divert to others any of the Trust assets before all payment of benefits have been made to the Plan participants and their beneficiaries pursuant to the terms of the Plan." (Kravitz Decl., Ex. 2 ¶ 4.) Towner's secret alteration of Ms. Pham's instructions to make it appear that Ms. Pham authorized her Plan benefits to be released to the Company appears to be why Transamerica paid Ms. Pham's Plan benefits to the Company, instead of following Ms. Pham's instructions as required by the Trust Agreement.

This case will require a number of important considerations under ERISA. While the Company essentially makes this point by devoting one fourth of its brief to supplying quotations from an ERISA treatise and making arguments about the various requirements, *vel non*, of top-hat plans, "rabbi trusts," and other obscure provisions of ERISA, and how these provisions purportedly apply to Plaintiffs' claims, the Company does not address numerous other substantial questions, which also will arise. By way of example:

1. Does federal common law, which district courts must create to fill in the interstices of ERISA, permit Plaintiffs to bring a claim for breach of the covenant of good faith and fair dealing against the Company for preventing Plaintiffs from receiving the benefit of their bargain by holding Plaintiffs' Plan benefits until the Company actually did become insolvent?

2. If the Court determines that the Company was insolvent at the time of termination, does ERISA permit Plaintiffs to bring a fraud claim against the Company's officers and directors for inducing Plaintiffs to defer salary payments, while concealing the Company's financial condition?

3. Does ERISA permit claims for fraud and conversion against the Company's officers and directors for altering the Plaintiffs' disbursement instructions?

4. Are the Plan Administrator and Trustee liable to Plaintiffs under ERISA?

5. Are Plaintiffs entitled to attorney fees under ERISA because this case involves a top-hat plan?

These examples are merely illustrative. Any one of them alone necessitates "consideration" of ERISA, which is all that the plain language of § 157(d) requires. Moreover, each of them is a "substantial" question of federal law because each one of them is not capable of easy resolution, is not a run-of-the-mill application of ERISA, and is important to the outcome of this case. These issues are especially substantial considering that there is a dearth of federal law, and only two Ninth Circuit decisions discussing *any* of the legal requirements for top-hat plans, neither of which

address any of the issues raised in this case.[2]  Indeed, the core purpose of 28 U.S.C. § 157(d) is to ensure that Article III courts create the case law precedent under federal statutes.  This concern is all the more vital where, as here, resolving the questions of federal law will require the Court to look beyond controlling precedent to decisions from other courts and the policies underlying ERISA and will add to a body of federal precedent that is undisputedly small.  Thus, even the most restrictive reading of § 157(d) urged by the Company is easily met.  Withdrawal of the reference is therefore mandatory.  28 U.S.C. § 157(d).

**II.  DISCRETIONARY WITHDRAWAL OF THE REFERENCE IS ALSO WARRANTED.**

On page 11 of its brief, the Company cites the correct factors to consider for discretionary withdrawal of the reference:  (1) the efficient use of judicial resources, (2) delay and costs to the parties, (3) uniformity of bankruptcy administration, (4) the prevention of forum shopping, and (5) other related factors.  But it does not explain how any of them would favor keeping the matter in Bankruptcy Court.

The Company barely addresses the first two factors.  The Company does not deny that this Court is familiar with the facts and legal issues due to the multiple hearings that already have occurred herein. (Motion to Withdraw the Reference at 10.)  It does not seriously dispute that this is a non-core proceeding that would be subject to *de novo* review by this Court, even if it were litigated in Bankruptcy Court first. (*Id.* at 11.)  Nor does it dispute that litigating the matter before this Court would therefore eliminate a huge amount of expense (both to Plaintiffs and the bankruptcy estate) and delay arising from potentially duplicative proceedings. (*Id.* at 10-11.)[3]  Under these circumstances, litigating the case before this Court would be the most efficient use of judicial resources and would reduce delay and cost to the parties -- a concern that is all the more heightened where, as here, the funds in dispute are employment benefits.  In fact, withdrawing the

---

[2] *See Gilliam v. Nev. Power Co.*, 488 F.3d 1189 (9th Cir. 2007) (resolving meaning of "earnings" in plan document of top-hat plan); *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996) (determining whether employee benefit plan met statutory requirements of top-hat plan).

[3] The Company recently filed a motion to extend the period for it to file its Chapter 11 Plan and Disclosure Statement.  The only person who will benefit from having this dispute drawn out in the Bankruptcy Court is the Company's hired liquidation expert, who presumably is paid by the hour.

1  reference also would aid the administration of the bankruptcy proceedings because it would
2  increase the pot of money available to creditors of the bankruptcy estate by cutting the bankruptcy
3  estate's attorney's fees in half.

4  None of the other relevant factors favors the Company either.  The Company asserts that it
5  was not forum shopping, yet it does not deny that it "repeatedly threatened to file bankruptcy if the
6  Plaintiffs sought to execute the Writ of Attachment issued by Judge Ware."  (Verified Compl. ¶ 4.)
7  Nor does it deny that its preferred method of resolution will give it the opportunity to re-litigate the
8  same issues that have been before this Court.  The Company also claims that it has entered into a
9  stipulation to hold Plaintiffs' Plan benefits in a segregated account.  (Opp. at 13.)  But it does not
10 explain that the Company only grudgingly agreed to that stipulation, long after Plaintiffs filed the
11 instant motion, in response to Plaintiffs notifying the Company that Plaintiffs would be forced to
12 seek a TRO because the Company had vitiated the Writ of Attachment issued by this Court.

13 The Company attempts to justify its inefficient approach to resolving this case by arguing
14 that this case could impact the "property of the estate," and that therefore, the reference should not
15 be withdrawn.  (Opp. at 11.)  This argument is entirely generic; it could be made in any adversary
16 proceeding in which withdrawal of the reference is sought because any adversary proceeding, by
17 definition, could impact the bankruptcy estate.  Moreover, it is especially uncompelling given the
18 actual issues and facts in this case.

19 To the extent the Company is trying to suggest that resolution of this case will turn on
20 bankruptcy law, as opposed to ERISA, this is not true.  As explained in the moving papers, whether
21 Plaintiffs' Plan benefits are property of the bankruptcy estate is 100% dependant on the merits of
22 Plaintiffs' ERISA claims.  If the Plan benefits do belong to Plaintiffs and are held in constructive
23 trust, they are not property of the estate -- a legal point that the Company does not dispute.  If
24 Plaintiffs' ERISA claims fail, the Plan benefits obviously belong to the Company, and thus the
25 bankruptcy estate.  Under these circumstances, resolution of Plaintiffs' ERISA claims will resolve
26 any bankruptcy issue.

27 To the extent the Company contends that Plaintiffs' ERISA claims will interfere with the
28 administration of the bankruptcy estate, this is also incorrect.  As part of any resolution of the

1  bankruptcy case, some Court will have to adjudicate Plaintiffs' ERISA claims.  No efficiency
2  would be gained by having any Court other than this one resolve those claims.
3       Finally, as Plaintiffs explained in their moving papers, but the Company does not address in
4  its Opposition, the crux of Plaintiffs' claims is that the Company wrongfully seized and converted
5  Plaintiffs' Plan benefits and holds them in constructive trust.  Had the Company faithfully followed
6  the unambiguous terms of the Plan, Plaintiffs and their Plan benefits would not even be part of any
7  bankruptcy proceeding.  Under this circumstance, especially given the Court's recognition of the
8  probable validity of Plaintiffs' claims, allowing the Company to treat Plaintiffs' Plan benefits as if
9  they were property of the bankruptcy estate would reward the Company for its wrongdoing and
10 punish Plaintiffs.

## **CONCLUSION**

12      For the foregoing reasons, Plaintiffs respectfully request the Court to withdraw the
13 reference for the above-captioned adversary proceeding and all motions and other matters relating
14 thereto between Plaintiffs and the Company.

16 Dated: March 24, 2008                LINER YANKELEVITZ
                                         SUNSHINE & REGENSTREIF LLP

                                         By:___/s/ Matthew Borden_____
                                              Matthew Borden

                                         Attorneys for Plaintiffs
                                         MAI CHRISTINA PHAM, JOHN PHAM,
                                         MAI NGUYEN, HUNG PERRY
                                         NGUYEN, and JOYCE FREEMAN