1  Ronald S. Kravitz, Esq. (SBN: 129704)
       rkravitz@linerlaw.com
2  Matthew Borden, Esq. (SBN: 214323)
       mborden@linerlaw.com
3  LINER YANKELEVITZ
   SUNSHINE & REGENSTREIF LLP
4  199 Fremont Street, 20th Floor
   San Francisco, CA 94105-2255
5  Telephone: (415) 489-7700
   Facsimile: (415) 489-7701

6

   Attorneys for Plaintiffs and Counterdefendants
7  Mai Christina Pham, John Pham, Mai Nguyen, Hung Perry
   Nguyen, Joyce Freeman, and Christopher Hake

8
                    **UNITED STATES DISTRICT COURT**
9
                    **NORTHERN DISTRICT OF CALIFORNIA**
10
                           **SAN JOSE DIVISION**
11

| | |
|---|---|
| In re | Case No. C 08-00201 JW |
| COMUNITY LENDING, INCORPORATED, a California corporation, | Chapter 11 |
| Debtor. | Honorable James Ware |
| | Bankruptcy Case No. 08-50030 (MM) |
| MAI CHRISTINA PHAM, JOHN PHAM, MAI NGUYEN, HUNG PERRY NGUYEN, and JOYCE FREEMAN, | Adv. Proc. No. 08-05006 |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| COMUNITY LENDING, INCORPORATED, a California corporation, and Does 1 through 10, inclusive, | Date: September 22, 2008<br>Time: 9:00 a.m.<br>Courtroom: 8, 4th Floor |
| Defendants. | |

Case No. C 08-00201 JW
MPA ISO MOTION FOR SUMMARY JUDGMENT

0036012/001/ 37715v1

# TABLE OF CONTENTS

**Page**

INTRODUCTION & SUMMARY OF ARGUMENT ............................................... 1

SUMMARY OF FACTS ........................................................................................ 2

    A.    Plaintiffs' Participation in the Plan ........................................................... 2

    B.    The Company's Misappropriation and Conversion of Plaintiffs' Plan Benefits ........................................................................................... 3

    C.    Procedural History ................................................................................... 3

ARGUMENT ........................................................................................................... 4

I.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FIRST AND THIRD CAUSES OF ACTION ............................... 4

    A.    The First and Third Causes of Action ..................................................... 4

    B.    The Undisputed Facts Establish that Plaintiffs Are Entitled to Payment of Their Benefits upon Termination of the Plan ...................... 4

    C.    The Company Was Solvent When the Plan Terminated ......................... 6

II.    PLAINTIFFS' PLAN BENEFITS ARE NOT PROPERTY OF THE BANKRUPTCY ESTATE ........................................................................ 7

CONCLUSION ....................................................................................................... 8

**INTRODUCTION & SUMMARY OF ARGUMENT**

Plaintiffs and Counter-defendants Mai Christina Pham, John Pham, Mai Nguyen, Hung Perry Nguyen, Joyce Freeman, and Christopher Hake respectfully ask the Court to grant summary judgment in their favor on the First and Third Causes of Action. Each of those claims seeks to establish that Defendant ComUnity Lending Inc. ("Company") is obligated to pay Plaintiffs their benefits pursuant to the Company's Non-Qualified Deferred Compensation Plan ("Plan").

Plaintiffs were employees of the Company and members of the Plan. Plaintiffs deferred over $4.6 million of their earned salaries in reliance upon the Company's promise that it would repay that money when they left the Company or when the Plan was terminated. Under the express terms of the Plan, upon termination of the Plan, Plaintiffs had an unqualified right to immediate payment of their Plan benefits. Section 10.2 of the Plan provides: "Upon termination of the Plan, the Participant's full Compensation on a non-deferred basis will be thereupon restored." Section 8.13 of the Plan provides that Plaintiffs' Plan benefits "are immediately payable in a lump sum upon a Plan Termination."

On August 10, 2007, the Company's Board unanimously voted to terminate the Plan, thereby immediately restoring Plaintiffs' compensation on a non-deferred basis. Instead of paying Plaintiffs their benefits, however, the Company inexplicably concealed the Plan's termination. On September 7, 2007, the Company finally revealed that the Plan had terminated. Plaintiffs accordingly instructed the Plan's trustee to disburse their funds directly to their accounts. The Company then altered those instructions and instructed the trustee to pay the benefits directly to the Company instead. Months after the trustee had paid Plaintiffs' Plan benefits to the Company, the Company claimed that it was "insolvent" and could not pay Plaintiffs, even though its financial statements stated the exact opposite.

On October 24, 2007, Plaintiffs filed an action in this Court to recover their Plan benefits. Almost one month later, the Company "restated" its financials to say that it was insolvent "as of September 30, 2007." Plaintiffs believe that the Company will claim that its "restated" financials create a fact issue to impede the resolution of this action. However, sections 8.13 and 10.2 of the Plan restore Plaintiffs' deferred salaries **without qualification**. They are not contingent upon the

Company's solvency. Moreover, it is undisputed that the Plan terminated on August 10, 2007. The Company's "restated" financial statement states that the Company was solvent at that time. Because the Company had no right to seize and convert Plaintiffs' Plan benefits, those benefits have been held in constructive trust since the Plan terminated and should be returned to Plaintiffs.

For all of these reasons, there is no disputed issue of material fact, and Plaintiffs are entitled to judgment as a matter of law.

## SUMMARY OF FACTS

### A. Plaintiffs' Participation in the Plan

Plaintiffs are former employees of the Company, which was engaged in the real estate mortgage and lending business. (Declarations of Mai Christina Pham ("M. Pham Decl.") ¶ 2; John Pham ("J. Pham Decl.," ¶ 2); Mia Nguyen ("M. Nguyen Decl.") ¶ 2; Hung Perry Nguyen ("H. Nguyen Decl.") ¶ 2; Christopher Hake ("Hake Decl.") ¶ 2; Joyce Freeman ("Freeman Decl.") ¶ 2.) During their employment, Plaintiffs deferred substantial portions of their salaries by contributing them to the Plan. The Company drafted the Plan Agreement (Pham Decl. ¶ 4, Ex. 1), and Investors Bank & Trust Company ("IBT"), as trustee, administered by pursuant to a separate Trust Agreement. (*Id.* ¶ 5, Ex. 2.)

All of the money in the Plan came from employees' voluntary contributions of their salaries, and the accrued interest thereon. When the Company terminated the Plan, Plaintiffs' Plan accounts had the following aggregate balances:

| Plaintiff | Account balance |
|---|---|
| John Pham | $1,552,926.30 |
| Mai Christina Pham | 1,805,630.82 |
| Hung Perry Nguyen | 214,441.68 |
| Mai Nguyen | 262,120.47 |
| Joyce Freeman | 407,893.68 |
| Chris Hake | 413,187.75 |
| **TOTAL** | **$4,656, 200.75** |

(M. Pham Decl. ¶ 3; J. Pham Decl. ¶ 4; M. Nguyen Decl. ¶ 4; H. Nguyen Decl. ¶ 4; Freeman Decl. ¶ 4; Hake Decl. ¶ 4.)

On August 10, 2007, the Company's Board of Directors terminated the Plan. (Declaration of Matthew Borden ("Borden Decl.") ¶ 3, Ex. 1; Answer to Verified Complaint ("Answer") ¶ 23.) According to the Company's own financial records, as of that date, the Company was solvent. (Borden Decl., Ex. 2.)

On September 7, 2007, the Company issued a Termination Announcement dated September 4, 2007 ("Termination Announcement"). (Pham Decl., Ex. 3.) The Termination Announcement informed Plan members for the first time that the Company had terminated the Plan. (*Id.* ¶ 6.)

### B. The Company's Misappropriation and Conversion of Plaintiffs' Plan Benefits

After receiving notice of the Plan's termination, Plaintiffs filled out distribution request forms to IBT's Plan Administrator, Transamerica. (Pham Decl., Ex. 4.) The Company modified those instructions and without Plaintiffs' knowledge or consent and instructed the trustee to divert the funds to the Company, rather than transmitting them to Plaintiffs, as Plaintiffs had requested. (*Id.* ¶ 8, Ex. 4.)

By no later than September 17, 2007, IBT had distributed Plaintiffs' Plan benefits directly to the Company instead of to all of the Plaintiffs except Christopher Hake. (Pham Decl. ¶ 9.)[1] After receiving Plaintiffs' Plan benefits from IBT, the Company failed to distribute the Plan benefits to Plaintiffs and, instead, improperly diverted all the Plan's assets to the Company's own accounts. (*Id.* ¶ 10.) Thereafter, the Company refused to pay Plaintiffs their Plan benefits. (*Id.*)

### C. Procedural History

On October 24, 2007, Plaintiffs filed suit in this Court against the Company. In response to Plaintiffs' application for a temporary protective order ("TPO") and writ of attachment, the Company filed a declaration stating that the Company purportedly had "restated" its finances to claim that it was insolvent as of September 30, 2007. (Borden Decl., Ex. 1.) On November 20, 2007, this Court entered a TPO, prohibiting Defendant from dissipating Plaintiffs' Plan assets. (*Id.*, Ex. 3.) On December 6, 2007, after a further hearing, this Court entered an Order Granting

---

[1] For some reason, Mr. Hake's Plan benefits were distributed to the Company after September 17, 2007. The Company refused to return those benefits as well. (Hake Decl. ¶ 5.)

1  Plaintiffs' Application for a Writ of Attachment and issued a Writ of Attachment.  (*Id.*, Ex. 4.)
2  Since that time, Plaintiffs' Plan benefits have remained in two separate segregated accounts.
3        On January 4, 2008, the Company commenced a bankruptcy case.  On January 11, 2008,
4  Plaintiffs filed an adversary proceeding in Bankruptcy Court alleging causes of action for breach of
5  contract and declaratory relief.  On April 7, 2008, this Court withdrew its reference of the matter to
6  the Bankruptcy Court as to this adversary proceeding.  (Borden Decl. ¶ 8.)

## ARGUMENT

8        Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and
9  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any
10 material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.
11 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

### I. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FIRST AND THIRD CAUSES OF ACTION

#### A. The First and Third Causes of Action

In their First Cause of Action, Plaintiffs allege that the Company breached the Plan by seizing Plaintiffs' Plan benefits, instead of paying them to Plaintiffs when the Company terminated the Plan.  In their Third Cause of Action, Plaintiffs seek a declaration that pursuant to the terms of the Plan, Plaintiffs are entitled to their Plan benefits.

#### B. The Undisputed Facts Establish that Plaintiffs Are Entitled to Payment of Their Benefits upon Termination of the Plan

Interpretation of a contract is a matter of law for the Court to determine.  *See*, *e.g.*, *United States Cellular, Inv. Co. of L.A. Inc. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002) (interpretation of a contract is a matter of law); *Davis v. Yageo Corp.*, 481 F.3d 661, 673 (9th Cir. 2007) ("The interpretation of the language in a contract is a question of law reviewed de novo.").

Under the plain language of the Plan, Plaintiffs had an unqualified right to receive their Plan benefits upon termination of the Plan.  Section 10.2 of the Plan provided that "Upon termination of the Plan, the Participant's full Compensation on a non-deferred basis will be thereupon restored."  Section 8.13 of the Plan provided that benefits are "are immediately payable in a lump sum upon a Plan Termination."  (Pham Decl., Ex. 1.)

1       In an attempt to avoid paying Plaintiffs their benefits, the Company argues that it was not
2  required to pay Plaintiffs their Plan benefits because it was allegedly insolvent at whatever point in
3  time it decided to repay them.  But whether the Company was insolvent is irrelevant to Plaintiffs'
4  rights under Sections 10.2 and 8.13.  Those provisions expressly govern what must occur when the
5  Plan terminates, and both of them give Plaintiffs an unqualified right to the portions of their salary
6  that they had deferred at the time the Plan terminated.  Section 10.6, upon which Defendant relies,
7  generally provides that Plan monies are subject to the claims of general creditors, but that provision
8  only applies where the Plan is in effect, not when it has been terminated.

9       Plaintiffs' reading of the plain language of the Plan is consistent with the overall purpose
10 and structure of the Plan and all other deferred compensation plans.  The purpose of deferred
11 compensation plans is to allow participants to defer paying tax based on Internal Revenue Code
12 § 83.  That provision states that money paid in exchange for services is taxable once it is no longer
13 subject to a "substantial risk of forfeiture."  26 U.S.C. § 83(a)(1); 26 C.F.R. § 1.83-3; *see also*
14 *Minor v. United States*, 772 F.2d 1472, 1475 (9th Cir. 1985).  While the Plan was in effect, there
15 was a substantial risk of forfeiture because the funds were subject to claims by the general
16 creditors.  However, once the Plan was terminated, there was no need for any further risk of
17 forfeiture.  At that point in time, the salary payments were immediately "restored" to the
18 participants on a **"non-deferred basis"** and were no longer capable of divestment.

19      This conclusion is buttressed by a comparison of the Plans' two separate vesting provisions,
20 which treat vesting differently when the Plan is in effect, as opposed to after it has been terminated.
21 Section 7.1 provides that while the Plan is in effect, a participant's rights are subject to those of the
22 employer's creditors.  It states:  "The value of a Participant's Account shall be fully vested at all
23 times subject, however, to the reach of the Employer's creditors in the event of insolvency."
24 However, the Plan further explains that "Upon the termination of the Plan, all participants will be
25 100% vested," without reference to any qualifications whatsoever. (Pham Decl., Ex. 1 § 10.2.)
26 Read together, sections 7.1 and 10.2 reinforce the plain language and purpose of the Plan that *prior*
27 *to* the Plan's termination, Plan participants' rights are subject to claims of the Company's creditors,
28 but *after* termination of the Plan, Plan members have a categorical right to their Plan benefits.

1  Finally, even if there were some ambiguity as to the meaning of Sections 10.2 and 8.13 –
2 which there is not – any ambiguity must be construed against the Company as the drafters of the
3 Plan. *See Blankenship v. Liberty Life Assurance Co.*, 486 F.3d 620, 625 (9th Cir. 2007) (applying
4 doctrine of *contra proferentem* in construing ERISA plan).  Here, it is undisputed that the Plan
5 terminated on August 10, 2007.  Plaintiffs became the owners of their Plan benefits on that date
6 and were entitled to payment of those benefits immediately on a non-deferred basis.

7  **C.  The Company Was Solvent When the Plan Terminated**

8  Plaintiffs also are entitled to summary judgment for the separate and independent reason
9 that the Company was solvent at the time it terminated the Plan, at which point Plaintiffs' benefits
10 were immediately due.  The Company's financial statement shows that it was solvent as of August
11 31, 2007.  (Borden Decl., Ex. 2.)  On November 17, 2007, almost one month *after* Plaintiffs filed
12 suit against the Company and more than 3 months after the Plan was terminated, the Company's
13 "Restructuring Officer" ordered a former officer to "adjust" the Company's financial statement
14 based on "the Company's assets and liabilities as of September 30, 2007 based on a present day fair
15 market valuation in light of the current factual circumstances."  (Borden Decl., Ex. 1 ¶ 5.)  The
16 Company claims that its "adjusted" financial statement now shows that it was insolvent as of
17 September 30, 2007.  (*Id.* ¶ 5, Ex. A.)

18  These facts fail to establish a triable issue.  The Plan indisputably terminated on August 10,
19 2007, at which time the Company was solvent.  Further, the Company undisputedly was solvent on
20 September 4, 2007, when it claimed the termination "became effective."  By September 17, 2007,
21 IBT had paid all of Plaintiffs' (except Christopher Hake's) Plan benefits to the Company.  The
22 Company was undisputedly solvent on that date, too.[2]

23  The Plan specifically states: "Benefits under this Plan are immediately payable in a lump
24 sum upon a Plan Termination."  (Pham Decl., Ex. 1 § 8.13.)  That provision required payment to

---

[2] The Company never provided notice of insolvency as it was required to do under section 3(b)(1) of the Trust, which reads:  "The Board of Directors/Trustees and Chief Executive Officer on behalf of the Employer shall have the duty to inform the Trustee in writing of the Employer's Insolvency."

Plaintiffs, and did not permit the Company to attempt to deprive Plaintiffs of their rights through delay. *See Stillman v. LaMarque*, 319 F.3d 1199, 1202 (9th Cir. 2003) (quoting The American Heritage College Dictionary 679 (3d Ed. 1997)) ("'Immediately' means 'without delay.'"). This is especially true where, as here, the immediate payment is from an employee benefit plan to employees who have retired or left the Company.

For this separate reason, Plaintiffs are also entitled to summary judgment on their First and Third Causes of Action.

## II. PLAINTIFFS' PLAN BENEFITS ARE NOT PROPERTY OF THE BANKRUPTCY ESTATE

Under 11 U.S.C. § 541(d), "property of the estate" excludes "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . ." *See In re Unicom Computer Corp.*, 13 F.3d 321, 324 (9th Cir. 1993) ("something held in trust by a debtor for another is neither property of the bankruptcy estate under section 541(d), nor property of the debtor for purposes of section 547(b)"). Because a debtor has no equitable interest in it, property held in constructive trust is not property of the estate. *Id.* ("In the instant case, we are dealing with a particular type of trust, *viz*, a constructive trust"); *In re Coupon Clearing Serv.*, 113 F.3d 1091, 1099 (9th Cir. 1997) (citations omitted) ("Property that is held in trust by a debtor for another, however, is not property of the estate. This rule of law applies with equal force to constructive trusts . . . ."); *In re Advent Mgm. Corp.*, 104 F.3d 293, 295 (9th Cir. 1997) ("In the case of funds held by a debtor in constructive trust for another person, the equitable interest in the trust funds belongs to the trust beneficiary not the debtor."); *Elliott v. Bumb*, 356 F.2d 749, 753 (9th Cir. 1966).

Plaintiffs' Plan benefits are not property of the estate because the Company has held them in constructive trust for Plaintiffs' benefit since the termination of the Plan. The broad remedial provisions of ERISA enable the Court to impose a constructive trust over wrongfully withheld benefits. *E.g.*, *Waller v. Blue Cross*, 32 F.3d 1337, 1339 (9th Cir. 1994) (quoting (*Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406, 1419 (9th Cir. 1988)) (alternation in original) ("'ill-gotten profits [are] held in a constructive trust for plan participants and beneficiaries

1 [and] may be construed as equitably vested benefits under an ERISA plan'"). Such a remedy is
2 necessary here given the Company's wrongful seizure and conversion of Plaintiffs' funds.

## CONCLUSION

For the foregoing reasons, there is no issue of material fact, and Plaintiffs are entitled to judgment as a matter of law on their First and Third Causes of Action.

Dated: June 16, 2008

LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP


By: _____/s/_____
Matthew Borden
Attorneys for Plaintiffs and Counterdefendants
Mai Christina Pham, John Pham, Mai Nguyen, Hung Perry Nguyen, Joyce Freeman, and Christopher Hake