1  Ronald S. Kravitz, Esq. (SBN: 129704)
        rkravitz@linerlaw.com
2  Matthew Borden, Esq. (SBN: 214323)
        mborden@linerlaw.com
3  LINER YANKELEVITZ
   SUNSHINE & REGENSTREIF LLP
4  199 Fremont Street, 20th Floor
   San Francisco, CA 94105-2255
5  Telephone:  (415) 489-7700
   Facsimile:  (415) 489-7701
6
   Attorneys for Plaintiffs and Counter-Defendants
7  Mai Christina Pham, John Pham, Mai Nguyen,
   Hung Perry Nguyen, Joyce Freeman, and
8  Christopher Hake

9                    **UNITED STATES DISTRICT COURT**

10                   **NORTHERN DISTRICT OF CALIFORNIA**

11                        **SAN JOSE DIVISION**

12

13 | In re | ) | Case No. C 08-00201 JW |

14 COMUNITY LENDING, INCORPORATED, a ) Honorable James Ware
15 California corporation, )
                                    ) Bankruptcy Case No. 08-50030 (MM)
16         Debtor.                  )
                                    ) Chapter 11
17 _____ )
                                    ) Adv. Proc. No. 08-05006
18 MAI CHRISTINA PHAM, JOHN PHAM, MAI )
   NGUYEN, HUNG PERRY NGUYEN, and  ) **DECLARATION OF MAI CHRISTINA**
19 JOYCE FREEMAN,                   ) **PHAM IN SUPPORT OF PLAINTIFFS'**
                                    ) **MOTION FOR SUMMARY JUDGMENT**
20         Plaintiffs,              )
                                    ) **Date:       September 22, 2008**
21      vs.                         ) **Time:       9:00 a.m.**
                                    ) **Courtroom:  8, 4th Floor**
22 COMUNITY LENDING, INCORPORATED, a )
   California corporation, and Does 1 through 10, )
23 inclusive,                       )
                                    )
24         Defendants.              )
   _____ )

25

26

27

28

PHAM DECL. ISO MOTION FOR SUMMARY JUDGMENT
0036012/001/ 37019v01

I, Mai Christina Pham, declare:

1.      I am one of the plaintiffs in this case.  I have personal knowledge of the facts stated below, and if called as a witness, I could and would testify competently thereto.

2.      All of the Plaintiffs and Cross-Defendants in this action are former employees of ComUnity Lending Inc. (the "Company").  The Company was engaged in the real estate mortgage and lending business.

3.      All of the Plaintiffs and Cross-Defendants in this action are former members of the Company's Non-Qualified Deferred Compensation Plan ("Plan").  During my employment, I chose to defer substantial portions of my earned salary by contributing it to the Plan.  All of my money in the Plan came from my voluntary contribution of my salary, and the accrued interest thereon. When the Company terminated the Plan, my Plan accounts had an aggregate balance of 1,805,630.82.

4.      The Company drafted the Plan Agreement.  A true and correct copy of that agreement is attached as Exhibit 1.

5.      Investors Bank & Trust Company ("IBT"), as trustee, administered the Plan pursuant to a separate Trust Agreement.  A true and correct copy of the Trust Agreement is attached as Exhibit 2.

6.      On September 7, 2007, the Company issued a Termination Announcement dated September 4, 2007 ("Termination Announcement").  A true and correct copy of the Termination Announcement is attached as Exhibit 3.  The Termination Announcement was the first time that the Company informed Plan members of the Plan's termination.

7.      After receiving the Termination Announcement, Plaintiffs filled out distribution request forms and submitted them to the Company.  True and correct copies of the request forms submitted by me are attached as Exhibit 4.

8.      Instead of immediately paying the Plaintiffs their Plan benefits, the Company altered the instructions on distribution request forms that we submitted and apparently instructed the trustee to divert the funds to the Company, rather than follow our instructions.  I understand that a

1   former executive of the Company has filed a declaration in the case (Docket # 7-3), in which she

2   admits to altering our request forms.

3       9.    By no later than September 17, 2007, IBT, the Plan's trustee, had distributed my

4   Plan benefits directly to the Company instead of to me.

5       10.   After receiving Plaintiffs' Plan benefits from IBT, the Company failed to distribute

6   the Plan benefits to Plaintiffs and, instead, improperly diverted all the Plan's assets to the

7   Company's own accounts.  Despite Plaintiffs' repeated requests, the Company has refused to pay

8   Plaintiffs their Plan benefits.

9

10      I swear under penalty of perjury under the laws of the United States and California that the

11  foregoing is true.

12

13      Dated this 9th of June, 2008                    /s/
                                          _____
14                                              Mai Christina Pham

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    former executive of the Company has filed a declaration in the case (Docket # 7-3), in which she

2    admits to altering our request forms.

3         9.     By no later than September 17, 2007, IBT, the Plan's trustee, had distributed my

4    Plan benefits directly to the Company instead of to me.

5         10.    After receiving Plaintiffs' Plan benefits from IBT, the Company failed to distribute

6    the Plan benefits to Plaintiffs and, instead, improperly diverted all the Plan's assets to the

7    Company's own accounts.  Despite Plaintiffs' repeated requests, the Company has refused to pay

8    Plaintiffs their Plan benefits.

9

10        I swear under penalty of perjury under the laws of the United States and California that the

11   foregoing is true.

12

13   Dated this 9th of June 2008                    _____

14                                                  Mai Christina Pham

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PHAM DECL. ISO MOTION FOR SUMMARY JUDGMENT

# EXHIBIT 1

OCT. 11. 2007 10:05AM    COMUNITY LENDING                    NO. 1167    P. 2

THIS SPECIMEN NON-QUALIFIED DEFERRED COMPENSATION PLAN DOCUMENT IS

PROVIDED BY DIVERSIFIED SOLELY FOR THE GUIDANCE OF THE EMPLOYER AND

ITS COUNSEL. DIVERSIFIED IS PROHIBITED FROM GIVING LEGAL ADVICE AND

THEREFORE CAN GIVE NO ASSURANCES THAT ANY EMPLOYER'S NON-QUALIFIED

DEFERRED COMPENSATION ARRANGEMENTS WILL MEET ALL APPLICABLE

INTERNAL REVENUE SERVICE (IRS) AND DEPARTMENT OF LABOR (DOL)

REQUIREMENTS. PARTICULAR ATTENTION SHOULD BE PAID TO THE

COMPOSITION OF THE GROUP OF EMPLOYEES ELIGIBLE TO PARTICIPATE IN THE

NON-QUALIFIED DEFERRED COMPENSATION ARRANGEMENT.

Account Number: YQ51291

GERBERM\NQPlan Com Unity Lending.doc                    date of draft: 9/02/03

# TABLE OF CONTENTS

Article 1.        Introduction
Article 2.        Definitions
Article 3.        Plan Specifications
Article 4.        Distributions and Loans
Article 5.        Plan Investment
Article 6.        Beneficiary
Article 7.        Vesting and Forfeitures
Article 8.        Benefits
Article 9.        Administration
Article 10.       Miscellaneous

## ARTICLE 1. - INTRODUCTION

Whereas, the Employer wishes to establish a supplementary employee retirement plan to provide deferred compensation for a select group of management or highly compensated employees as chosen by the Employer effective October 1, 2001, and

Whereas, the Employer, who has determined pursuant to the laws of the Employer's state, may establish such a Plan;

Whereas, the Employer wishes to provide that the Plan to be established under this Agreement shall be called the Com Unity Lending Inc. Non-Qualified Deferred Compensation Plan, and

Whereas, the Employer wishes to provide under the Plan for the payment of vested accrued benefits to the Participants and their beneficiary or beneficiaries, and

Whereas, the Employer wishes to provide under the Plan that the Employer shall pay the entire cost of vested accrued benefits from its general assets and set aside contributions by the Employer to meet its obligations under the Plan, and

Whereas, the Employer intends that the assets of the Plan and Trust shall at all times be subject to the claims of the general creditors of the Employer,

Now therefore, the Employer does hereby establish the Plan as follows, and does also hereby agree that the Plan shall be structured, held and disposed of as follows:

## ARTICLE 2. - DEFINITIONS

"Age" means age at nearest birthday.

"Beneficiary" means the beneficiary or beneficiaries designated by the Participant in the Enrollment Agreement who are to receive any distributions payable upon the death of the Participant.

"Board" means the Employer's Board of Directors.

"Change of Control" means the date that any one person, or group of persons acting as a group, acquires ownership of stock of the corporation that, together with stock already held by the person or group, exceeds 50 percent of the total fair market value or total voting power of the stock of the corporation. If, however, any one person, or group of persons acting as a group, is considered to own more than 50 percent of the total fair market value or total voting power of the stock of a corporation, the acquisition of additional stock by the same person or persons is not considered to cause a change in the ownership of the corporation (or to cause a change in the effective control of the corporation).

2

"Compensation" means the amount payable to an Eligible Employee, for services rendered to the Employer, such as wages, salary, overtime, amounts payable pursuant to written contracts, bonuses and other remuneration that is reportable to the Federal Government for the purpose of withholding Federal income taxes, or which would be reportable if it were not deferred by the Eligible Employee under this Plan.

"Computation Period" means the 12-consecutive month period beginning with the Employee's Employment Commencement Date (or, if applicable, his Re-Employment Commencement Date) and the succeeding 12-consecutive month periods beginning on the anniversaries of that commencement date.

"Deferred Compensation" means the amount of Compensation that the Participant elects to defer under the Enrollment Agreement and that the Participant and the Employer mutually agree shall be deferred in accordance with the Plan and/or the amount of any contributions made by the Employer on behalf of the Participant.

"Disability" means a Participant's total and permanent disability as a result of disease or bodily injury so as to render the Participant incapable of engaging in any substantial gainful activity by reason of any medically determinable physical or mental impairment or impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than twelve (12) months, provided that the Participant is eligible for and receives disability benefits under the Social Security Act. The Plan Administrator shall have the exclusive right of determining, with the assistance of a competent physician whether a Participant has suffered a Disability. A certificate to that effect, executed by the Plan Administrator and supported by the affidavit of an examining physician, shall be sufficient evidence of such fact and may be so accepted by the Plan Administrator without further inquiry, provided that all Participants under similar circumstances shall be treated alike.

"Effective Date" means October 1, 2001, as amended and restated September 1, 2003.

"Eligible Employee" means a member who is part of a select group of management or highly compensated individuals who performs services for the Employer as an employee and who has been chosen by the Employer each year, in his sole discretion, to be eligible to participate in the Plan.

"Employer" means Com Unity Lending, Inc. and any succeeding, controlling or continuing corporation.

"Employment or Re-employment Commencement Date" means the date on which the Eligible Employee first performs an Hour of Service for the Employer.

"Enrollment Agreement" means the agreement entered into by a Participant which specifies the amount of Deferred Compensation, the Participant's Beneficiary and the Participant' election of form of payment on Termination of Service.

3

"Hardship Withdrawal" A withdrawal is on account of hardship if it is due to an unforeseen emergency which creates a hardship and which occurs during employment and prior to the Participant's retirement and commencement of benefits. An unforeseen emergency is defined as (1) a severe financial hardship to the Participant, or (2) loss of the Participant's or beneficiary's property due to casualty, or (3) other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the Participant or beneficiary.

Payment may not be made to the extent that such hardship is or may be relieved (1) through reimbursement or compensation by insurance or otherwise, (2) by liquidation of the Participant's assets to the extent the liquidation of these assets would not itself cause severe financial hardship or (3) cessation of deferrals under the Plan.

"Participant" shall mean any Eligible Employee selected by the Employer who has elected to participate in the Plan by entering into an Enrollment Agreement.

"Participant's Account" The individual account maintained for a Participant by the insurance company under the group contract in accordance with the terms of the group contract(s) and the Plan.

"Plan" the Com Unity Lending, Inc. Non-Qualified Deferred Compensation Plan.

"Plan Year" The first Plan Year was a short Plan Year beginning on the Effective Date and ending on December 31. A Plan Year other than the first Plan Year is the 12 consecutive month period beginning on each January 1st and ending on the next following December 31st.

" Retirement " means Age 65.

"Service" means employment with the Employer including leaves of absence authorized by the Employer (such as a temporary absence authorized by the Employer because of vacation, sickness, injury, disability, layoff, or jury duty) and service in the armed forces of the United States, commencing while he is an employee, provided that he returns to the employment of the Employer as an employee at the end of such authorized absence, or within the applicable period specified in the Military Selective Service Act of 1967, and amendments thereto, after release from such service with the armed forces. Moreover, in calculating the number of a Participant's Years of Credited Service and length of participation in this Plan for all purposes hereunder, such period of absence or service with the armed forces subsequent to becoming a Participant hereunder, will be counted. However, no Contributions will be made to the Plan during such periods of absence or service with the armed forces.

"Termination of Service" shall mean severance of the Participant's services for the Employer for any reason, including retirement.

"The Top Hat Plan" is a non-qualified deferred compensation plan for a select group of management or highly compensated employees.

"Trust" shall mean the Trust Agreement between the Employer and the Trustees.

"Trustees" means the Trustees named in the Trust and their duly appointed and acting successor Trustee(s) which shall be appointed by the corporation and may consist of one or more persons.

## ARTICLE 3. - PLAN SPECIFICATIONS

Each Eligible Employee shall be eligible to participate in the Plan on the Effective Date. Thereafter, each Eligible Employee shall be eligible to participate in the Plan on date he is hired or promoted into a position making him an Eligible Employee. An eligible employee must also be at least age 30 and have 2 years of service with the Employer.

An Eligible Employee may enroll and become a Participant by executing an Enrollment Agreement in the calendar year preceding the calendar year in which the deferral of compensation is to commence. All Eligible Employees who are re-enrolling must do so prior to the plan anniversary date of January 1ˢᵗ. In the first year an employee becomes an Eligible Employee, the Eligible Employee may enroll and become a Participant within 30 days after the entry date. The entry date for newly Eligible Employees is the first day of the month following the date on which the Eligible Employee satisfies the Plan's eligibility requirements.

The Participant shall specify in his Enrollment Agreement the amount of Compensation to be deferred under the Plan. The maximum permitted to be deferred under the Plan is 100% of compensation or any other amount established by the Employer. Currently, the minimum annual contribution amount is $15,000 and the maximum annual contribution amount is $50,000. Two other plan participants are permitted to defer up to $300,000 per year.

Any salary deferrals made by an Eligible Employee under this Plan shall be held as an asset of the Employer, and the Employer intends to deposit the amounts deferred into the Trust.

The Participant may terminate his Enrollment Agreement at any time and be restored to full Compensation, prior to the calendar year in which such change is to be effective. The Participant may change his Enrollment Agreement by written notice of such change, prior to the calendar year in which such change is to be effective. An election to defer Compensation under this Plan, or to change the amount of Deferred Compensation, shall apply only to Compensation earned after such election. The Employer has the power to establish rules and from time to time to modify or change such rules governing the manner and method by which salary deferral contributions may be changed or discontinued temporarily or permanently. A Participant's Enrollment Agreement shall remain in effect unless previously modified or terminated as herein permitted until the Participant's Termination of Service.

All salary deferral contributions shall be authorized by the Participant in writing, made by payroll deduction, deducted from the Participant's compensation without reduction for any taxes or

5

withholding (except to the extent required by law or the regulations) and paid over to the Plan and Trust by the Employer.

Contributions made to the Plan on behalf of a Participant shall include salary deferral contributions. The salary deferral contributions made under the Plan on behalf of each Participant shall be credited to the Participant's Account. The Account consists of the aggregate of all records maintained by the Employer for purposes of determining the Participant's interest in the Trust.

## ARTICLE 4. - DISTRIBUTIONS AND LOANS

4.1    All distributions to or for the benefits of a Participant shall be made in accordance with Article 8. Except for payments to a Participant described below, no part of a Participant's Account shall be distributed prior to the Participant's termination of employment with the Employer.

4.2    There are no loans available under this Plan; however, a Participant may make a Hardship Withdrawal, as defined in Article 2, from the Plan. Any Eligible Employee who is a Participant in both this Plan and the 401(k) Plan must draw down all funds available to him under this Plan before he can request a hardship withdrawal from the participant's 401(k) Plan, if any.

## ARTICLE 5. - PLAN INVESTMENT

5.1    All contributions will be invested under the Diversified Investors Securities Corporation Mutual Funds, which will include Transamerica and Non-Transamerica Selected Funds under which Participant Accounts will be established for each Participant. The Employer invests plan assets in its discretion, taking into account (to the extent it deemed advisable) instructions received from Participants. A Participant's investment choices are limited to the types of investments as so elected by the Employer.

Unless otherwise so elected, the Employer hereby designates that plan participants may direct the investment of the deferred amounts, but only from a menu of investment alternatives made available by the Employer under the Plan and under a policy established by the Employer.

5.2    All amounts under this Plan, including all investments purchased with such amounts and all income attributable thereto, shall remain (until made available to the Participant or Beneficiary) solely the property of the Employer (without being restricted to the provision of benefits under the Plan) subject to the claims of the Employer's general creditors. No Participant or Beneficiary shall have any secured or beneficial interest in any property, rights or investments held by the Employer in connection with the Plan.

6

OCT. 11. 2007 10:07AM    COMUNITY LENDING                          NO. 1107    P. 9

## ARTICLE 6. - BENEFICIARY

6.1  The Participant shall designate the Beneficiary or Beneficiaries who are to receive distributions in the event of the Participant's death. If the Participant has not properly designated a Beneficiary, or if for any reason such designation shall not be legally effective, or if said designated Beneficiary or Beneficiaries shall predecease the Participant, then the Participant's order of Beneficiary is the Participant's spouse, the Participant's per stirpes, the Participant's parents, the Participant's brothers and sisters (including step brothers and sisters) and then the Participant's estate. A Participant may change his Beneficiary designation at any time prior to the payment status.

## ARTICLE 7. - VESTING AND FORFEITURES

7.1  Vesting. The value of a Participant's Account shall be fully vested at all times subject, however, to the reach of the Employer's creditors in the event of insolvency.

7.2  When employment is terminating and payment is not deferred, the amount of the payment shall be based on the value of the Participant's Account plus any contributions subsequently credited to such Account and less any distributions subsequently made from the Account.

## ARTICLE 8. - BENEFITS

8.1  Termination and Retirement Distributions. All Participants shall elect the payment option described below under which a distribution will be made following Termination of Service or at Retirement, if so elected. Payment of benefits will begin as soon as administratively feasible provided that in no case will payment of benefits begin later than 60 days after the close of the Plan Year in which the Participant terminates service or retires.

8.2  Change of Distribution Date for Termination and Retirement Distribution. A least 12 months in advance of the distribution date, a Participant may change the date when Termination and Retirement distribution payments are to commence. Specifically, if a participant previously elected that payments will be made following Retirement, but instead wants payments to be made at Termination, he can change his election provided that such election is made at least 12 months prior to the actual Termination date, and he is not within 12 months of Retirement. A Participant can also switch from a Termination to Retirement Distribution provided that such election is made at least 12 months prior to Retirement, and he is not within 12 months of actual Termination.

8.3  Method of Payment for Termination and Retirement Distributions. A Participant may elect a method of payment from his or her entire account to be paid as follows:

7

- Lump sum, or
- Equal annual installments up to a period not to exceed 10 years.

The Participant's account balance must be at least $5,000 in order for the payout to be anything other than a lump sum. Such election shall be designated by the Participant in the enrollment and distribution agreements.

8.4   Change of Method of Payment for Termination and Retirement Distributions. A Participant may change the Method of Payment at least 12 months prior to a Termination and Retirement Distribution. The Company may at any time pay the Participant's remaining balance in a lump sum or accelerate the payments.

8.5   Scheduled In-Service Distribution. A Participant with at least 5 years of plan participation, may at least 2 calendar years in advance of a payout date, request a Scheduled In-Service Distribution that will commence on a date prior to Termination and Retirement Distributions.

8.6   Change Scheduled In-Service Distribution. A Participant may change the date of the Scheduled In-Service Distribution by making a new Scheduled In-Service Distribution Election. The new election must be made at least 2 calendar years prior to the new Scheduled In-Service Distribution. Such elections shall be designated by the Participant in the distribution form. A Participant can elect more then one Scheduled In-Service Distribution but only one payment is permitted in any one calendar year.

8.7   Method of Payment for Scheduled In-Service Distribution. A Participant may elect a single sum to be paid as follows:

- A percentage of the total account balance, or
- A Dollar Amount.

The minimum payout amount must be at least $5,000.

8.8   Overlap of Scheduled In-Service Distribution and for Termination and Retirement Distribution. If a Participant requested a Scheduled In-Service Distribution but the Participant will receive the Termination and Retirement Distribution in the same year, the In-Service Distribution election is null and void. The payments will be made based on Method of Payment for Termination and Retirement Distribution.

8.9   Default Method of Payment. If a Participant does not elect a Method of Payment for the Termination and Retirement Distribution, the default payout is lump sum.

8.10    Default Distribution Date. If a Participant does not elect a Termination and Retirement Distribution, the Default Distribution Date is at Termination of Service.

8.11    Death Benefit. Benefits under this Plan are immediately payable in a lump sum upon death. If Participant is already in pay status, balance of the account is paid out in a lump sum.

8.12    Change of Control. Benefits under this Plan are immediately payable in a lump sum upon a Change of Control described in Article 2.

8.13    Plan Termination. Benefits under this Plan are immediately payable in a lump sum upon a Plan Termination.

8.14    Committee Discretion. Notwithstanding the foregoing, the Committee may, in its sole and exclusive discretion, modify payments made pursuant to Article 8.


ARTICLE 9. - ADMINISTRATION

9.1     Plan Administrator. The Administrator of the Plan shall be the Employer or, if applicable, the person(s) or entity appointed by the Employer to administer the Plan. The Plan Administrator shall serve at the pleasure of the Employer and the Employer shall have the right to appoint, in its sole and absolute discretion, any successor Plan Administrator.

9.2     Power and Authority. The Plan Administrator shall have full power and authority to adopt rules and regulations (including without limitation a reasonable claims procedure) for the administration of the Plan, and to interpret, alter, amend, or revoke any rules and regulations so adopted. The Plan Administrator shall have full power and authority to interpret the terms and provisions of this Plan and any instrument filed hereunder.

9.3     Presumption of Fairness. Every action taken by the Plan Administrator shall be presumed to be a fair and reasonable exercise of the authority vested in, or the duties imposed upon, the Plan Administrator. The Plan Administrator shall be deemed to have acted impartially as to all persons interested, unless the contrary be proven by affirmative evidence. The Plan Administrator shall not be liable for amounts of Deferred Compensation by a Participant or for other amounts payable under the Plan.

9.4     Other Parties. Any person or entity which issues policies, contracts, or investment media to the Employer or in respect of a Participant is not a party to this Plan and such person or entity shall have no responsibility, accountability or liability to the Employer, the Plan Administrator, any Participant, or any Beneficiary with regard to the operation or adequacy of this Plan, including any future amendments made thereto.

9

9.5 **Information Requests.** Any party entitled to payment under this Plan shall comply with all written requests of the Plan Administrator or its designee to furnish the Employer with any information known or available to such party and necessary to the administration of the Plan.

9.6 **Expenses.** If not paid by the Employer, all reasonable expenses incurred in the administration of the Plan, including without limitation those of any trustee and the Plan Administrator, shall be paid from Participants' Accounts to which such expenses are allocable.

9.7 **No Fiduciary Relationship.** Neither the Plan, nor any action taken by the Plan Administrator or the Employer, shall create or be deemed to create a trust or fiduciary relationship of any kind between the Employer and the Participant, his or her Beneficiary, or any other person.

9.8 **Employment.** Participation in this Plan shall not be deemed to be a contract of employment between the Employer and any Employee. Nor shall anything contained herein be deemed to give any Employee the right to be retained in the employ of the Employer or to interfere with the right of the Employer to discharge any Employee at any time, nor shall it be deemed to give the Employer the right to require any Employee to remain in its employ, nor shall it interfere with such Employee's right to terminate his employment at any time (as may be provided in any contract or agreement affecting such employment).

## ARTICLE 10. - MISCELLANEOUS

10.1 **Amendment of Plan.** The Employer reserves the right to amend any provisions of the Plan at any time to the extent that it may deem advisable without the consent of the Participant or any Beneficiary provided that no such amendment shall impair the rights of Participants or Beneficiaries with respect to Compensation deferred before such amendment.

10.2 **Termination of Plan.** The Employer reserves the right to terminate the Plan at any time. Upon termination of the Plan, the Participant's full Compensation on a non-deferred basis will be thereupon restored. Upon the termination of the Plan, all participants will be 100% vested. In the year of plan termination, benefits are immediately payable in a lump sum cash payment to participants. Any participant who is already in pay status and has been receiving payments in a method other than a lump sum shall receive the balance of their account in a lump sum cash payment. If the Plan, which was designed and intended to be a Top-Hat Plan is deemed not to be a Top-Hat Plan, it will be terminated and contributions will be distributed to Participants in the Plan.

10.3 **Finality of Decisions.** The Plan Administrator's benefit determinations or other decisions or interpretations made under the Plan shall be binding and final on all interested parties.

10

10.4    The Employer may, from time to time, hire outside consultants, accountants, actuaries, legal counsel, or recordkeepers to perform such tasks as the Employer may from time to time determine.

10.5    In the event that any Participants are found to be ineligible, that is, not members of a select group of highly compensated employees, according to a determination made by the Department of Labor, the Employer will take whatever steps it deems necessary, in its sole discretion, to equitably protect the interests of the affected Participants.

10.6    No benefits under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge or encumbrance. The provisions of this Plan shall be binding upon and inure to the benefit of the Employer and Participants and their respective successors, heirs, personal representatives, executors, administrators, and legatees.

The vested Account balance of a Participant shall be paid from the Trust only to the extent the Employer is not at the time of payment insolvent. Any vested accrued benefits under the Plan represent an unfunded, unsecured promise by the Employer to pay these benefits to the Participants when due. A Participant has no greater right to Trust assets than the general creditors of the Employer in the event that the Employer shall become insolvent. Trust assets can be used to pay only vested accrued benefits under the Plan or the claims of the Employer's general creditors.

10.7    This Plan and the Enrollment Agreement, and any subsequently adopted amendment thereof, shall constitute the total agreement or contract between the Employer and the Participant regarding the Plan. No oral statement regarding the Plan may be relied upon by the Participant.

10.8    Change of Law. If, because of a change in law, the Trust should be determined to no longer be considered a "rabbi trust" as currently permitted by IRS Private Letter Ruling 8113107, then the Plan and Trust shall be deemed to have terminated as of the effective date of the change in law which nullified its status as a "rabbi trust".

10.9    This Plan shall be construed under the laws of California.

IN WITNESS WHEREOF, Com Unity Lending Inc. has caused this Plan to be executed by its duly authorized officers this
day of              , 20       .

IN PRESENCE OF:


_____        By: _____


_____            _____


_____            _____


11

# EXHIBIT 2

# TRUST AGREEMENT

(a)   This Agreement between ComUnity Lending Inc. ("Employer") and Investors Bank & Trust Company ("Trustee") is effective September 1, 2003;

(b)   WHEREAS, the Employer has adopted the ComUnity Lending, Inc. Non-Qualified Deferred Compensation Plan ("Plan");

(c)   WHEREAS, the Employer has incurred or expects to incur liability under the terms of such Plan with respect to the individuals participating in such Plan;

(d)   WHEREAS, the Employer wishes to establish a trust (hereinafter called "Trust") and to contribute to the Trust assets that shall be held therein, subject to the claims of the Employer's creditors in the event of the Employer's Insolvency, as herein defined, until paid to Plan participants and their beneficiaries in such manner and at such times as specified in the Plan;

(e)   WHEREAS, it is the intention of the parties that this Trust shall constitute an unfunded arrangement and shall not affect the status of the Plan as an unfunded plan maintained for the purpose of providing deferred compensation for a select group of management or highly compensated employees for purposes of Title I of the Employee Retirement Income Security Act of 1974;

(f)   WHEREAS, it is the intention of the Employer to make contributions to the Trust to provide itself with a source of funds to assist it in the meeting of its liabilities under the Plan;

NOW, THEREFORE, the parties do hereby establish the Trust and agree that the Trust shall be comprised, held and disposed of as follows:

## Section 1.    Establishment Of Trust

(a)   The Employer hereby deposits contributions with the Trustee in Trust, which shall become the principal of the Trust to be held, administered and disposed of by Trustee as provided in this Trust Agreement.

(b)   The Trust hereby established shall be irrevocable.

(c)   The Trust is intended to be a grantor trust, of which the Employer is the grantor, within the meaning of subpart E, part I, subchapter J, chapter 1, subtitle A of the Internal Revenue Code of 1986, as amended, and shall be construed accordingly.

Rev. 1/03

(d)     The principal of the Trust and any earnings shall be held separate and apart from other funds of the Employer and shall be used exclusively for the uses and purposes of Plan participants and general creditors as herein set forth. Plan participants and their beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Plan and this Trust Agreement shall be mere unsecured contractual rights of Plan participants and their beneficiaries against Employer. Any assets held by the Trust will be subject to the claims of the Employer's general creditors under federal and state law in the event of Insolvency, as defined in Section 3(a).

(e)     The Employer, in its sole discretion, may at any time, or from time to time, make additional deposits of cash in trust with the Trustee to augment the principal to be held, administered and disposed of by Trustee as provided in this Trust Agreement. Neither the Trustee nor any Plan participant or beneficiary shall have any right or duty to compel such additional deposits.

**Section 2.**     **Payments to Plan Participants and Their Beneficiaries**

(a)     The Employer shall provide to the Trustee all information necessary regarding the benefit payable in respect of each Plan participant (and his or her beneficiaries), and other instructions required by the Trustee such as the form in which such amount is to be paid, (as provided for or available under the Plan), the time of commencement for payment of such amounts and tax withholding instructions. Except as otherwise provided herein, the Trustee shall make payments to or for the benefit of, the Plan participants and their beneficiaries in accordance with such information. The Trustee shall make provision for the reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits pursuant to the terms of the Plan.

(b)     The entitlement of a Plan participant or his or her beneficiaries to benefits under the Plan shall be determined by the Employer or such party as it shall designate under the Plan, and any claim for such benefits shall be considered and reviewed under the procedures set out in the Plan.

(c)     The Employer may make payment of benefits directly to the Plan participants or their beneficiaries as they become due under the terms of the Plan. The Employer shall notify the Trustee of its decision to make payment of benefits directly prior to the time amounts are payable to participants or their beneficiaries. In addition, if the principal of the Trust and any earnings are not sufficient to make payments of benefits in accordance with the terms of the Plan, the Employer shall make the balance of each such payment as it falls due. The Trustee shall notify the Employer where principal and earnings are not sufficient.

**Section 3.**     **Trustee Responsibility Regarding Payments to**
**Trust Beneficiary When Employer is Insolvent**

(a)     The Trustee shall cease payment of benefits to or for the benefit of Plan participants and their beneficiaries if the Employer is Insolvent. The Employer shall be considered "Insolvent" for purposes of this Trust Agreement if (i) the Employer is unable to pay its debts as they become due, or (ii) the Employer is subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

(b)     At all times during the continuance of this Trust, as provided in Section 1(d) hereof, the principal and income of the Trust shall be subject to claims of general creditors of the Employer under federal and state law as set forth below.

(1)    The Board of Directors/Trustees and Chief Executive Officer on behalf of the Employer shall have the duty to inform the Trustee in writing of the Employer's Insolvency. If a person claiming to be a creditor of the Employer alleges in writing to the Trustee that the Employer has become Insolvent, the Trustee shall determine whether the Employer is Insolvent and, pending such determination, Trustee shall discontinue payment of benefits to Plan participants or their beneficiaries.

(2)    Unless the Trustee has actual knowledge of the Employer's Insolvency, or has received notice from the Employer or a person claiming to be a creditor alleging that the Employer is Insolvent, the Trustee shall have no duty to inquire whether the Employer is Insolvent. The Trustee may in all events rely on such evidence concerning the Employer's solvency as may be furnished to the Trustee and that provides the Trustee with a reasonable basis for making a determination concerning the Employer's solvency.

(3)    If at any time the Trustee has determined that the Employer is Insolvent, the Trustee shall discontinue payments to Plan participants or their beneficiaries and shall hold the assets of the Trust for the benefit of the Employer's general creditors. Nothing in this Trust Agreement shall in any way diminish any rights of Plan participants or their beneficiaries to pursue their rights as general creditors of the Employer with respect to benefits due under the Plan or otherwise.

(4)    The Trustee shall resume the payment of benefits to Plan participants or their beneficiaries in accordance with Section 2 of this Trust Agreement only after the Trustee has determined that the Employer is not Insolvent (or is no longer Insolvent).

(c)    Provided that there are sufficient assets, if the Trustee discontinues the payment of benefits from the Trust pursuant to Section 3(b) and subsequently resumes such payments, the first payment following such discontinuance shall include the aggregate amount of all payments due to the Plan participants or their beneficiaries under the terms of the Plan for the period of such discontinuance, less the aggregate amount of any payments made to the Plan participants or their beneficiaries by the Employer in lieu of the payments provided for hereunder during any such period of discontinuance.

## Section 4.     Payments to Employer

Except as provided in Section 3, after the Trust has become irrevocable, the Employer shall have no right or power to direct the Trustee to return to the Employer or to divert to others any of the Trust assets before all payment of benefits have been made to the Plan participants and their beneficiaries pursuant to the terms of the Plan.

## Section 5.     Investment Authority

(a)    In no event may the Trustee invest in securities (including stock or rights to acquire stock) or obligations issued by the Employer, other than a de minimis amount held in common investment vehicles in which the Trustee invests. Except as provided below, all rights associated with assets of the Trust shall be exercised by the Trustee or the person designated by the Trustee, and shall in no event be exercisable by or rest with Plan participants, except that voting rights with respect to Trust assets will be exercised by the Employer, and except that dividend rights with respect to Trust assets will rest with the Employer.

(b)    The Trustee shall have the power:

    (i)    to invest the Trust as directed by the Employer, and

    (ii)   to collect and receive any and all money and other property due to the Trust and to give full discharge therefor.

(c)    The Trustee shall follow the directions of the Employer with respect to investing and reinvesting the Trust. The Employer shall be responsible to ensure that its directions are in accordance with the Plan and are not contrary to law. The Trustee shall have no responsibility to monitor investments of the Trust, and shall not be liable for any investment losses or consequences resulting from any action or inaction of the Employer with respect to the investments of the Trust. Subject to said directions, the Trustee will invest Trust assets only by utilizing investments or investment vehicles or options made available through or permitted by Diversified Investment Advisors, Inc. ("Diversified") or one of its affiliates; including fixed and variable group annuity contracts, investment companies registered under the Investment Company Act of 1940 and Schwab's Personal Choice Retirement Account™.

(d)    Employer To Establish Rules:   The Employer may at any time make such uniform and nondiscriminatory rules as it determines necessary or appropriate regarding the administration and investment of the Trust assets.

## Section 6.    Disposition of Income

(a)    During the term of this Trust, all income received by the Trust, net of expenses and taxes, shall be accumulated and reinvested.

## Section 7.    Accounting by Trustee

The Trust shall be valued daily. The Trustee shall keep accurate and detailed records of all investments, receipts, disbursements, and all other transactions required to be made, including such specific records as shall be agreed upon in writing between the Employer and Trustee. Within 90 days following the close of each calendar year and within 90 days after the removal or resignation of the Trustee, Trustee shall deliver to the Employer a written account of its administration of the Trust during such year or during the period from the close of the last preceding year to the date of such removal or resignation, setting forth all investments, receipts, disbursements and other transactions effected by it, including a description of all securities and investments purchased and sold with the cost or net proceeds of such purchases or sales (accrued interest paid or receivable being shown separately), and showing all cash, securities and other property held in the Trust at the end of such year or as of the date of such removal or resignation, as the case may be. The written approval of any accounting by the Employer shall be final as to all matters and transactions stated or shown therein and binding upon the Employer and all persons who then shall be or thereafter shall become interested in this Trust. Failure of the Employer to notify the Trustee within 180 days after receipt of any accounting of its disapproval of such accounting shall be the equivalent of written approval.

## Section 8.    Responsibility of Trustee

(a)    The Trustee shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in

the conduct of an enterprise of a like character and with like aims, provided, however, that Trustee shall incur no liability to any person for any action taken pursuant to a direction, request or approval given by Employer which is contemplated by, and in conformity with, the terms of the Plan or this Trust and is given in writing by Employer. In the event of a dispute between the Employer and another party, the Trustee may apply to a court of competent jurisdiction to resolve the dispute.

(b)     If the Trustee undertakes or defends any litigation arising in connection with this Trust, the Employer agrees to indemnify the Trustee against Trustee's costs, expenses and liabilities (including without limitation, attorney's fees and expenses) relating thereto and to be primarily liable for such payments. If the Employer does not pay such costs, expenses and liabilities in a reasonably timely manner, the Trustee may obtain payment from the Trust.

(c)     The Trustee may consult with legal counsel (who may also be counsel for the Employer generally) with respect to any of its duties or obligations under the Trust.

(d)     The Trustee may hire agents, accountants, actuaries, investment advisors, financial consultants or other professionals to assist it in performing any of its duties or obligations under the Trust. As of the effective date of the Trust Agreement, the Trustee has appointed Diversified as the agent to which it has delegated certain duties. Also, as of the effective date of the Trust Agreement, the Trustee appoints the Employer as its authorized representative to which it has delegated the authority to sign on the Trustee's behalf all documents relating to the investment of Plan assets in any vehicle sponsored by or made available through Diversified and its affiliates.

(e)     The Trustee shall have, without exclusion, all powers conferred on Trustees by applicable law, unless expressly provided otherwise herein.

(f)     Notwithstanding any powers granted to the Trustee pursuant to this Trust Agreement or to applicable law, Trustee shall not have any power that could give this Trust the objective of carrying on a business and dividing the gains therefrom, within the meaning of section 301.7701-2 of the Procedure and Administrative Regulations promulgated pursuant to the Internal Revenue Code.

(g)     The Trustee shall be accountable only for funds actually received by it hereunder and shall have no duty or liability to determine that the amount of the funds received by it comply with provision of the Plan.

## Section 9.     Compensation and Expenses of Trustee

(a)     There are currently no fees due the Trustee from the Plan. However, the Trustee reserves the right to impose and/or amend fees upon the giving of 90 days' advance written notice to the Employer. If the Trustee resigns or is removed during the 90 day notice period, such new or amended fees will not be in effect.

(b)     Any fees imposed pursuant to (a) which are incurred in the administration of the Trust may be paid directly to the Trustee by the Employer. All fees not so directly paid by the Employer shall be paid from the assets of the Trust.

(c)     In order to provide for payment of any fees not paid directly by the Employer as provided in (b), the Trustee in its discretion may partially or fully liquidate any asset in the Trust and shall not be liable for any loss resulting from such liquidation. Any fees of the Trustee which are not paid from the Trust for whatever reason will be the responsibility of the Employer. Any payment out of the Trust

of any of the fees authorized in this Section shall be deemed to be for the exclusive benefit of the Participants and their successors in interest.

## Section 10.    Resignation and Removal of Trustee

(a)    Trustee may resign at any time by written notice to Employer, which resignation shall be effective 90 days after the Employer's receipt of such notice unless the Employer and Trustee agree otherwise.

(b)    The Trustee may be removed by the Employer on 90 days advance written notice or upon shorter notice accepted by Trustee.

(c)    Upon a Change of Control, as defined herein, the Trustee may not be removed by Employer for one year.

(d)    Upon resignation or removal of the Trustee and appointment of a successor Trustee, all assets shall subsequently be transferred to the successor Trustee. The transfer shall be effective no less than 90 days after receipt of notice of resignation, removal or transfer unless the Employer shortens the time limit.

(e)    If Trustee resigns or is removed, a successor shall be appointed, in accordance with Section 11, hereof, by the effective date of resignation or removal under paragraph(s) (a) or (b) of this section. If no such appointment has been made, Trustee may apply to a court of competent jurisdiction for appointment of a successor or for instructions. All expenses of Trustee in connection with the proceeding shall be allowed as administrative expenses of the Trust.

## Section 11.    Appointment of Successor

(a)    If the Trustee resigns or is removed in accordance with Section 10(a) or (b) the Employer may appoint any third party, such as a bank trust department or other party that may be granted corporate trustee powers under state law, as a successor to replace Trustee upon resignation or removal. The appointment shall be effective when accepted in writing by the new Trustee, who shall have all of the rights and powers of the former Trustee, including ownership rights in the Trust assets. The former Trustee shall execute any instrument necessary or reasonably requested by the Employer or the successor Trustee to evidence the transfer.

(b)    The successor Trustee need not examine the records and acts of any prior Trustee and may retain or dispose of existing Trust assets, subject to Sections 7 and 8. The successor Trustee shall not be responsible for and the Employer shall indemnify and defend the successor Trustee from any claim or liability resulting from any action or inaction of any prior Trustee or from any other past event, or any condition existing at the time it becomes successor Trustee.

**Section 12.**    **Amendment or Termination**

(a)    This Trust Agreement may be amended by a written instrument executed by both the Trustee and Employer. Notwithstanding the foregoing, no such amendment shall conflict with the terms of the Plan or shall make the Trust revocable after it has become irrevocable in accordance with Section 1(b).

(b)    The Trust shall not terminate until the date on which Plan participants and their beneficiaries are no longer entitled to benefits pursuant to the terms of the Plan(s). Upon termination of the Trust any assets remaining in the Trust shall be returned to the Employer.

**Section 13.**    **Miscellaneous**

(a)    Any provision of this Trust Agreement prohibited by law shall be ineffective to the extent of any such prohibition, without invalidating the remaining provisions hereof.

(b)    Benefits payable to Plan participants and their beneficiaries under this Trust Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

(c)    This Trust Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

(d)    Depending on the type of plan being covered under this Trust, either 1) or 2) below is applicable.

    1)    For purposes of this Trust and if the Employer is a stock corporation, Change of Control shall mean: "the purchase or other acquisition by any person, entity or group of persons, within the meaning of Section 13(d) or 14(d) of the Securities Exchange Act of 1934 ("Act"), or any comparable successor provisions, of beneficial ownership (within the meaning of Rule 13d-3 promulgated under the Act) of 30 percent or more of either the outstanding shares of common stock or the combined voting power of the Employer's then outstanding voting securities entitled to vote generally, or the approval by the stockholders of the Employer of a reorganization, merger, or consolidation, in each case, with respect to which persons who were stockholders of the Employer immediately prior to such reorganization, merger or consolidation do not, immediately thereafter, own more than 50 percent of the combined voting power entitled to vote generally in the election of directors of the reorganized, merged or consolidated Employer's then outstanding securities, or a liquidation or dissolution of the Employer or of the sale of all or substantially all of the Employer's assets"

    2)    For purposes of this Trust and if the Employer is not a stock corporation, Change of Control shall mean: "the acquisition by any person or entity (or group of related persons or entities acting in concert), unrelated to the Employer, of control of the Employer, or a liquidation or dissolution of Employer, or sale of all or substantially all of Employer's assets. For purposes of this Section 13(d), the term "control" means that more than 50 percent of the members, directors or trustees of the Employer are either representatives of or directly or indirectly controlled by a person or entity (or group of related persons or entities acting in concert) unrelated to the Employer. A member, director or trustee is a representative of a person or entity (or group of related persons or entities acting in concert) unrelated to the Employer if he is a member, director, trustee, agent or employee of any such persons or entities, or

elected or appointed by any such persons or entities. A member, director or trustee is controlled by a person or entity (or group of related persons or entities acting in concert) unrelated to the Employer if any such person or entity has the power to elect or appoint or remove such member, director or trustee and designate a new member, director or trustee."

(e)   The Employer shall provide written notice to the Trustee of any Change of Control no later than 30 days after such Change of Control takes place.

## Section 14.    Written Notice

Written Notice. Any written notice, demand, direction, or instruction given to the parties to this Agreement shall be duly given if mailed or delivered:

(a) to the Trustee, at Investors Bank & Trust Company, 200 Clarendon Street, Boston, MA  02116, Attention: Director, Trust and Custody Services, or any other address as shall be specified by the Trustee in writing; and
(b) to the Employer, at the address indicated on the signature page.

A copy of any written notice, demand, direction, or instruction between the parties to the Agreement shall be sent to Diversified Investment Advisors, Inc., 4 Manhattanville Road, Purchase, NY 10577, Attention: Mr. Peter G. Kunkel.


Employer

By: _____
          (Authorized Representative)


Address for receipt of notices

610 Jarvis Dr., Suite 200

Morgan Hill, CA  95037

————

————

Trustee

By: _____


dcgtech/template/nqtribt

# EXHIBIT 3

# ANNOUNCEMENT

September 4, 2007

To:     TopHat Participants

From:   Janene Towner
        ComUnity Lending, Inc.

CC:     Tami Skriver, Transamerica

Please consider this announcement as your notification of the termination of ComUnity Lending's TopHat Deferred Compensation Plan effective September 4, 2007.

**Important information you need to know:**

1. Deferrals are no longer allowed.
2. Upon distribution, participants cannot roll over funds and the distribution will be treated as taxable income in the year the distribution is made.
3. Distributions will be made based on the payment options chosen by you (over time or a lump sum distribution) with the exception of deferrals made after January 1, 2005 which must be taken in a lump sum.
4. Deferrals made prior to January 1, 2005 will be distributed within 30 days.
5. Deferrals made after January 1, 2005 cannot be paid prior to September 4, 2008 and must be paid no later than September 4, 2009 (regardless of payment option chosen).
6. All deferrals must be paid out within 24 months of plan termination.

If you have further questions, please contact the Transamerica Customer Care Center at 877-234-9293.

# EXHIBIT 4

# TRANSAMERICA
### RETIREMENT SERVICES

4333 Edgewood Road NE
Cedar Rapids, IA 52499
877-224-0303
www.ta-retirement.com

**Distribution Request**
Termination of Employment/Retirement

## Instructions

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No 2214-TA), or log on to www ta-retirement com for forms and information on rolling over your account balance to a Transamerica IRA

## Section A. Employer Information

Company/ Employer Name: Com Unity Lending Inc

Contract/Account No.: ▮▮▮    Affiliate No: ▮▮▮    Division No:

## Section B. Participant Information

Last Name: PHAM    Date of Birth:

First Name/MI: JOHN    Social Security No:

Mailing Address: ▮▮▮

City: ▮▮▮    State: ▮▮

Zip Code: ▮▮▮

Phone No /Ext: ▮▮▮

E-mail Address: christina.pham@comunitylending com

## Section C. Distribution Information

Reason for distribution: ☒ Termination of employment    ☐ Retirement

Amount of distribution: ☒ 100%    or    ☐ $_____, remainder to be: ☐ Left on deposit ☐ Other_____

### Distribution Options

☐ Leave funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock (distribution will be in full shares only; partial shares will be paid in cash)

☐ ▮▮▮ Deposit Transfer Corp No. (from new financial institution to stock can be transferred without issuing certificates)

*Note. Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan*

### Flexible Distribution Options (available if leaving funds on deposit)

☐ Fixed Payment $_____ (amount)
☐ Fixed Payment over _____ years
☐ Life Expectancy ☐ Single ☐ Joint (proof of spouse's age required)

Payment commencement month: _____

Payment frequency:
☐ Monthly    ☐ Quarterly    ☐ Semi-Annual    ☐ Annual

## Payment Options

☒ Check    or    ☐ Wire transfer (Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5 000 will be processed in the form of a check )

ABA No: ☐☐☐☐☐☐☐☐☐

Institution Name: _____

Institution Address: _____

Account Name: _____

Account No: _____

"Further Credit To" Institution Name _____
(For wire to credit union or over seas bank, call Transamerica for additional information) '

*Note If none of the above payment options is not selected, this distribution will be processed in the form of a check*



### Section D. Outstanding Loan Options (if applicable)

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s) *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)*

☐ Continue loan repayments via loan coupons *(Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)*

☐ Default the loan(s) I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations*

### Section E. Tax Withholding Election

**Mandatory Federal Income Tax Withholding** - If this distribution is an eligible rollover distribution 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA

**Optional Federal Income Tax Withholding** - If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise  If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** - Withholding is mandatory in some states  Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise

☐ Do not withhold state income tax (if independent election is permitted)

### Section F. Participant Signature

*Please note. Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation  States other than New York also have insurance fraud statutes which impose penalties for any violation thereof.*

**For Married Participants:** I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public.

**For All Participants:** I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over  I have received and read the Special Tax Notice Regarding Plan Payments  I certify that the information provided on this form is correct and complete

| | | |
|---|---|---|
| X _____ | 9-6-07 | JOHN PHAM |
| Participant Signature | Date | Print Name and Social Security Number |

### Section G. Spousal Consent (if applicable)

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount  I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent

WITNESSED

| | | | |
|---|---|---|---|
| X _____ | 9-6-07 | X _____ | _____ |
| Spouse Signature | Date | Plan Administrator Signature or Notary Public Signature and Stamp/Seal | Date |

### Section H. Plan Administrator Information and Signature

| | | | |
|---|---|---|---|
| Vested %: 100% | Employment status: ☑ Terminated | 9/7/07 Termination Date | ☐ Retired _____ Retirement Date |

Have all contributions been remitted?  ☑ Yes  ☐ No

Period and date of final contribution  6/30/07  *(Processing will be delayed until final contribution is received.)*

*Note  This distribution request cannot be processed unless all applicable sections of this form have been completed*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained

| | |
|---|---|
| X _____ | 9/10/07 |
| Plan Administrator Signature | Date |

Form No 2720  (A (rev 10)5) (Page 2 of 2)        Transamerica Plans



**TRANSAMERICA**
RETIREMENT SERVICES

4333 Edgewood Road NE
Cedar Rapids, IA 52499
877-224-0220
www.ta-retirement.com

**Distribution Request**
Termination of Employment/Retirement

**Instructions**

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No 2214-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

**Section A. Employer Information**

| Company/ Employer Name | Com Unity Lending Inc | | |
|---|---|---|---|
| Contract/Account No. | [redacted] | Affiliate No | [redacted] | Division No |

**Section B. Participant Information**

| Last Name | PHAM | Date of Birth | [redacted] |
|---|---|---|---|
| First Name/MI | JOHN | Social Security No | [redacted] |
| Mailing Address | [redacted] | | |
| City | [redacted] | State | [redacted] |
| Zip Code | [redacted] | | |
| Phone No./Ext. | [redacted] | | |
| E-mail Address | christine.pham@comunitylending.com | | |

**Section C. Distribution Information**

Reason for distribution:  ☒ Termination of employment    ☐ Retirement

Amount of distribution:  ☒ 100%  or  ☐ $_____ , remainder to be:  ☐ Left on deposit  ☐ Other _____

**Distribution Options**

☐ Leave funds on deposit

☐ Purchase annuity

☒ Lump sum distribution

☐ Partial distribution

☐ In-kind distribution of any employer stock *(distribution will be in full shares only; partial shares will be paid in cash)*

☐ ☐ ☐ ☐  Deposit Transfer Corp. No. *(from new financial institution to stock can be transferred without issuing certificates)*

☐ Flexible Distribution Options *(available if leaving funds on deposit)*

☐ Fixed Payment $_____ *(amount)*

☐ Fixed Payment over _____ years

☐ Life Expectancy  ☐ Single  ☐ Joint *(proof of spouse's age required)*

Payment commencement month: _____

Payment frequency:

☐ Monthly    ☐ Quarterly    ☐ Semi-Annual    ☐ Annual

*Note. Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan.*

**Payment Options**

☒ Check  or  ☐ Wire transfer *(Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.)*

ABA No ☐☐☐☐☐☐☐☐☐

Institution Name _____

Institution Address _____

Account Name _____

Account No. _____

"Further Credit To" Institution Name _____
*(For wire to credit union or overseas bank call Transamerica for additional information)*

*Note. If one of the above payment options is not selected, this distribution will be processed in the form of a check*



Form No 2220 TA (rev 2/05) (Page 1 of 2)    Transamerica Plans

**Section D. Outstanding Loan Options (if applicable)**

For any outstanding loan(s) at the time of any termination of employment/retirement, I elect to:

☐ Pay off the loan(s)  *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)*

☐ Continue loan repayments via loan coupons  *(Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)*

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations*

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** - If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA

**Optional Federal Income Tax Withholding** - If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** - Withholding is mandatory in some states. Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise.

☐ Do not withhold state income tax (if independent election is permitted)

**Section F. Participant Signature**

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes which impose penalties for any violation thereof.*

**For Married Participants:** I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public

**For All Participants:** I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete

X _____  9-6-07  JOHN PHAM  _____
   Participant Signature          Date        Print Name and Social Security Number

**Section G. Spousal Consent (if applicable)**

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent

                                                    WITNESSED

X _____  9-6-07  _____  _____
   Spouse Signature          Date     Plan Administrator Signature or Notary Public Signature and Stamp/Seal   Date

**Section H. Plan Administrator Information and Signature**

Vested %: 100%    Employment status: ☑ Terminated  9/4/07    ☐ Retired  _____
                                              Termination Date              Retirement Date

Have all contributions been remitted?  ☑ Yes  ☐ No

Period end date of final contribution  6/30/07    *(Processing will be delayed until final contribution is received.)*

*Note This distribution request cannot be processed unless all applicable sections of this form have been completed*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained

X _____  9/10/07
   Plan Administrator Signature          Date



Central Standard Time

DEC. 29. 2006 1 5:07PM 7148413852          JMAG          NO. 4120   P. 1L   83/84

## TRANSAMERICA RETIREMENT SERVICES — Nonqualified Deferred Compensation Plan / Future Termination Distribution Election

**Instructions**

Complete all applicable sections of this Form and return it to your Employer. Please keep a copy of this completed Form for your records.

**SECTION A: Employer Information**

Com Unity Lending, Inc.

☐ Initial Election   ☐ Change of Prior Election

**SECTION B: Participant Information**

Date of Birth: __/__/__     Date of Hire: __/__/__     Marital Status: ☐ Married ☐ Single

Last Name: NGUYEN          First Name/Middle Initial: MAI, J

Mailing Address:

City: ____  State: ____  Zip Code: ____

Email Address: MAI@SMACLENDING.COM

**SECTION C: Distribution Election**

I request that future distributions of my deferred compensation (in general, for the year following the year I sign the agreement) be processed in the following manner at termination of employment (Note: Not all options may be available under your plan; for further information on options offered under your plan, please see your Employer):

☐ Single sum distribution     ☑ Annual installment payments over ___5___ (whole) years* (5 years maximum)

Note: In accordance with IRC Section 409A, the form of distribution must be specified (and elected) under the plan at the time of the deferral of such compensation. Availability of the above options and ability to change the form of payment may depend on plan provisions and Section 409A. See Section D below for information on restrictions under Section 409A for changing your election. Your plan may contain an automatic cash-out provision and/or it may limit your options upon termination.

Distributions may be delayed for a period of 6 months after a distribution date if you are deemed to be a "key employee" as defined in Section 409A.

My distribution election applies to all of my deferred compensation in the current and future years deferred compensation unless I affirmatively make a new election.

If I am first eligible as of 2007 or later, my distribution will be paid in a single sum distribution.

**SECTION D: Change of Prior Election**

I revoke my existing election and request that future distributions of deferred compensation be processed in the following manner at termination of employment (Note: Not all options may be available under your plan; for further information on options offered under your plan, please see your Employer):

☐ Single sum distribution     ☐ Annual installment payments over ___ (whole) years* (5 years maximum)

Note: In accordance with IRC Section 409A, the form of distribution must be specified (and elected) under the plan at the date of the deferral of such compensation. Availability of the above options and ability to change the form of payment may depend on plan provisions and Section 409A. Your plan may contain an automatic cash-out provision and/or it may limit your options upon termination. A subsequent election to delay or make a change in the form of payment is subject to the following rules for distributions that are scheduled to commence prior to 2008 as well as changes that are made after 2007:

- Such election cannot be effective for at least 12 months after the date on which the election is made.

- Except in the case of distributions due to death, disability, or an unforeseen emergency, the new date of payment will be 5 years from the date the payment would otherwise have been made; and

- An election related to a distribution to be made upon a specified time or pursuant to a fixed schedule may not be made less than 12 months prior to the date of the first scheduled payment in the most recent election.

Distributions may be delayed for a period of 6 months after a distribution date if you are deemed to be a "key employee" as defined in Section 409A.

My distribution election applies to all of my deferred compensation in the prior, current and future years deferred compensation unless I affirmatively make a new election.

If I am first eligible as of 2007 or later, my distribution will be paid in a single sum distribution.

Revision 20060706 (TA-11702) Rev 1 Item (Page 1 of 2)          NQDC Plan Evergreen

10/11/2007 12:20 PM   PAGE   2/002
Central Standard Time

DEC 29. 2006 1 5:07PM 7148413852          JPMC          NO. 4120   P. 12   04/04

### SECTION E. In-Service Withdrawal (complete Form Number 3254)

If provided in my plan, I must elect any in-service withdrawals for deferred compensation at the same time I am making an election for my deferred compensation. If I do not make an in-service withdrawal election, I will not be entitled to receive an in-service withdrawal. To make such elections, complete Form 3294.

### SECTION F. IRC Section 409A Disclaimer

I hereby acknowledge that the plan is subject to, and may be amended or modified to conform with, the American Jobs Creation Act of 2004 (IRC Section 409A) with regard to my compensation (and earnings thereon) deferred (generally earned and vested) after December 31, 2004. I further acknowledge that Section 409A imposes certain requirements with respect to the deferral and payment of such deferred amounts and the failure of my deferral or distribution elections to conform with such requirements may result in immediate taxation (including interest and a 20% penalty) of amounts deferred after December 31, 2004 (and of amounts deferred prior to such date that are subject to a plan material modification, if any). If permitted under this guidance, I will make such modifications to such elections, in order to conform such elections with IRC Section 409A's requirements and with the provisions of an amended, new or restated plan.

### SECTION G. Signatures

I agree to the terms of the plan. I am aware that amounts deferred under this type of plan are included in my employer's general assets. I understand that this election must be executed prior to the calendar year in which the income is to be deferred is earned (or if newly hired in October, within 30 days of my initial eligibility). I understand that upon termination of my employment, my amount will be distributed according to my election made prior to my termination and according to the terms of the plan. I understand that a withdrawal from this plan is subject to IRS reporting and withholding in accordance with IRS guidelines. I certify that the information provided on this form is correct and complete.

MAI NGUYEN
Participant Name

X _____                    12·29·06
Participant Signature                  Date

I understand that a withdrawal from this plan is subject to IRS reporting and withholding in accordance with IRS guidelines. I certify that this election is permissible under the provisions of the plan, and that the information provided on this form is correct and complete.

community lending
Employer Name/Account Number

X _____                    12/29/06
Employer Signature                    Date

Form No. XXXX-01-1YC-01394/1394, [1394] (Page 2 of 2)            NQDC Plans-Evergreen

Central Standard Time        10/11/2007 12:24 PM    PAGE    1/002

# TRANSAMERICA
**RETIREMENT SERVICES**

**Distribution Request**
Termination of Employment/Retirement

**Instructions**
To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No. 2214-TA), or log on to www.ta-retirement.com for forms and instructions on rolling over your account balance to a Transamerica IRA.

**Section A. Employer Information**

Company/Employer Name: Casa Linda Lending Inc.

Contract/Account No. [ ]            Affiliate No. [ ]            Division No. [ ]

**Section B. Participant Information**

Last Name: MCGUIRE

First Name/MI: MAI

Date of Birth: [ ]
Social Security No. [ ]

Mailing Address: [ ]

City: [ ]            State: [ ]

Zip Code: [ ]

Phone No./Ext. [ ]

E-mail Address: [ ]    MAIG SHACLENDING.COM

**Section C. Distribution Information**

Reason for distribution:  ☒ Termination of employment    ☐ Retirement

Amount of distribution:  ☒ 100%  or  ☐ $_____, considers to be: ☐ Left on deposit ☐ Other _____

**Distribution Options**

☐ Leave funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock (distribution will be in full shares only; partial shares will be paid in cash)
   Deposit Transfer Corp. No. (See your financial institution so stock can be transferred without losing certificates)
   [ ]

☐ Flexible Distribution Options (available if leaving funds on deposit)
   ☐ Fixed Payment $_____ (amount)
   ☐ Fixed Payment over _____ years
   ☐ Life Expectancy  ☐ Single  ☐ Joint (proof of spouse's age required)

Payment commencement month: _____

Payment frequency:
   ☐ Monthly  ☐ Quarterly  ☐ Semi-Annual  ☐ Annual

Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under this plan.

**Payment Options**

☒ Check   or   ☐ Wire transfer (Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.)

ABA No. [ ]

Institution Name _____

Institution Address _____

Account Name _____

Account No. _____

"Further Credit To" Institution Name _____
(For wire to credit union or overseas bank, call Transamerica for additional information.)

Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.

Form No. 2278-TA (rev. 9/05) (Page 1 of 2)        Transamerica Plans

10/11/2007 12:24 PM  PAGE  2/002

Central Standard Time

**Section D. Outstanding Loan Options (if applicable)**

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s). *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)*

☐ Continue loan repayments via loan coupons *(Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)*

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.*

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** – If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** – If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply.

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** – Withholding is mandatory in some states. Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise.

☐ Do not withhold state income tax (if independent election is permitted)

**Section F. Participant Signature**

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

*For Married Participants: I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public.*

*For All Participants: I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.*

X _____     _____     MAI NGUYEN
    Participant Signature            Date         First Name and Social Security Number

**Section G. Spousal Consent (if applicable)**

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that if I consent, I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

X _____     _____     _____     _____
    Spouse Signature               Date         Plan Administrator Signature/Notary Public Signature and Stamp/Seal   Date

**Section H. Plan Administrator Information and Signature**

Vested %: __100%__     Employment status: ☑ Terminated  __9/4/07__     ☐ Retired _____
                                                        Termination Date                    Retirement Date

Have all contributions been remitted? ☑ Yes  ☐ No

Period and date of final contribution __6/30/07__     *(Processing will be delayed until final contribution is received.)*

*Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _____     9/10/07
    Plan Administrator Signature      Date

Form No. 2210-TA (Rev. 3/02) (Page 1 of 2)    Transamerica Plans

ntral Standard Time

10/10/2007 12:42 PM  PAGE  1/002

# TRANSAMERICA
### RETIREMENT SERVICES

**Distribution Request**
Termination of Employment/Retirement

**Instructions**

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No. 2216-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

## Section A. Employer Information

Company/Employer Name: One Unity Lending Inc.

Contract/Account No.: ▮▮▮▮    Affiliate No.: ▮▮▮▮    Division No.: ▮▮▮

## Section B. Participant Information

Last Name: NGUYEN    Date of Birth: 11-08-72

First Name/MI: HUNG PERRY    Social Security No.: ▮▮▮▮

Mailing Address: ▮▮▮▮

City: ▮▮▮▮    State: ▮▮

Zip Code: ▮▮▮▮

Phone No./Ext.: ▮▮▮▮

E-mail Address: ▮▮▮▮@▮▮▮▮   Fight 300 clear l rea ho. com

## Section C. Distribution Information

Reason for distribution: ☒ Termination of employment    ☐ Retirement

Amount of distribution: ☒ 100% or ☐ $_____, remainder to be: ☐ Left on deposit ☐ Other ____

**Distribution Options**

☐ Leave funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock (distribution will be in full shares only; partial shares will be paid in cash)

☐ Flexible Distribution Options (available if leaving funds on deposit)
  ☐ Fixed Payment $_____ (amount)
  ☐ Fixed Payment over _____ years
  ☐ Life Expectancy ☐ Single ☐ Joint (proof of spouse's age required)
  Payment commencement month: _____
  Payment frequency:
  ☐ Monthly ☐ Quarterly ☐ Semi-Annual ☐ Annual

Deposit Transfer Corp. No. (Give new financial institution, as stock can be transferred without issuing certificates) ▮▮▮▮▮▮

*Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan.*

**Payment Options**

☒ Check  or  ☒ Wire transfer (Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $1,000. Any distribution less than $1,000 will be processed in the form of a check.)

ABA No.: ▮▮▮▮▮▮▮▮▮
Institution Name: _____
Institution Address: _____
Account Name: _____
Account No.: _____
*Further Credit To* Institution Name _____
(For wire to credit union or overseas bank, call Transamerica for additional information.)

*Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.*

Form No. 2216-TA (rev. 2/05) (Page 1 of 2)    Transamerica Plans

**Section D. Outstanding Loan Options (if applicable)**

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s). (Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)

☐ Continue loan repayments via loan coupons. (Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.*

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** - If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** - If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply.

☐ Do not withhold 10% optional federal income tax.

**State Income Tax Withholding** - Withholding is mandatory in some states. Other states allow an independent election and in those states, state tax will be withheld unless you elect otherwise.

☐ Do not withhold state income tax (if independent election is permitted)

**Section F. Participant Signature**

Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of defrauding, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.

For Married Participants: I elect to waive qualified joint and survivor benefits (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public. I understand that this waiver is not effective without the written consent (if applicable) of my spouse.

For All Participants: I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.

X _(signature)_    9-06-07    Hung Nguyen    _(Print Name and Social Security Number)_

**Section G. Spousal Consent (if applicable)**

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

X _____ Spouse Signature _____ Date    X _____ Plan Administrator Signature or Notary Public Signature and Seal (Seal) _____ Date

**Section H. Plan Administrator Information and Signature**

Vested %: 100%    Employment status: ☒ Terminated 9/4/07    ☐ Retired _Retirement Date_

Have all contributions been remitted? ☒ Yes ☐ No

Period and date of final contribution: 6/30/07    (Processing will be delayed until final contribution is received.)

*Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _(Plan Administrator Signature)_    9/10/07 _(Date)_

Form No. TA-24 (rev 1206) (Page 4 of 7)    Transamerica Plans

10/10/2007 1:12 PM   PAGE   2/003

entral Standard Time

# TRANSAMERICA
## RETIREMENT SERVICES

**Distribution Request**
**Termination of Employment/Retirement**

**Instructions**

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No. 2214-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

**Section A. Employer Information**

| | |
|---|---|
| Company/Employer Name | Cox Unity Lending Inc. |
| Contract/Account No. | Affiliate No. _____ Division No. _____ |

**Section B. Participant Information**

| | | | |
|---|---|---|---|
| Last Name | NGUYEN | Date of Birth | 11-00-72 |
| First Name/MI | HUNG PEKEY | Social Security No. | |
| Mailing Address | | | |
| City | | State | |
| Zip Code | | | |
| Phone No./Ext | | | |
| E-mail Address | | Flight 360 clear@yahoo.com |

**Section C. Distribution Information**

Reason for distribution: ☑ Termination of employment   ☐ Retirement

Amount of distribution: ☑ 100% or ☐ $_____, translate to be: ☐ Left on deposit ☐ Other _____

**Distribution Options**

☐ Leave funds on deposit
☐ Purchase annuity
☑ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock (distribution will be in full shares only; partial shares will be paid in cash)

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Deposit Transfer Corp. No. (from new financial institution or check can be transferred without being negotiated) |

☐ Flexible Distribution Option (available if having funds on deposit)
  ☐ Fixed Payment $ _____ (amount)
  ☐ Fixed Payment over _____ years
  ☐ Life Expectancy ☐ Single ☐ Joint (proof of spouse's age required)

Payment commencement month: _____

Payment frequency:
☐ Monthly   ☐ Quarterly   ☐ Semi-Annual   ☐ Annual

*Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan.*

**Payment Options**

☑ Check   or   ☐ Wire transfer (Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.)

| | |
|---|---|
| ABA No. | |
| Institution Name | |
| Institution Address | |
| Account Name | |
| Account No | |
| *Further Credit To* Institution Name | |
| *(For wire to credit union or overseas bank, call Transamerica for additional information.)* | |

*Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.*

Form No. 2214-TA (rev. 2/02) (Page 1 of 2)   Transamerica Plans



ntral Standard Time

**Section D. Outstanding Loan Option(s) (if applicable)**

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s). *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)*

☐ Continue loan repayments via loan coupons. *(Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)*

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.*

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** – If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** – If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** – Withholding is mandatory in some states. Other states allow an independent election and in those states, state tax will be withheld unless you elect otherwise

☐ Do not withhold state income tax (if independent election is permitted)

**Section F. Participant Signature**

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

*For Married Participants: I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public*

*For All Participants: I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.*

| X _(signature)_ | 9-06-07 | _(signature) Hung Nguyen_ | ▉▉▉▉▉ |
|---|---|---|---|
| | Date | Print Name and Social Security Number | |

**Section G. Spousal Consent (if applicable)**

I consent to my spouse's waiver of joint and survivor benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under this plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

| X | | X | |
|---|---|---|---|
| Spouse Signature | Date | Plan Administrator Signature or Notary Public Signature and Stamp/Seal | Date |

**Section H. Plan Administrator Information and Signature**

Vested %: **100%**    Employment status: ☑ Terminated **9/4/07**    ☐ Retired

Termination Date ____ Retirement Date

Have all contributions been remitted? ☐ Yes ☐ No

Posted date of final contribution **6/30/07**    *(Processing will be delayed until final contribution is received)*

*Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _(signature)_    9/10/07

Plan Administrator Signature    Date

Form No. 2220-204 (rev. 10/05) (Page 2 of 2)    Transamerica Plans

10/9/2007 8:19 AM  PAGE  2/003

Central Standard Time

# TRANSAMERICA
RETIREMENT SERVICES

**Distribution Request**
**Termination of Employment/Retirement**

## Instructions

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No. 2214-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

## Section A. Employer Information

| Company/Employer Name: | Com Unity Lending Inc. | | |
|---|---|---|---|
| Contract/Account No. | | Affiliate No. | Division No. |

## Section B. Participant Information

| Last Name | PHAM | Date of Birth | |
|---|---|---|---|
| First Name/MI | MAI C | Social Security No. | |
| Mailing Address | | | |
| City | | State | |
| Zip Code | | | |
| Phone No./Ext. | | | |
| E-mail Address | christine.pham@comunitylending.com | | |

## Section C. Distribution Information

Reason for distribution: ☒ Termination of employment   ☐ Retirement

Amount of distribution: ☒ 100%   or   ☐ $_____, remainder to be: ☐ Left on deposit ☐ Other_____

### Distribution Options

☐ Leave funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock (distribution will be in full shares only; partial shares will be paid in cash)

☐☐☐☐☐ Deposit Transfer Corp. No. (from new financial institution, so stock can be transferred without issuing certificates)

☐ Flexible Distribution Options (available if leaving funds on deposit)
☐ Fixed Payment $_____ (amount)
☐ Fixed Payment over _____ years
☐ Life Expectancy ☐ Single ☐ Joint (proof of spouse's age required)

Payment commencement month: _____

Payment frequency:
☐ Monthly ☐ Quarterly ☐ Semi-Annual ☐ Annual

Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan.

### Payment Options

☒ Check   or   ☐ Wire transfer (Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.)

ABA No. _____
Institution Name _____
Institution Address _____
Account Name      MAI C. PHAM
Account No. _____
"Further Credit To" Institution Name _____
(For wire to credit union or overseas bank, call Transamerica for additional information.)

Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.

Form No. 2220-TA (rev. 2006) Page 1 of 29        Transamerica Plans

**Section D. Outstanding Loan Options (if applicable)**

For any outstanding loan(s) at the time of any termination of employment/retirement, I elect to:

☐ Pay off the loan(s). *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)*

☐ Continue loan repayments via loan coupons. *(Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)*

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.*

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** – If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** – If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply.

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** – Withholding is mandatory in some states. Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise.

☐ Do not withhold state income tax (if independent election is permitted)

**Section F. Participant Signature**

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

**For Married Participants:** I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent of my spouse, witnessed by my Plan Administrator or a Notary Public.

**For All Participants:** I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.

X _~~signature~~_                          Date ____    _~~Matt C. Adam~~_    ~~Plan Name and Social Security Number~~ ██████
   Participant Signature

**Section G. Spousal Consent (if applicable)**

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under the plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

X _____                   Date ____    X _____    Date ____
   Spouse Signature                                 Plan Administrator Signature or Notary Public Signature and Stamp/Seal

**Section H. Plan Administrator Information and Signature**

Vested %: **100 %**    Employment status:  ☑ Terminated  **9/4/07**  Termination Date    ☐ Retired    Retirement Date

Have all contributions been remitted?  ☑ Yes  ☐ No

Period end date of final contribution  **10/30/07**    *(Processing will be delayed until final contribution is received)*

*Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _~~signature~~_                          **9/10/07**
   Plan Administrator Signature              Date

Form No. 3239-TA (rev. 3/03) (Page 3 of 3)        Transamerica Plans

Central Standard Time

10/9/2007 8:15 AM  PAGE  2/003

# TRANSAMERICA
### RETIREMENT SERVICES

4333 Edgewood Road NE
Cedar Rapids, IA 52499
877-224-0220
www.ta-retirement.com

**Distribution Request**
**Termination of Employment/Retirement**

## Instructions

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No. 2214-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

## Section A. Employer Information

Company/Employer Name: Com Unity Lending Inc.

Contract/Account No. [redacted]    Affiliate No. [redacted]    Division No. [   ]

## Section B. Participant Information

Last Name: PHAM    Date of Birth: [   ]
First Name/MI: MAI C    Social Security No. [   ]
Mailing Address: [redacted]
City: [redacted]    State: [   ]
Zip Code: [redacted]
Phone No./Ext. [redacted]
E-mail Address: christine.pham@comunitylending.com

## Section C. Distribution Information

Reason for distribution: [X] Termination of employment   [ ] Retirement

Amount of distribution: [X] 100%   or  [ ] $_____ , remainder to be: [ ] Left on deposit  [ ] Other _____

### Distribution Options

[ ] Leave funds on deposit
[ ] Purchase annuity
[X] Lump sum distribution
[ ] Partial distribution
[ ] In-kind distribution of any employer stock (distribution will be in full shares only; partial shares will be paid in cash)
   Deposit Transfer Corp. No. (from new financial institution, so elect can be transferred without issuing certificates)

[ ] Flexible Distribution Options (available if leaving funds on deposit)
   [ ] Fixed Payment $_____ (amount)
   [ ] Fixed Payment over _____ years
   [ ] Life Expectancy  [ ] Single  [ ] Joint (proof of spouse's age required)
   Payment commencement month: _____
   Payment frequency:
   [ ] Monthly  [ ] Quarterly  [ ] Semi-Annual  [ ] Annual

Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under this plan.

### Payment Options

[X] Check  or  [X] Wire transfer (Complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.)

ABA No. [redacted]
Institution Name [redacted]
Institution Address [redacted]
Account Name  mai c. pham
Account No. [redacted]
"Further Credit To" Institution Name _____
(For wire to credit union or overseas bank, call Transamerica for additional information.)

Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.

Form No. 2208-TA (rev. 2/03) (Page 1 of 2)    Transamerica Plans

10/9/2007 8:15 AM    PAGE    3/003

Central Standard Time

**Section D. Outstanding Loan Options (if applicable)**

For any outstanding loan(s) at the time of my termination of employment/retirement, I elect to:

☐ Pay off the loan(s). *(Call Transamerica to verify loan payoff amount and procedure prior to submitting this form.)*

☐ Continue loan repayments via loan coupons. *(Available if funds are left on deposit and if allowed by the plan. Call Transamerica for further information.)*

☐ Default the loan(s). I understand that a taxable distribution will be reported to the IRS as indicated in the Special Tax Notice Regarding Plan Payments.

*Note: If one of the above options is not selected, any outstanding loan(s) will be automatically defaulted in accordance with federal regulations.*

**Section E. Tax Withholding Election**

**Mandatory Federal Income Tax Withholding** - If this distribution is an eligible rollover distribution, 20% mandatory federal income tax withholding applies unless the distribution is paid as a direct rollover to an eligible retirement plan or IRA.

**Optional Federal Income Tax Withholding** - If this distribution is not an eligible rollover distribution, 10% federal income tax will be withheld unless you elect otherwise. If this distribution is subject to the 20% mandatory federal income tax withholding, do not check below since it does not apply.

☐ Do not withhold 10% optional federal income tax

**State Income Tax Withholding** - Withholding is mandatory in some states. Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise.

☐ Do not withhold state income tax (If independent election is permitted)

**Section F. Participant Signature**

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

**For Married Participants:** I elect to waive qualified joint and survivor benefits (if applicable) with respect to the amount to be withdrawn from the plan. I understand that this waiver is not effective without the written consent (if applicable) of my spouse, witnessed by my Plan Administrator or a Notary Public.

**For All Participants:** I understand that I may have to report this distribution to the IRS and pay appropriate income taxes on the taxable portion not rolled over. I have received and read the Special Tax Notice Regarding Plan Payments. I certify that the information provided on this form is correct and complete.

X _____    _____    MR  Pham
   Participant Signature             Date      Print Name and Social Security Number

**Section G. Spousal Consent (if applicable)**

I consent to my spouse's waiver of joint and survivorship benefits with respect to the amount to be withdrawn from the plan. I understand that this consent means that I will not receive any survivor benefits under the plan upon my spouse's death with respect to this amount. I understand that I do not have to consent to the waiver of this qualified joint and survivor annuity coverage, however, if I do consent by signing below, I may not revoke my consent.

WITNESSED

X _____    _____    X _____    _____
   Spouse Signature                Date       Plan Administrator Signature or Notary Public Signature and Stamp/Seal    Date

**Section H. Plan Administrator Information and Signature**

Vested %  100    Employment status:  ☑ Terminated  9/4/07    ☐ Retired
                                          Termination Date              Retirement Date

Have all contributions been remitted?  ☑ Yes  ☐ No

Period end date of final contribution  6/30/07    *(Processing will be delayed until final contribution is received.)*

*Note: This distribution request cannot be processed unless all applicable sections of this form have been completed.*

I certify that the information provided on this form is correct and complete, this transaction is permissible under the plan, and that any required consents and waivers have been obtained.

X _____    9/10/07
   Plan Administrator Signature      Date

Form No. 3220-TA (rev. 7/05) (Page 2 of 2)    Transamerica Plans

# TRANSAMERICA
## RETIREMENT SERVICES
4333 Edgewood Road NE
Cedar Rapids, IA 52499
877-234-9293
www.ta-retirement.com

**Distribution Request**
**Termination of Employment/Retirement**

**Instructions**

To request a distribution, complete all applicable sections of this form, obtain any required signatures, and return the form to Transamerica at the above address. Do not use this form to request a direct rollover to an IRA or an eligible retirement plan; instead complete a Direct Rollover Request (Form No. 2214-TA), or log on to www.ta-retirement.com for forms and information on rolling over your account balance to a Transamerica IRA.

**Section A. Employer Information**

| Company/Employer Name | COM UNITY LENDING INC. | | |
|---|---|---|---|
| Contract/Account No. | YQ51291 | Affiliate No. 00001 | Division No. |

**Section B. Participant Information**

| Last Name | *HAKE* | Date of Birth | *7-13-59* |
|---|---|---|---|
| First Name/MI | *CRAIG* | Social Security No. | *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* |

Mailing Address   *4474   W. Jackson Rd*

City   *Broken*                                     State   *CA*

Zip Code   *75211*

Phone No./Ext.   *214-320-5419*

E-mail Address   *craig@castlemortgage...com*

**Section C. Distribution Information**

Reason for distribution:   ☒ Termination of employment   ☐ Retirement

Amount of distribution:   ☒ 100%   or   ☐ $ _____ , remainder to be:   ☐ Left on deposit   ☐ Other _____

**Distribution Options**

☐ Leave funds on deposit
☐ Purchase annuity
☒ Lump sum distribution
☐ Partial distribution
☐ In-kind distribution of any employer stock *(distribution will be in full shares only; partial shares will be paid in cash)*

☐☐☐☐☐ Deposit Transfer Corp. No. *(from new financial institution, so stock can be transferred without issuing certificates)*

☐ Flexible Distribution Options *(available if leaving funds on deposit)*
  ☐ Fixed Payment $ _____ *(amount)*
  ☐ Fixed Payment over _____ years
  ☐ Life Expectancy   ☐ Single   ☐ Joint *(proof of spouse's age required)*
  Payment commencement month: _____
  Payment frequency:
  ☐ Monthly   ☐ Quarterly   ☐ Semi-Annual   ☐ Annual

*Note: Please refer to your Summary Plan Description or contact your Plan Administrator for more information regarding the distribution options that are available under the plan.*

**Payment Options**

☒ Check   or   ☐ Wire transfer *(complete information below only if wire transfer option is selected. Option available only for lump sum or partial distribution of at least $5,000. Any distribution less than $5,000 will be processed in the form of a check.)*

ABA No.   ☐☐☐☐☐☐☐☐☐

Institution Name

Institution Address

Account Name

Account No.

"Further Credit To" Institution Name
*(For wire to credit union or overseas bank, call Transamerica for additional information.)*

*Note: If one of the above payment options is not selected, this distribution will be processed in the form of a check.*