1  **LAW OFFICES OF**
   **JESSE L. B. HILL**
2  1042 Palm Street, 2nd Floor
   San Luis Obispo, CA 93401
3  Telephone 805/544-5541
   Jesse L. B. Hill, Esq. - State Bar Number 97620
4

5  Attorney for Counter Claim Defendants KATHERINE BUCKMEYER, JACK FERGUSON,
   JOHN NELSON, JEANNINE RUPERT & PHYLLIS CHRISTICH
6

7

8                **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10

11 KATHERINE BUCKMEYER, an individual; )    CASE NO. C 08-00201 JW
   JACK FERGUSON, an individual; JOHN   )
12 NELSON; an individual; JEANNINE      )    **JOINDER OF COUNTER-CLAIM**
   RUPERT; an individual; and PHYLLIS    )    **DEFENDANTS IN MOTION**
13 CHRISTICH; an individual;            )    **FOR SUMMARY JUDGMENT AND**
                                        )    **ADDITIONAL SUPPORT FOR**
14          Counter Claim Defendants,   )    **SUMMARY JUDGMENT**
                                        )
15      vs.                             )    DATED: October 6, 2008
                                        )    TIME :  9:00 am
16 COMUNITY LENDING INC., COMUNITY      )    PLACE: 280 South First Street
   LENDING INC. NON-QUALIFIED           )           San Jose, CA
17 DEFERRED COMPENSATION PLAN, and      )
   ROES 11-20, inclusive;              )    *Assigned for All Purposes to:*
18                                      )    Hon. JAMES WARE
            Defendants.                 )
19 _____ )
                                        )
20 and RELATED ACTIONS.                 )
                                        )
21 _____ )

22        Counter-Claim Defendants in the Bankruptcy, Katherine Buckmeyer, Jack

23 Ferguson, John Nelson, Jeannine Rupert, and Phyllis Christich (hereinafter "Joinder

24 Plaintiffs") hereby join the other plaintiffs' Motion for Summary Judgment and

25 respectfully submit these additional points and authorities in support of the Motion for

26 Summary Judgment by and against ComUnity Lending Inc. ("Defendant") or the

27 ComUnity Lending Inc. Non-Qualified Deferred Compensation Plan ("Plan").

28 ///

1 | Table of Contents | Page
2 | INTRODUCTION | 2
3 | ARGUMENT | 3
4 | 1. ORAL CONTRACTS | 3
5 | 2. THE PLAN WAS FUNDED | 5
6 | CONCLUSION | 9

Table of Cases

Blakenship v. Liberty Life Assurances Co. Of Boston 486 F. 3d 620 (CA 9th 2007) | 4

Carr v. First Nationwide Bank 816 F. Supp. 1476, 1491 (N.D. Cal. 1993) | 3

Duggan v. Hobbs 99 F. 3d 307, 310 (9th Cir. 1996) | 5

Ellis v. LaMesa 990 F. 2d 1528, 1530 (9th Cir. 1993) | 2

Guiragoss v. Khoury (2006) 444 F. Supp. 2d 649, 658 | 5

In re IT Group, Inc. (2006) 448 F3d 661 | 5

Kemmerer v. ICI Americas Inc. (1995) 70 F. 3d 281, 287 | 4

New Valley Corporation, Debtor, Senior Executive Benefit Plan v. New Valley Corporation (1996) 89 F. 3d. 143, 149 | 3

Reliable Home Health Care, Inc. v. Union Central Insurance Company (2002) 295 F. 3d 505, 513 | 7

Terones v. Pacific States Steel Corp. (N.D.C. Cal. 1981) 526 F. Supp. 1350 | 4

Woods v. Prudential Ins. Co. Of America —F. 3d — WL 2358006 June 11, 2008 | 4

Statutes

29 USC § 1002(17) | 7

1

## INTRODUCTION

2      The Joinder Plaintiffs agree with the arguments set forth in the Motion For
3  Summary Judgment filed by the other plaintiffs. However, they believe that all of the
4  plaintiffs in this action are entitled to Summary Judgment as a matter of law for separate
5  and independent reasons.

6      In order to induce Joinder Plaintiffs and the Pham plaintiffs to contribute millions
7  of dollars of their money to the Plan, **oral representations** making specific promises
8  became part of the Plan according to <u>Carr v. First Nationwide Bank</u> 816 F. Supp. 1476,
9  1491 (N.D. Cal. 1993). Additionally, a Top Hat Plan must be **<u>unfunded</u>** according to
10 <u>Duggan v. Hobbs</u> 99 F. 3d 307, 310 (9th Cir. 1996). Section 10.2 of the Plan states: **"If
11 the Plan, which was designed and intended to be a Top-Hat Plan is deemed not to be
12 a Top-Hat Plan, it will be terminated and contributions will be distributed to
13 Participants in the Plan."** Joinder Plaintiffs believe this Plan does not meet the
14 requirements of being a Top Hat Plan as a matter of law because the Plan was funded. As
15 a funded Plan, the Plan is not a Top Hat Plan, therefore Plaintiffs' contributions are held
16 in resultant trust and should be returned to them. Since, the Plan clearly did not meet the
17 requirements of a non-funded Top Hat Plan, the Court does not even need to reach the
18 issues raised by the other plaintiffs, because the entire purpose of the Plan failed.

19     According to <u>Ellis v. LaMesa</u> 990 F. 2d 1528, 1530 (9th Cir. 1993) if a trust fails,
20 the funds are held as a resulting trust. Joinder Plaintiffs further believe that if the Plan is
21 funded, it is a trust subject to all of the provisions of ERISA and under those conditions,
22 the trust should be distributed to the plaintiffs. If the Plan is determined to be an
23 unfunded Top Hat Plan, then the oral terms become part of the Plan's provisions because
24 no plaintiff received information telling them the funds were subject to the claims of
25 creditors of the Defendant. As such, the trust is subject to the oral terms and the funds
26 should be distributed accordingly. Joinder Plaintiffs believe it cannot be contested that
27 they are 100% vested in their funds by virtue of their federal common law rights and the
28 Participant Statements they received from the insurance companies.

## ARGUMENT

### 1. ORAL CONTRACTS

One of the few cases from this District which has dealt with Top Hat Plans is <u>Carr</u> <u>v. First Nationwide Financial Corporation</u> (1993) 816 F. Supp 1476, 1491:

> FN9. It is worth noting that the Supreme Court has suggested, albeit in dicta, that deferred compensation is a category of benefit which is ordinarily contractually vested or accrued (cites omitted) the Court implicitly appears to recognize that deferred compensation is in the nature of a contractually "accrued" or "vested" right that remains intact even after the contract itself has expired.

This factual situation is different from <u>Carr</u> in that none of the Joinder Plaintiffs had input into the design of the plan, neither did they receive a copy of the Plan document before placing their funds into the Plan. As a factual matter, the employees of Defendant attended a meeting and/or phone conference and the employees were told they could contribute their funds to a Retirement Plan. They were told the Plan would have individual accounts, the Participants could borrow or take a hardship withdrawal from their account, the Participants could chose their retirement investments from a large number of potential investments, and the funds would be 100% vested (Declaration of Joinder Plaintiffs ¶ 4-9). The Joinder Plaintiffs relied upon the terms as explained at the meeting or on the phone and received participant statements stating the funds were 100% vested. This creates contractual right and the plaintiffs have every reasonable expectation of having their contract rights determined to be 100% vested in their contributions.

The oral representations would become part of the Plan, if not the entire Plan. In <u>New Valley Corporation, Debtor, Senior Executive Benefit Plan v. New Valley</u> <u>Corporation</u> (1996) 89 F. 3d. 143, 149:

> As a result, top hat agreements can be partially or exclusively oral. They may, of course, be integrated by their own terms, just as they may contain any provision to which the parties agree.

The phone call may be the entire Plan and agreement under Federal Common Law. This is especially important because the Joinder Plaintiffs did not receive a copy of the Plan when they made their contributions. Most importantly, Plaintiff were not told their funds would be subject to the claims of creditors. It is an irrefutable material fact that

1    plaintiffs were told their benefits would be 100% vested during the phone call

2    (Declaration of Joinder Plaintiffs ¶ 5 & 13).

3       Other cases have determined when the rights of the Participants become vested in

4    a terminated executive deferred compensation plan. As explained in <u>Kemmerer v. ICI</u>

5    <u>Americas Inc.</u> (1995) 70 F. 3d 281, 287:

6          Under unilateral contract principles, once the Employee performs, the offer
           becomes irrevokable, the contract is complete, and the employer is required
7          to comply with its side of the bargain.

8    The Joinder plaintiffs have performed by accepting the oral terms as explained to them

9    over the phone and by putting their funds into the Plan. The Joinder Plaintiffs

10    received statements which confirmed the oral representations of 100% vesting and their

11    ability to invest their contributions held in their individual accounts. Joinder Plaintiffs

12    had the reasonable expectations that the funds in the Plan were 100% vested in their name

13    for retirement. Since the Joinder Plaintiffs did not receive the Plan document when they

14    joined the Plan (Declaration of Joinder Plaintiffs ¶ 6), the oral representations would form

15    the basis of the Plan under Federal Common Law. The Joinder Plaintiffs would have the

16    right to expect that their funds were 100% vested based upon the oral representations they

17    received from the insurance company (Declaration of Joinder Plaintiffs ¶ 5).

18       Joinder Plaintiff believe it is an undisputable material fact that they did not

19    received a copy of the Plan until after their rights vested. It was not explained to them

20    that their contributions were subject to the claims of creditors of the Defendant. It is not

21    now possible to enforce the rights of creditors against them after their rights vested. The

22    oral contract and federal common law would determine the Participant's vested rights

23    under the Plan.

24       In <u>Terones v. Pacific States Steel Corp.</u> (N.D.C. Cal. 1981) 526 F. Supp. 1350, at

25    1354): "It has been generally recognized, both pre and post ERISA, that policy favors

26    construing pension plans in favor of the employee and to avoid forfeiture of benefits."

27    Also see <u>Blakenship v. Liberty Life Assurances Co. Of Boston</u> 486 F. 3d 620, 625 (CA

28    9th 2007) and <u>Woods v. Prudential Ins. Co. Of America</u> —F. 3d — WL 2358006 June 11,

1    2008. The law would be against any construction of the Plan document against the

2    common understanding and explanation to the employees. Clearly, the law is against any

3    forfeiture of benefits if there is any reading of the Plan which might favor the employees.

4    Also, it is only common sense, that if the plaintiffs knew their funds were subject to the

5    claims of creditors and the defendant was in financial trouble, they would have taken their

6    funds out of the Plan.

7                              2. THE PLAN WAS FUNDED

8            A Top Hat Plan is defined in ERISA as "a plan which is unfunded and is

9    maintained by an Employer primarily for the purpose of providing deferred compensation

10   for a select group of management or highly compensated employees." Duggan v. Hobbs

11   99 F. 3d 307, 310 (9th Cir. 1996)(quoting 29 U.S.C. § 1101). While, Joinder Plaintiffs

12   believe the Plan does not meet either of those requirements, this pleading will only

13   address the funding issue because it is irrefutable that this is a funded ERISA Plan with

14   separate accounts. Joinder Plaintiffs believe the Plan was funded because the Participants

15   paid payroll taxes on their contributions to their separate accounts. In addition, plaintiffs

16   had greater rights to receive their Plan benefits than did general creditors of Defendant,

17   according to the Plan. For example, John Nelson received a hardship withdrawal from his

18   account during the time period Defendant now claims to have been insolvent, in spite of

19   whatever rights Defendant's general creditors supposedly had to the funds in the Plan.

20   No creditor was able to withdraw money from Mr. Nelson's separate vested account.

21          If the Court determines that this a funded ERISA plan, then it is not a Top Hat

22   Plan. A Top Hat Plan is an unfunded plan. As explained in Guiragoss v. Khoury (2006)

23   444 F. Supp. 2d 649, 658:

24          To be designated a top hat plan, ERISA requires that the plan be (1)
            "unfunded" and (2) "maintained by an employer primarily for the purpose
25          of providing deferred compensation to a select group of management or
            highly compensated employees." Cites omitted.
26
27          A Plan becomes funded according to In re IT Group, Inc. (2006) 448 F3d 661

28   under the following conditions:

1
2
3
4

> Combining all of this information, the court devised the following test: in
> determining whether a plan is "funded" or "unfunded" under ERISA, a
> court must first look to the surrounding facts and circumstances, including
> the status of the plan under non-ERISA law. Second, a court should
> identify whether a [plan] is funded by a res separate from the general assets
> of the company.

5
6
7
8
9

The Plan was explained to plaintiffs by a representative of Great Western Life Insurance Company. The participants, if they liked the presentation, decided how much of their funds or salary to transfer to their participant accounts established at Great Western Life. Individual accounts were established for each participant who chose to

10
11
12
13

participate. Defendant's payroll department was advised of the amount the participant wanted to transfer and a calculation of the payroll taxes due was prepared. The amount of the transfer and the tax was then deducted from the funds owed by Defendant to the Participant or Participant's satellite office account. The funds were transferred from the

14
15
16
17

individual office account and the payroll taxes were paid to the IRS. The funds were transferred to a separate account at Great Western Life. Individual account statements in the plaintiffs' names were sent to them. In 2003, the individual accounts were transferred from Great Western Life to TransAmerica. Separate accounts, which were 100% vested,

18
19
20

continued for each individual participant during and after the transfer. Clearly, these accounts are a res separate from the general assets of the Company. (Declarations of John Nelson and Jeannine Rupert Exhibit A to their Declarations are representative Account Statements given to all participants of the Plan stating 100% vesting of the accounts).

21
22

Guiragoss v. Khoury (2006) 444 F. Supp 649, 659-60 explains the three part analysis that has been developed:

23
24
25
26

> When undertaking this three-part analysis, it is important to note that
> ERISA is a remedial statute that should be liberally construed in favor of
> employee benefit fund participants. To that end, "exemptions from
> ...ERISA coverage should be confined to their narrow purpose (Cites
> omitted)...Specifically, courts have asked can the beneficiary establish,
> through the plan documents, a legal right any greater than that of an
> unsecured creditor to a specific set of funds from which the employer is
> obligated to pay the deferred compensation.

27
28

The Plan language creates an undeniable material fact that the plaintiffs can establish a legal right to their account, greater than that of any creditor of defendant.

The plan states:

> Article 2 "Hardship Withdrawal" A withdrawal is on account of hardship if it is due to an unforeseen emergency which creates a hardship. Article 4.2 states: ...a Participant may make a Hardship Withdrawal as defined in Article 2, from the Plan.
>
> Article 3 The salary deferral contributions made under the Plan on behalf of each Participant shall be credited to the Participant's account.
>
> Article 5.1 Unless otherwise so elected, the Employer hereby designates that plan participants may direct the investments of the deferral amounts, but only from a menu of investment alternatives made available by the Employer under the Plan and under a policy as established by the Employer.

Joinder Plaintiffs believe based upon the Plan language, it is an undisputable material fact that they had a legal right greater than an unsecured creditor to a specific set of funds. As an example of demonstrating a greater right than a creditor, John Nelson took a hardship withdrawal from his funds on August 7, 2007. The funds were transferred to defendant and then paid to him on August 15, 2007 (Declaration of John Nelson Attachment B). No creditor has this right under the Plan. Great Western and then TransAmerica had separate individual accounts set up in the name of each Participant which stated the funds were 100% vested. Insurance companies can set up individual accounts under 29 USC 1002(17). That was done in this case. The Participants had the right to make investment choices for their individual accounts. Based upon the plan document, Joinder Plaintiffs and all other plaintiffs clearly had rights greater than other unsecured creditors of the Defendant. This cannot be reasonably disputed.

As explained in Reliable Home Health Care, Inc. v. Union Central Insurance Company (2002) 295 F. 3d 505, 513:

> The DOL has indicated that great weight should be given to the tax consequences of such plans. See Op. Dep't Labor 92-13 A; Miller, 915 F.Supp 651, 659 holding that a "plan is more likely than not to be regarded as unfunded if the beneficiaries under the plan do not incur tax liability during the year that the contributions to the plan are made."

In this case, the Participants did incur tax liability for their contributions. When a Participant would direct Defendant to transfer their funds from their office account or salary and make a contribution to their retirement account, Defendant's payroll

1 | department would withhold payroll taxes, including Medicare taxes. Each Participant has
2 | paid taxes to the Federal Government on each and every contribution that was made to the
3 | Plan in the year of the contributions (Declaration of Joinder Plaintiffs ¶ 16). The taxes
4 | were taken out of the individual office accounts. Medicare taxes are paid on the amount
5 | of an employees gross compensation. As an example, see Attachment C to the
6 | Declaration of John Nelson, his W-2s for 2002-2006. Mr. Nelson placed $50,000.00 into
7 | the Plan in each of those years. By way of example, on his 2003 W-2, the Medicare
8 | wages are over $50,000.00 higher than his compensation. The Medicare tax in the year
9 | 2003 was 1.45% and if one multiplies 1.45% time $221,143.07 Mr. Nelson's salary plus
10 | his $50,000.00 contributions for 2003, the tax withheld for Medicare is exactly $3,206.57,
11 | the amount listed on Mr. Nelson's W-2 including his contribution to the Plan. It is an
12 | undisputable material fact that payroll taxes were paid in the year that a participant made
13 | contributions to the Plan.

14 | It is undisputable that a Participant could request a hardship withdrawal at any time
15 | from the Plan. If a hardship withdrawal was taken, Defendant's payroll department
16 | would withhold state and federal income taxes from the hardship withdrawal. It is
17 | undisputable that the hardship withdrawal were taken from the individual accounts of the
18 | Plaintiffs. Each individual account was decreased by the amount of the hardship
19 | withdrawals. Each withdrawal reduced the separate individual account that was in the
20 | name of the individual who decided to make a contribution to their individual account. It
21 | cannot be disputed that this Plan had separate individual accounts which have been taxed.
22 | Thus, the plaintiffs could "look to a res separate from the general assets of the corporation
23 | to satisfy their claims." IT Group, 448 F.3d at 669. Indeed, even today, the assets remain
24 | segregated from the general assets of the Defendant, in a separate account.
25 | ///
26 | ///
27 | ///
28 | ///

1

## CONCLUSION

2  Joinder Plaintiffs believe that the oral representations and their individual account
3  statement form the basis of the Plan. That is because no plaintiff received a copy of the
4  Plan, nor information telling them their funds were subject to the claims of creditor, until
5  well after their rights vested. Under Federal Common Law, it should be determined that
6  the funds were 100% vested and held in trust for the benefit of the plaintiffs. Those funds
7  should be ordered distributed to the plaintiffs.

8  Joinder Plaintiffs have established that this was a funded plan under ERISA, even
9  if there is a Plan document which claims to create a Plan which is alleged to be unfunded.
10  As a funded Plan, the Plan should be determined not to be a Top Hat Plan. Upon the
11  Court's determination that this is a funded retirement Plan, thus subject to ERISA, the
12  individual accounts should be ordered paid to the Participants.

13  If the Court determines this is an unfunded Top Hat Plan, the document provisions
14  which favors the plaintiff and work against forfeiture should be enforced. On that basis,
15  the funds should be ordered distributed to the plaintiffs.

16

17  July 18, 2008                          Respectfully submitted,

18                                  *LAW OFFICES OF JESSE L. B. HILL*

19

20                          By /s/ _____

21                                  JESSE L. B. HILL, Esq.
                                    Attorney for Katherine Buckmeyer, Jack
22                                  Ferguson, John Nelson, Jeannine Rupert, and
                                    Phyllis Christich "Joinder Plaintiffs"
23

24

25

26

27

28



Jesse L.B. Hill SBN 97620
Law Offices of Jesse L.B. Hill
1042 Palm Street 2nd Floor
San Luis Obispo, CA 93401
(805) 544-5541
Fax (805) 595-1020

Attorneys for Plaintiffs
Katherine Buckmeyer, Jack Ferguson
John Nelson, Jeannene Rupert &
Phyllis Christich

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| MAI CHRISTINA PHAM, JOHN PHAM, MAI NGUYEN, HUNG PERRY NGUYEN, and JOYCE FREEMAN, | ) ) ) ) | Case No. C 08-00201 JW |
|---|---|---|
| | | Honorable James Ware |
| Plaintiffs, | ) ) ) | **DECLARATION OF JOHN NELSON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| vs. | ) ) | |
| COMUNITY LENDING, INCORPORATED, a California corporation, and Does 1 through 10, inclusive, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| AND RELATED CROSS-ACTIONS | ) | |

I, John Nelson, declare:

1.     If I am one of the plaintiffs in this case. I have personal knowledge of the facts stated below and if called as a witness, I could and would testify competently thereto.

2.     All of the plaintiffs and cross-defendants or counter claim defendants ("Plaintiffs") in this action are former employees of ComUnity Lending, Inc. ("Company"). The Company was in the real estate mortgage and lending business.

3.     All of the Plaintiffs in this section are former members of the Company's nonqualified

deferred compensation plan ("Plan"). During my employment I chose to defer substantial portions of my earned salary by making a salary deferral or contribution to the plan. All of my contributions to the plan came from either my salary or money which was available to me in my office account. When the company terminated the plan my plan account had a balance of approximately $212,182.67.

4.    I received information about the plan when I was at a meeting or teleconference in 2003.

5.    During the meeting, the plan was explained to me. I was told that my contributions would be 100% vested.

6.    I never received a copy of the plan at the meeting. At the meeting and I received a one page Brochure that explained the plan. I had no input into the design of the plan.

7.    The plan as explained to me and the Brochure said I would have my own separate account.

8.    At the meeting it was explained to me that I could borrow from my separate account.

9.    At the meeting it was explained to me that I could choose my own investments.

10.    At the meeting it was explained to me that I could take a hardship withdrawal in the event I needed my money (Exhibit B).

11.    After the meeting, I did not understand that the creditors of the Company could claim my money.

12.    I funded this plan with my money (Exhibit C W-2s).

13.    I received a statement telling me that my contributions were 100% vested (Exhibit A).

14.    I believed that the contributions and earnings were held in a separate account solely for my benefit and my retirement.

15.    It was never explained to me that my contributions would be subject to the claims of creditors of the Company prior to Plan termination.

16.    I paid payroll taxes on my contributions to the plan.

17.    The Company has failed to pay my plan benefits to me upon termination of the Plan.

I swear under penalty of perjury under the laws of the United States in California that the foregoing is true and correct.

Dated: July __/__, 2008        By: _____
                                              John Nelson

Declaration of John Nelson in Support of Motion for Summary Judgment

0036012/001/ 36723v01

TransDirect Online

# TRANSDIRECT® Online

| | |
|---|---|
| Name: | JOHN W NELSON |
| Account: | YQ51291 02005 |
| | Comunity Lending Inc. Non-Qualified Deferred Compensation Plan |
| Balance: | $82,187.33 |

## Account Overview

A new NASD regulation requires that fund performance materials show gross and net expense ratios. Previously, these materials only reflected a net expense ratio, which indicates the actual expenses that affected investment performance. This regulation does not change any fund's expenses, only the way that the expenses are displayed.

➡ Select the tabs below to access detailed information about your account.

Account Balance: Your total account balance by fund, source, number of units and value per unit.

Account Maintenance: A report of your personal information.

| Account Balance Summary | Investment Mix Summary | Market Summary |
|---|---|---|

Summary as of 11/13/2007

| Fund Name | Balance |
|---|---|
| **Short-Term Bonds** | |
| TA Stable Value | $0.00 |
| **Interm./Long-Term Bonds** | |
| Columbia Interm Bd | $5,407.86 |
| Dvfd Core Bd | $1,552.24 |
| **Large-Cap Stocks** | |
| TA Prem Equity | $6,515.75 |
| N Berman Focus | $6,032.63 |
| Dvfd Val & Inc | $6,210.79 |
| Oppnheimr Cap Apprc | $1,675.49 |
| Dvfd Gr & Inc | $1,531.80 |
| **Small/Mid-Cap Stocks** | |

| | |
|---|---|
| **Total Balance : $82,187.33** | **Vested Balance : $82,187.33** |

ⓘ To view specific fund information in PDF format, select the fund name. (Help with PDFs)

©Copyright 2007 Transamerica Corporation. All rights reserved.

Privacy Policy    Terms & Guidelines    Important Legal Information

AppServer Name: DDOL_8_2
Application Name: ddol.war



August 15, 2007

John Nelson
7172 Richardson Rd.
Oakdale, CA 95361

**RE: ComUnity Lending, Inc. Non-Qualified Deferred Compensation (NQDC)
Plan/Top Hat Plan Withdrawal (Hardship)**

Dear John,

Enclosed is your Withdrawal check. Withdrawals from the NQDC plan are taxable
compensation. ComUnity Lending, Inc. was required to withhold federal and state income
taxes from your withdrawal.

ComUnity Lending, Inc. will report your distribution and tax withholding on a Form W-2,
which will be mailed to you at your home in 2008.

If you have any questions, please contact HR at 800-866-9080 x 2038

Sincerely,

Darcie Eufemi
Sr. HR Representative

ComUnity Lending
610 Jarvis Drive
Suite 200
Morgan Hill, CA 95037

Phone: 408-776-7800
Fax: 408-776-0272

Member:
Mortgage Bankers
Association of America

*"Uniting our community through residential lending"*

**DIVERSIFIED INVESTMENT ADVISORS**
4333 Edgewood Road NE, Cedar Rapids, IA 52499
800-755-5801
www.divinvest.com

# Hardship Withdrawal Request

## Instructions

To request a hardship withdrawal, complete all applicable sections of this form and return the form to Diversified at the above address.

## Section A. Employer Information

| | |
|---|---|
| Company/Employer Name | ComUnity Lending |
| Contract/Account No. | Affiliate No. | Division No. |

## Section B. Participant Information

| | | | |
|---|---|---|---|
| Last Name | Nelson | Date of Birth | 10-2-1960 |
| First Name/MI | John W. | Social Security No. | 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 |
| Mailing Address | 7172 Richardson Rd. | | |
| City | Oakdale | State | CA |
| Zip Code | 95361 | | |
| Phone No./Ext. | (209) 847-2967 | | |
| E-mail Address | john.nelson @ Comunitylending.com | | |

## Section C. Hardship Withdrawal Information

I request a withdrawal in the amount of $200,000 ⁰⁰ due to an unforeseen emergency which creates a hardship during employment (prior to my retirement and commencement of benefits). I understand that this request is subject to plan provisions, and that the plan may require hardship documentation and suspension of contributions. For further information, please refer to your Plan Highlights booklet or contact your employer.

## Section D. Participant Signature

*Please note: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim from a group annuity contract issued in New York, containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation. States other than New York also have insurance fraud statutes, which impose penalties for any violation thereof.*

I understand that I may have to report this withdrawal to the IRS and pay appropriate federal and state income taxes on the taxable portion. I certify that the information provided on this form is correct and complete.

X _____    8-3-07
    Participant Signature              Date

## Section E. Employer Information and Signature

Vested %: _____ (*Note: This withdrawal request cannot be processed unless all applicable sections of this form have been completed.*)

I understand that a withdrawal from the plan is subject to IRS reporting and withholding in accordance with IRS guidelines. I certify that this transaction is permissible under the provisions of the plan, and that the information provided on this form is correct and complete.

X _____    _____
    Employer Signature                Date

Form No. 1938-NQDC (rev. 2/05) (Page 1 of 1)          NQDC Plans

# ↑ TRANSDIRECT® Online

| | |
|---|---|
| Name: | JOHN W NELSON |
| Account: | YQ51291 00001 |
| | Comunity Landing Inc. Non-Qualified Deferred |
| | Compensation Plan |
| Balance: | $126,591.94 |

ACCOUNT INFORMATION          TRANSACTIONS    MANAGE PROFILE          RETIREMENT PLANNING

## Distributions

➡ The distributions listed below were paid between 02/07/2006 and 08/07/2007. To display distributions for dates other than those listed, select new dates below then select SUBMIT.

**Start Date**

Feb ▾  7 ▾  2006 ▦

**End Date**

Aug ▾  7 ▾  2007 ▦

[ Submit ]

| Distribution Date | Distribution Type | Gross Amount Distribution | Loan Default | Amount Rolled Over | Taxable Amount | Federal Tax Withheld |
|---|---|---|---|---|---|---|
| 08/07/2007 | HARDSHIP WITHDRAWAL | $200,000.00 | $0.00 | $0.00 | 199,950.00 | $0.00 |

© Copyright 2007 Transamerica Corporation. All rights reserved.

Privacy Policy  Terms & Guidelines  Important Legal Information

**AppServer Name:** DDOL_11_2
**Application Name:** ddol.war

*faxed  8/8/07*

| Copy B To Be Filed With Employee's Federal Tax Return | | **2002** (Rev. February 2002) | OMB No. 1545-0008 |
|---|---|---|---|
| a Control number 2002 | 1 Wages, tips, other comp. 133620.98 | 2 Federal income tax withheld 25963.45 | |
| | 3 Social security wages 84900.00 | 4 Social security tax withheld 5263.80 | |
| b Employer ID number 95-3653282 | 5 Medicare wages and tips 194620.98 | 6 Medicare tax withheld 2097.01 | |
| c Employer's name, address, and ZIP code Kelly Staff Leasing, Inc. 110 W. A Street, Suite 1700 San Diego, CA 92101 | | | |
| d Employee's social security number 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 | | | |
| e Employee's name, address, and ZIP code John W Nelson 7172 Richardson Rd. Oakdale, CA 95361 | | | |
| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment | |
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code  See inst. for box 12 D 11000.00 | |
| 13 Statutory employee | 14 Other SDI 416.94 | 12b Code C 60.00 | |
| Retirement plan X | | 12c Code | |
| Third-party sick pay | | 12d Code | |
| CA436-8595-7 | 133620.98 | 7594.28 | |
| 15 State Employer's state I.D. # | 16 State wages, tips, etc. | 17 State income tax | |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name | |

Form W-2 Wage and Tax Statement    41-1628061
This information is being furnished to the Internal Revenue Service    Dept. of the Treasury - IRS

| Copy 2 To Be Filed With Employee's State, City or Local Income Tax Return | | **2002** (Rev. February 2002) | OMB No. 1545-0008 |
|---|---|---|---|
| a Control number 2002 | 1 Wages, tips, other comp. 133620.98 | 2 Federal income tax withheld 25963.45 | |
| | 3 Social security wages 84900.00 | 4 Social security tax withheld 5263.80 | |
| b Employer ID number 95-3653282 | 5 Medicare wages and tips 194620.98 | 6 Medicare tax withheld 2097.01 | |
| c Employer's name, address, and ZIP code Kelly Staff Leasing, Inc. 110 W. A Street, Suite 1700 San Diego, CA 92101 | | | |
| d Employee's social security number 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 | | | |
| e Employee's name, address, and ZIP code John W Nelson 7172 Richardson Rd. Oakdale, CA 95361 | | | |
| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment | |
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code D 11000.00 | |
| 13 Statutory employee | 14 Other SDI 416.94 | 12b Code C 60.00 | |
| Retirement plan X | | 12c Code | |
| Third-party sick pay | | 12d Code | |
| CA436-8595-7 | 133620.98 | 7594.28 | |
| 15 State Employer's state I.D. # | 16 State wages, tips, etc. | 17 State income tax | |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name | |

Form W-2 Wage and Tax Statement    41-1628061    Dept. of the Treasury - IRS

| Copy B To Be Filed With Employee's FEDERAL Tax Return. | | **2003** | OMB No. 1545-0008 |
|---|---|---|---|
| a Control number | 1 Wages, tips, other comp. 161512.44 | 2 Federal income tax withheld 32857.94 | |
| 35529 | 3 Social security wages 87000.00 | 4 Social security tax withheld 5394.00 | |
| b Employer ID number | 5 Medicare wages and tips 221143.07 | 6 Medicare tax withheld 3206.57 | |
| 75-2565546 | | REISSUED STATEMENT | |

c Employer's name, address, and ZIP code

GEVITY HR X, LP
PO BOX 25020

BRADENTON, FL 34206-5020

d Employee's social security number
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

e Employee's name, address, and ZIP code

JOHN W NELSON
7172 RICHARDSON RD

OAKDALE, CA 95361

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code See inst. for box 12 C  312.00 |
| 13 Stat. empl. | 14 Other | 12b Code |
| Retirement plan | CA_SDI  512.24 CO.  CAR  2069.97 | 12c Code |
| Third-party sick pay | | 12d Code |
| CA  46823019 | 159143.07 | 12405.78 |
| 15 State  Employer's state ID no. | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement        Dept. of the Treasury -- IRS
This information is being furnished to the Internal Revenue Service.        39-1908847

| Copy 2 To Be Filed With Employee's State, City, or Local Income Tax Return. | | **2003** | OMB No. 1545-0008 |
|---|---|---|---|
| a Control number | 1 Wages, tips, other comp. 161512.44 | 2 Federal income tax withheld 32857.94 | |
| 35529 | 3 Social security wages 87000.00 | 4 Social security tax withheld 5394.00 | |
| b Employer ID number | 5 Medicare wages and tips 221143.07 | 6 Medicare tax withheld 3206.57 | |
| 75-2565546 | | REISSUED STATEMENT | |

c Employer's name, address, and ZIP code

GEVITY HR X, LP
PO BOX 25020

BRADENTON, FL 34206-5020

d Employee's social security number
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

e Employee's name, address, and ZIP code

JOHN W NELSON
7172 RICHARDSON RD

OAKDALE, CA 95361

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code C  312.00 |
| 13 Stat. empl. | 14 Other | 12b Code |
| Retirement plan | CA_SDI  512.24 CO.  CAR  2069.97 | 12c Code |
| Third-party sick pay | | 12d Code |
| CA  46823019 | 159143.07 | 12405.78 |
| 15 State  Employer's state ID no. | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement        Dept. of the Treasury -- IRS
        39-1908847

| Copy B To Be Filed With Employee's FEDERAL Tax Return. | | **2004** OMB No. 1545-0008 |
|---|---|---|
| a Control number 35529 | 1 Wages, tips, other comp. 193780.02 | 2 Federal income tax withheld 28991.44 |
| | 3 Social security wages 87900.00 | 4 Social security tax withheld 5449.80 |
| b Employer ID number 65-0442051 | 5 Medicare wages and tips 256780.02 | 6 Medicare tax withheld 3723.31 |

c Employer's name, address, and ZIP code

GEVITY HR, LP
AGENT FOR GEVITY HR X, LP
PO BOX 25020
BRADENTON, FL  34206-5020

d Employee's social security number
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

e Employee's name, address, and ZIP code

JOHN W NELSON
7172 RICHARDSON RD
OAKDALE, CA  95361

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans 50,000 | 12a Code  See inst. for box 12 C  853.50 |
| 13 Statutory employee | 14 Other CA SDI  812.18 CO  CAR 1535.88 | 12b Code D  13,000 |
| Retirement plan | | 12c Code |
| Third-party sick pay | | 12d Code |

| CA 46823019 | 193780.02 | 15573.61 |
|---|---|---|
| 15 State Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement                Dept. of the Treasury - IRS
This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

| Copy C For EMPLOYEE'S RECORDS. (See Notice to Employee on back of Copy B.) | | **2004** OMB No. 1545-0008 |
|---|---|---|
| a Control number 35529 | 1 Wages, tips, other comp. 193780.02 | 2 Federal income tax withheld 28991.44 |
| | 3 Social security wages 87900.00 | 4 Social security tax withheld 5449.80 |
| b Employer ID number 65-0442051 | 5 Medicare wages and tips 256780.02 | 6 Medicare tax withheld 3723.31 |

c Employer's name, address, and ZIP code

GEVITY HR, LP
AGENT FOR GEVITY HR X, LP
PO BOX 25020
BRADENTON, FL  34206-5020

d Employee's social security number
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

e Employee's name, address, and ZIP code

JOHN W NELSON
7172 RICHARDSON RD
OAKDALE, CA  95361

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code  See inst. for box 12 C  853.50 |
| 13 Statutory employee | 14 Other CA SDI  812.18 CO  CAR 1535.88 | 12b Code |
| Retirement plan | | 12c Code |
| Third-party sick pay | | 12d Code |

| CA 46823019 | 193780.02 | 15573.61 |
|---|---|---|
| 15 State Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement                Dept. of the Treasury - IRS

| Copy 2 To Be Filed With Employee's State, City or Local Income Tax Return. | **2005** OMB No. 1545-0008 |
|---|---|

| a Control number 35529 | 1 Wages, tips, other comp. 150255.48 | 2 Federal income tax withheld 28343.24 |
|---|---|---|
| | 3 Social security wages 90000.00 | 4 Social security tax withheld 5580.00 |
| b Employer ID number 65-0442051 | 5 Medicare wages and tips 214255.48 | 6 Medicare tax withheld 3106.70 |

c Employer's name, address, and ZIP code

GEVITY HR, LP
PO BOX 25020
BRADENTON, FL   34206-5020

d Employee's social security number
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

e Employee's name, address, and ZIP code

JOHN W NELSON
7172 RICHAROSON RD
OAKDALE, CA  95361

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans 50000.00 | 12a Code See inst. for box 12 D  14000.00 |
| 13 Statutory employee | 14 Other CA SDI  857.71 CO  CAR  754.86 | 12b Code |
| Retirement plan | | 12c Code |
| Third-party sick pay | | 12d Code |

| CA | 46823019 | 150255.48 | 11343.03 |
|---|---|---|---|
| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name | |

Form W-2 Wage and Tax Statement          Dept. of the Treasury - IRS
This information is being furnished to the Internal Revenue Service.

| Copy 2 To Be Filed With Employee's State, City or Local Income Tax Return. | **2005** OMB No. 1545-0008 |
|---|---|

| a Control number 35529 | 1 Wages, tips, other comp. 150255.48 | 2 Federal income tax withheld 28343.24 |
|---|---|---|
| | 3 Social security wages 90000.00 | 4 Social security tax withheld 5580.00 |
| b Employer ID number 65-0442051 | 5 Medicare wages and tips 214255.48 | 6 Medicare tax withheld 3106.70 |

c Employer's name, address, and ZIP code

GEVITY HR, LP
PO BOX 25020
BRADENTON, FL   34206-5020

d Employee's social security number
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

e Employee's name, address, and ZIP code

196636

JOHN W NELSON
7172 RICHARDSON RD
OAKDALE, CA  95361

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans 50000.00 | 12a Code See inst. for box 12 D  14000.00 |
| 13 Statutory employee | 14 Other CA SDI  857.71 CO  CAR  754.86 | 12b Code |
| Retirement plan | | 12c Code |
| Third-party sick pay | | 12d Code |

| CA | 46823019 | 150255.48 | 11343.03 |
|---|---|---|---|
| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name | |

Form W-2 Wage and Tax Statement          Dept. of the Treasury - IRS

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

| Copy C–For EMPLOYEE'S RECORDS (see Notice to Employee on back of Copy B.) | **Form W–2** Wage and Tax Statement | OMB No. 1545–0008 |
|---|---|---|

| **2006** | 1 Wages, tips, other comp. 122120.02 | 2 Federal income tax withheld 19630.87 |
|---|---|---|
| a Control number 35529 | 3 Social security wages 94200.00 | 4 Social security tax withheld 5840.40 |
| Employer Ident. No. (EIN) 65-0442051 | 5 Medicare wages and tips 152120.02 | 6 Medicare tax withheld 2205.74 |

Employer's name, address, and ZIP code          REISSUED STATEMENT

GEVITY HR, LP
AGENT FOR GEVITY HR X LP
PO BOX 25020
BRADENTON, FL 34206-5020

Employee's SSN
· 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

Employee's first name and initial      Last name                 Suff.
JOHN W NELSON
7172 RICHARDSON RD
OAKDALE, CA 95361

Employee's address, and ZIP code

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a code See instr. for box 12 C         1034.70 |
| 13 Statutory employee ☐   Retirement plan ☐   Third-party sick pay ☐ | | 12b code |
| 14 Other CA SDI 635.34 CO_CAR 439.58 | | 12c code |
| | | 12d code |
| 15 State Employer's state ID no. CA  468-2301-9 | 16 State wages, tips, etc. 122120.02 | 17 State income tax 8522.13 |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Department of the Treasury–Internal Revenue Service



1  Jesse L.B. Hill SBN 97620
   Law Offices of Jesse L.B. Hill
2  1042 Palm Street 2nd Floor
   San Luis Obispo, CA  93401
3  (805) 544-5541
   Fax (805) 595-1020
4

5  Attorneys for Plaintiffs
   Katherine Buckmeyer, Jack Ferguson
6  John Nelson, Jeannene Rupert &
   Phyllis Christich
7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                   **SAN JOSE DIVISION**

11

12 MAI CHRISTINA PHAM, JOHN PHAM, MAI  )    Case No. C 08-00201 JW
   NGUYEN, HUNG PERRY NGUYEN, and     )
13 JOYCE FREEMAN,                     )    Honorable James Ware
                                      )
14          Plaintiffs,               )    **DECLARATION OF JEANNINE**
                                      )    **RUPERT IN SUPPORT OF MOTION**
15      vs.                           )    **FOR SUMMARY JUDGMENT**
                                      )
16 COMUNITY LENDING, INCORPORATED, a  )
   California corporation, and Does 1 through 10,  )
17 inclusive,                         )
                                      )
18          Defendants.               )
                                      )
   _____  )
19 AND RELATED CROSS-ACTIONS          )

20
   I, Jeannine Rupert, declare:
21

22 1.      If I am one of the plaintiffs in this case.  I have personal knowledge of the facts stated

23 below and if called as a witness, I could and would testify competently thereto.

24 2.      All of the plaintiffs and cross-defendants or counter claim defendants ("Plaintiffs") in this

25 action are former employees of ComUnity Lending, Inc. ("Company").  The Company was

26 in the real estate mortgage and lending business.

27 3.      I was/am a former member of the Company's nonqualified deferred compensation plan
28

                                                            Case No.  C 08-00201 JW
              Declaration of Jeannine Rupert in Support of Motion for Summary Judgment

0036012/001/ 36723v01

1  ("Plan"). During my employment I chose to defer substantial portions of my earned salary by

2  making a salary deferral or contribution to the plan. All of my contributions to the plan came from

3  either my salary or money which was available to me in my office account. When the company

4
   terminated the plan my plan account had a balance of approximately $121,697.55.

5
6  4.      I received information about the plan when I was at a meeting or teleconference in 2002 or

7  2003.

8  5.      During the meeting, the plan was explained to me. I was told that my contributions would

9  be 100% vested.

10 6.      I never received a copy of the plan at the meeting. At the meeting and I received a one

11 page Brochure that explained the plan. I had no input into the design of the plan.

12
13 7.      The plan as explained to me and the Brochure said I would have my own separate

14 account.

15 8.      At the meeting it was explained to me that I could choose my own investments.

16 9.      After the meeting, I did not understand that the creditors of the Company could claim my

17 money.

18 10.     I funded this plan with my money.

19
   11.     I received a statement telling me that my contributions were 100% vested.
20
21 12.     I believed that the contributions and earnings were held in a separate account solely for my

22 benefit and my retirement.

23 13.     It was never explained to me that my contributions would be subject to the claims of

24 creditors of the Company prior to Plan termination.

25 14.     True and correct copies of my Participant Statements are attached as Exhibit A.

26 15.     I believed the statements that my account was 100% vested.

27
   16.     I paid payroll taxes on my contributions to the plan.
28

16.   I paid payroll taxes on my contributions to the plan.

17.   The Company has failed to pay my plan benefits to me upon termination of the Plan.

I swear under penalty of perjury under the laws of the United States in California that the foregoing is true and correct.

Dated: July 2, 2008    By: 
Jeannine Rupert



# TRANSAMERICA
RETIREMENT SERVICES

## Com Unity Lending Inc.

www.ta-retirement.com
(877) 234-9293

The pie chart in the Investment Allocation of Your Account Balance section illustrates the allocation of your account among the available investment options, as of the last date of the statement period.

The Account Summary section provides an overview of activity in your account during the statement period.

'Vesting' indicates your ownership of your account.

This statement has been carefully prepared to ensure that it is accurate and up-to-date. Any discrepancy should be brought to Transamerica's attention within 30 days. Any oral communications should be reconfirmed in writing.

### Customer Service
You can access account information, view investment performance, and initiate transactions 24 hours a day, seven days a week by calling TransDirect at (877) 234-9293 or by visiting www.ta-retirement.com. Customer Service Representatives are available Monday through Friday, 8:00 a.m. through 9:00 p.m., ET.

### Account Information
JEANNINE RUPERT
1675 GROVE ROAD
EL CAJON, CA 92020

**Account Number**
YG51291  00001

**Statement Period: April 1, 2007 to June 30, 2007**

**Hire Date:** 05/17/1999

### Account Summary
| | |
|---|---|
| Opening Balance as of April 1, 2007 | $118,039.80 |
| Money In | $0.00 |
| Money Out | $0.00 |
| Gain or Loss | $4,836.41 |
| Closing Balance as of June 30, 2007 | $122,876.21 |
| Vested Balance | $122,876.21 |

### Messages
Retirement Catch-Up Strategiesœ
Contribute More: If you can, increase your contribution rate by boosting it a bit or even doubling it. You just might find that a little belt tightening now may secure your retirement later. To find out more visit www.Ta-Retirement.com

### Investment Allocation of Your Account Balance



| Bonds | |
|---|---|
| Short-Term Bonds | 30% |
| Interm./Long-Term Bonds | 11% |
| **Total Bonds** | **41%** |
| Stocks | |
| Large-Cap Stocks | 10% |
| Small/Mid-Cap Stocks | 37% |
| International Stocks | 7% |
| **Total Stocks** | **54%** |
| Multi-Asset/Other | 5% |
| **Total Multi-Asset/Other** | **5%** |

### Your Personalized Rate of Return
Your rate of return for the period 01/01/2007 to 06/30/2007 was 6.95%, and for the period 07/01/2006 to 06/30/2007 was 12.78%. For the 50-year period 1957-2007, the historical average annual rate of return for an investment mix similar to yours was 8.74%.

Your personalized rate of return indicates the specific performance of your own investment strategy, reflecting the funds you have chosen and the allocation of your assets among these funds, as well as any activity in your account such as deposits, withdrawals and loans. Compare these results to the sample investment mixes described at the end of your statement to see if you should consider revaluating your investment strategy.

Your allocation to the Multi-Asset/Other category may not be reflected in your personalized return. For more information, please visit us at www.ta-retirement.com.



1  Jesse L.B. Hill SBN 97620
   Law Offices of Jesse L.B. Hill
2  1042 Palm Street 2nd Floor
   San Luis Obispo, CA  93401
3  (805) 544-5541
   Fax (805) 595-1020
4

5  Attorneys for Plaintiffs
   Katherine Buckmeyer, Jack Ferguson
6  John Nelson, Jeannene Rupert &
   Phyllis Christich
7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10                   **SAN JOSE DIVISION**

11

12  MAI CHRISTINA PHAM, JOHN PHAM, MAI   )   Case No. C 08-00201 JW
    NGUYEN, HUNG PERRY NGUYEN, and       )
13  JOYCE FREEMAN,                       )   Honorable James Ware
                                         )
14          Plaintiffs,                  )   **DECLARATION OF PHYLLIS**
                                         )   **CHRISTICH IN SUPPORT OF MOTION**
15      vs.                              )   **FOR SUMMARY JUDGMENT**
                                         )
16  COMUNITY LENDING, INCORPORATED, a    )
    California corporation, and Does 1 through 10,  )
17  inclusive,                           )
                                         )
18          Defendants.                  )
                                         )
19  AND RELATED CROSS-ACTIONS            )

20
    I, Phyllis Christich, declare:
21

22  1.      If I am one of the plaintiffs in this case.  I have personal knowledge of the facts stated

23  below and if called as a witness, I could and would testify competently thereto.

24  2.      All of the plaintiffs and cross-defendants or counter claim defendants ("Plaintiffs") in this

25  action are former employees of ComUnity Lending, Inc. ("Company").  The Company was

26  in the real estate mortgage and lending business.

27  3.      All of the Plaintiffs in this action are former members of the Company's nonqualified

28

                                                              Case No.  C 08-00201 JW
              Declaration of Phyllis Christich in Support of Motion for Summary Judgment
    0036012/001/ 36723v01

deferred compensation plan ("Plan"). During my employment I chose to defer substantial portions of my earned salary by making a salary deferral or contribution to the plan. All of my contributions to the plan came from either my salary or money which was available to me in my office account. When the company terminated the plan my plan account had a balance of approximately $40,770.79.

4.    I received information about the plan when I was at a meeting or teleconference in 2003.

5.    During the meeting, the plan was explained to me. I was told that my contributions would be 100% vested.

6.    I never received a copy of the plan at the meeting. At the meeting and I received a one page Brochure that explained the plan. I had no input into the design of the plan.

7.    The plan as explained to me and the Brochure said I would have my own separate account.

8.    At the meeting it was explained to me that I could borrow from my separate account.

9.    At the meeting it was explained to me that I could choose my own investments.

10.    At the meeting it was explained to me that I could take a hardship withdrawal in the event I needed my money.

11.    After the meeting, I did not understand that the creditors of the Company could claim my money.

12.    I funded this plan with my money.

13.    I received a statement telling me that my contributions were 100% vested.

14.    I believed that the contributions and earnings were held in a separate account solely for my benefit and my retirement.

15.    It was never explained to me that my contributions would be subject to the claims of creditors of the Company prior to Plan termination.

16.    I paid payroll taxes on my contributions to the plan.

17.    The Company has failed to pay my plan benefits to me upon termination of the Plan.

I swear under penalty of perjury under the laws of the United States in California that the foregoing is true and correct.

Dated: July 26, 2008          By: _____

Phyllis Christich

Declaration of Phyllis Christich in Support of Motion for Summary Judgment

0036012/001/ 36723v01

1 | Jesse L.B. Hill SBN 97620
Law Offices of Jesse L.B. Hill
2 | 1042 Palm Street 2nd Floor
San Luis Obispo, CA 93401
3 | (805) 544-5541
Fax (805) 595-1020
4

5 | Attorneys for Plaintiffs
Katherine Buckmeyer, Jack Ferguson
6 | John Nelson, Jeannene Rupert &
Phyllis Christich
7

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA**

10 | **SAN JOSE DIVISION**

11

12 | MAI CHRISTINA PHAM, JOHN PHAM, MAI )  Case No. C 08-00201 JW
NGUYEN, HUNG PERRY NGUYEN, and      )
13 | JOYCE FREEMAN,                      )  Honorable James Ware
                                       )
14 |              Plaintiffs,           )  **DECLARATION OF KATHERINE**
                                       )  **BUCKMEYER IN SUPPORT OF**
15 |      vs.                           )  **MOTION FOR SUMMARY JUDGMENT**
                                       )
16 | COMUNITY LENDING, INCORPORATED, a   )
California corporation, and Does 1 through 10, )
17 | inclusive,                          )
                                       )
18 |              Defendants.           )
                                       )
19 | AND RELATED CROSS-ACTIONS          )

20 |
I, Katherine Buckmeyer, declare:
21

22 | 1.      If I am one of the plaintiffs in this case. I have personal knowledge of the facts stated

23 | below and if called as a witness, I could and would testify competently thereto.

24 | 2.      All of the plaintiffs and cross-defendants or counter claim defendants ("Plaintiffs") in this

25 | action are former employees of ComUnity Lending, Inc. ("Company"). The Company was

26 | in the real estate mortgage and lending business.

27 | 3.      All of the Plaintiffs in this action are former members of the Company's nonqualified
28

1  deferred compensation plan ("Plan"). During my employment I chose to defer portions

2  of my earned salary by making a salary deferral or contribution to the plan. All of my

3  contributions to the plan came from either my salary or money which was available to me in my

4  office account. When the company terminated the plan my plan account had a balance of

5  approximately $3,675.92.

6

7  4.    I received information about the plan when I was at a meeting or teleconference in 2003.

8  5.    During the meeting, the plan was explained to me. I was told that my contributions would

9  be 100% vested.

10  6.    I never received a copy of the plan at the meeting. At the meeting and I received a one

11  page Brochure that explained the plan. I had no input into the design of the plan.

12  7.    The plan as explained to me and the Brochure said I would have my own separate

13  account.

14

15  8.    At the meeting it was explained to me that I could borrow from my separate account.

16  9.    At the meeting it was explained to me that I could choose my own investments.

17  10.    At the meeting it was explained to me that I could take a hardship withdrawal in the

18  event I needed my money.

19  11.    After the meeting, I did not understand that the creditors of the Company could claim my

20  money.

21

22  12.    I funded this plan with my money.

23  13.    I received a statement telling me that my contributions were 100% vested.

24  14.    I believed that the contributions and earnings were held in a separate account solely for my

25  benefit and my retirement.

26  15.    It was never explained to me that my contributions would be subject to the claims of

27  creditors of the Company prior to Plan termination.

28

16.    I paid payroll taxes on my contributions to the plan.

17.    The Company has failed to pay my plan benefits to me upon termination of the Plan.

I swear under penalty of perjury under the laws of the United States in California that the foregoing is true and correct.

Dated: July 28, 2008          By: _____
                                   Katherine Buckmeyer

3                        Case No.  C 08-00201 JW
Declaration of Katherine Buckmeyer in Support of Motion for Summary Judgment

0036012/001/36723v01

Jesse L.B. Hill SBN 97620
Law Offices of Jesse L.B. Hill
1042 Palm Street 2nd Floor
San Luis Obispo, CA  93401
(805) 544-5541
Fax (805) 595-1020

Attorneys for Plaintiffs
Katherine Buckmeyer, Jack Ferguson
John Nelson, Jeannene Rupert &
Phyllis Christich

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| MAI CHRISTINA PHAM, JOHN PHAM, MAI NGUYEN, HUNG PERRY NGUYEN, and JOYCE FREEMAN, | Case No. C 08-00201 JW |
| | Honorable James Ware |
| Plaintiffs, | **DECLARATION OF JACK FERGUSON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| COMUNITY LENDING, INCORPORATED, a California corporation, and Does 1 through 10, inclusive, | |
| Defendants. | |
| AND RELATED CROSS-ACTIONS | |

I, Jack Ferguson, declare:

1.     If I am one of the plaintiffs in this case.  I have personal knowledge of the facts stated below and if called as a witness, I could and would testify competently thereto.

2.     All of the plaintiffs and cross-defendants or counter claim defendants ("Plaintiffs") in this action are former employees of ComUnity Lending, Inc. ("Company").  The Company was in the real estate mortgage and lending business.

3.     All of the Plaintiffs in this action are former members of the Company's nonqualified

0036012/001/ 36723v01

1    deferred compensation plan ("Plan"). During my employment I chose to defer substantial portions

2    of my earned salary by making a salary deferral or contribution to the plan. All of my

3    contributions to the plan came from either my salary or money which was available to me in my

4    office account. When the company terminated the plan my plan account had a balance of

5    approximately $68,382.76.

6

7    4.    I received information about the plan when I was at a meeting or teleconference in 2003.

8    5.    During the meeting, the plan was explained to me. I was told that my contributions would

9    be 100% vested.

10   6.    I never received a copy of the plan at the meeting. At the meeting and I received a one

11   page Brochure that explained the plan. I had no input into the design of the plan.

12   7.    The plan as explained to me and the Brochure said I would have my own separate

13   account.

14

15   8.    At the meeting it was explained to me that I could borrow from my separate account.

16   9.    At the meeting it was explained to me that I could choose my own investments.

17   10.   After the meeting, I did not understand that the creditors of the Company could claim my

18   money.

19   11.   I funded this plan with my money.

20

21   12.   I received a statement telling me that my contributions were 100% vested.

22   13.   I believed that the contributions and earnings were held in a separate account solely for my

23   benefit and my retirement.

24   14.   It was never explained to me that my contributions would be subject to the claims of

25   creditors of the Company prior to Plan termination.

26   15.   I paid payroll taxes on my contributions to the plan.

27   16.   The Company has failed to pay my plan benefits to me upon termination of the Plan.

28

1

2    I swear under penalty of perjury under the laws of the United States in California that the

3    foregoing is true and correct.

4

5    Dated: July 1, 2008        By: _____
                                     Jack Ferguson
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              3                    Case No.  C 08-00201 JW
                    Declaration of Jack Ferguson in Support of Motion for Summary Judgment

1 PROOF OF SERVICE FRCP 5(b)

2 STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

3 I am a resident of the aforesaid county, State of California; I am over the age of 18 years and not a

4 party to the within entitled action; my business address is: 1042 Palm Street, 2nd Floor, San Luis

5 Obispo, California 93401.

6 On July 25, 2008, I served the foregoing **JOINDER OF COUNTERCLAIM DEFENDANTS IN MOTION FOR SUMMARY JUDGMENT AND ADDITIONAL SUPPORT FOR**

7 **SUMMARY JUDGMENT AND DECLARATIONS OF John Nelson, Jeannine Rupert,**

8 **Phyllis Christich, Katharine Buckmeyer, and Jack Ferguson IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action addressed as follows:

9

Matthew Borden, Esq.

10 Liner, Yankelevitz, Sunshine
199 Fremonet Street 10th Floor

11 San Francisco, CA 94105-2255

12 Robert Franklin, Esq.
Murray & Murray

13 19400 Stevens Creek #200
Cupertino, CA 95104-2548

14

The following is the procedure in which service of this document was effected:

15

By Mail, as follows:

16

17 I am "readily familiar" with the firm's practice of collection and processing
correspondence for mailing. Under that practice, it would be deposited with

18 the U.S. Postal Service on that same day with postage thereon fully prepaid at
San Luis Obispo, California, in the ordinary course of business. I am aware

19 that on motion of the party served, service is presumed invalid if postal
cancellation date or postage meter date is more than one day after the date of

20 deposit for mailing in affidavit.

21

I declare under penalty of perjury under the laws of the United States of America that the above is

22 true and correct and that I am employed in the office of a member of the bar of this Court at whose
direction the service was made. Executed on July 25, 2008, at San Luis Obispo, California.

23

24

25 Robin McElroy

26

27

28