*E-FILED 05-09-2011*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE COMUNITY LENDING, INCORPORATED,<br><br>    Debtor<br>_____/<br>CHRISTINA PHAM, et al.<br><br>    Plaintiffs,<br>v.<br><br>COMUNITY LENDING INCORPORATED<br><br>    Defendant.<br>_____/<br>AND RELATED CROSS-ACTIONS<br>_____/ | No. C08-00201 JW (HRL)<br><br>**CONDITIONAL ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>**ALTERNATIVE REPORT AND RECOMMENDATION RE EVIDENTIARY SANCTIONS**<br><br>**[Re: Docket No. 137]** |

    Plaintiffs move to compel the production of documents and interrogatory answers. Trustee John Richardson opposes the motion. Upon consideration of the moving and responding papers,[1] as well as the arguments of counsel, this court conditionally grants plaintiffs' motion to compel and issues an alternative report and recommendation as to evidentiary sanctions that they might request.

---

[1] This court overrules the Trustee's objection to deposition testimony submitted by plaintiffs in connection with their reply papers. The deposition in question did not take place until after the instant motion was filed. In any event, the court finds that the testimony fairly was submitted in rebuttal to the arguments made in the Trustee's opposition papers.

Plaintiffs propose wide-ranging discovery concerning ComUnity's financial condition during the relevant time period because they believe that the company's claimed insolvency is a crucial issue in the case. In essence, plaintiffs say that the documents the Trustee has yet to produce boil down to:

- communications with third parties, such as lenders, creditors, and investors;

- documents concerning ComUnity's decision to pay millions of dollars to GMAC and Countrywide in September and October 2007, despite personal guarantees on those loans by ComUnity's officers;

- documents pertaining to insider transactions, including the forgiveness of loans to insiders (such as CEO Darryl Fry and his relatives) during the very period when the company claimed it was insolvent;

- communications related to ComUnity's financial condition between or involving or Diablo Management Group (DMG);

- documents relating to ComUnity's valuation of its assets and liabilities, including portfolio and repurchase requests; and

- emails to, from, and among ComUnity's "Leadership Group" between August and October 2007 about the company's financial condition and alleged insolvency, repurchase requests, and insider transactions including loan forgiveness, reorganization, or restructuring.

Plaintiffs also say that the Trustee has not provided sufficient answers to interrogatories about the company's financial condition, including those asking for the identification of debts that became due during the time period in question.

The theme of the Trustee's opposition is that plaintiffs' requests are overbroad and that the process of locating and producing responsive information would be prohibitively expensive. Here, the Trustee says that he has a wealth of ComUnity information and materials in his possession, custody, and control, including: up to 7.7 terabytes (or 346 million pages) of documents on 35 backup tapes; 600 banker boxes of hard copy documents stored at DMG's warehouse in Tracy, California; and over 10,000 banker boxes (likely containing loan files) stored at an Iron Mountain facility. According to the Trustee, compliance with plaintiffs' requests would drain the $2 million or so remaining in the bankruptcy estate. He further contends that the burden of producing responsive discovery outweighs the likely benefit.

2

In describing his search for responsive information, the Trustee appeared to this court to skirt the issue. To be sure, the Trustee says that he has searched for and produced some responsive information, including a search of emails from former ComUnity employees (see Ahmadian Decl. Exs. 1-2). The Trustee says that he has also conducted some searches of the so-called "football"—i.e., a backup copy (said to be less comprehensive than the 35 backup tapes) of shared drive and virpak data from ComUnity when it was an ongoing business. Additionally, the Trustee says that he has made the 600 boxes of documents at DMG's warehouse available for plaintiffs' inspection.

Nevertheless, in describing the claimed undue burden that would be imposed by plaintiffs' discovery requests, the Trustee repeatedly referred to the expense of accessing data from the 35 backup tapes, rather than the effort that might be required to conduct a complete search of the "football," which might be considered a more readily available source of information. The entire "football" has not yet been searched. And, Trustee's counsel acknowledged that there is more that the Trustee can do that would not involve accessing the 35 backup tapes. Additionally, the Trustee suggests that plaintiffs' discovery requests would require him to search the entire contents of all 35 backup tapes, but there has been no satisfactory explanation why that is the case—unless the 35 tapes contain random information in no particular order and it would be impossible to target documents from the few months in 2007 that plaintiffs seek. Nor has there been a showing that the contents of all 600 boxes at DMG's warehouse must be examined by human eyes in order to locate responsive documents from the relatively short time period in question. Further, plaintiffs say that bankruptcy records indicate that the documents they seek have already been pulled and reviewed by defense counsel.

In sum, this court is unpersuaded that the Trustee has lived up to his discovery obligations to search for and produce relevant, responsive, non-privileged documents and information in a reasonable and workmanlike fashion.

Accordingly, this court finds that plaintiffs' motion to compel should be granted as follows: Since the Trustee offered to provide all of his electronically stored information (ESI)

3

to plaintiffs (subject to an appropriate clawback provision for any privileged information), he is ordered to either (1) turn over to plaintiffs mirror images of the ESI in his possession, custody, or control; or (2) run plaintiffs' choice of up to 15 search terms on all ESI except the backup tapes and produce the results to plaintiffs. If there are obvious gaps in the results of those searches, plaintiffs' and defense experts shall meet in person and devise a protocol and cost for examining the backup tapes for responsive documents from the relevant time period. The costs shall be shared by the parties as follows: 2/3 of the costs shall be borne by the Trustee and 1/3 shall be borne by plaintiffs. The Trustee shall also serve answers to the interrogatories at issue. If the Trustee believes that he appropriately may produce records in lieu of an answer, then he shall (a) specify the records that must be reviewed, in sufficient detail to enable plaintiffs to locate them as readily as the Trustee could; and (b) produce the records or give plaintiffs a reasonable opportunity to examine and audit the records and make copies, compilations, abstracts, or summaries of them. FED. R. CIV. P. 33(d).

This foregoing order, however, is conditioned on the presiding judge's determination that the period for fact discovery and expert disclosures should be re-opened to permit plaintiffs an opportunity to complete the discovery in question and to prepare expert disclosures that take that discovery into account. Additionally, this court recommends that a special master be appointed to address any further discovery disputes that may arise.

At oral argument, plaintiffs stated that, given the current posture of this case, they believe that evidentiary sanctions are the more appropriate remedy at this time. As discussed above, this court finds the Trustee's claims as to undue burden to be exaggerated. Although Fed. R. Civ. P. 37(a) generally requires a court order before evidentiary sanctions may be imposed, the period for discovery and expert disclosures has passed and trial is set to begin in a few weeks. As such, there has been prejudice to plaintiffs. Therefore, if the presiding judge decides that modification of the scheduling order to allow additional time for discovery and expert disclosures is not warranted, then this court recommends that he consider imposing the evidentiary sanctions which might be requested by plaintiffs, including a presumption that

4

ComUnity was not insolvent at the time when it said it was.

Dated: May 9, 2011

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:08-cv-00201-JW Notice has been electronically mailed to:

Hong-Nhung Thi Le     nle@luce.com, aworthing@luce.com

Jeffrey L. Fillerup     jfillerup@luce.com, aazarmi@luce.com, aleverton@luce.com, nle@luce.com

Jesse Landis Hill     JLBHill@aol.com, JLBHill@aol.com

John Walshe Murray     jwmurray@murraylaw.com

Jonas Noah Hagey     hagey@braunhagey.com

Matthew Brooks Borden     borden@braunhagey.com, cross@braunhagey.com, lindstedt@braunhagey.com

Robert Anthony Franklin     rfranklin@murraylaw.com, bobF_94303@yahoo.com

Ronald Scott Kravitz     RKravitz@LinerLaw.com, jchau@linerlaw.com, jwong@linerlaw.com, mreyes@linerlaw.com

Suzanne L. Decker     suzannedecker@sbcglobal.net

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.